UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 21-CR-725 (RDM) |
| : | |
| JARED SAMUEL KASTNER, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Jared Kastner's ("Kastner") Motion to Modify Conditions of Release, ECF No. 20. The defendant seeks to amend his conditions of release by removing the firearms restriction. The government opposes removing this condition of release.

### BACKGROUND

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

Kastner participated in this attack. He drove from Ohio to Washington, D.C. on January 4, 2021, arriving in Maryland, where he was staying, in the early morning hours of January 5. Based on Kastner's Google search history from January 4 and 5, 2021, the government has reason to believe that Kastner brought a firearm with him when he traveled from Ohio to Maryland and, at a minimum, considered bringing the firearm with him into D.C. on January 6, 2021. On January 4, 2021, at 7:04 p.m. ET, Kastner Googled "virginia beach gun laws" and subsequently visited the

1

website "Large Capacity Magazines in Virginia." At 7:05 p.m. ET on the same day, Kastner, a concealed carry permit holder, Googled "concealed carry magazine limit washington DC." The next day, January 5, at 12:18 p.m. ET, he Googled "concealed carry on train in DC." Approximately one minute later, at 12:19 p.m. ET, Kastner Googled "concealed carry on train in 'DC.'" About ten seconds later, he visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." After, at 12:55 p.m. ET, the defendant Googled "metro to DC from VA." Notably, Washington, D.C. does not allow firearms on any Metrorail transit system, including the metro. *See* https://mpdc.dc.gov/page/prohibited-places-carry-concealed-firearm. Kastner subsequently rode the D.C. metro into the District on January 5, 2021, and on January 6, 2021.[1] Kastner's Google search history, his possession of a concealed carry permit, and the fact that he subsequently rode the metro after Googling concealed carry laws on the metro indicate that, at a minimum, he traveled from Ohio with the firearm and contemplated bringing it with him to the Capitol.

At some point on January 6, 2021, after arriving in Washington, D.C. by metro, Kastner approached the Capitol. Mere minutes after the initial breach of the U.S. Capitol building, the

---

[1] On January 5, 2021, at approximately 4:09 p.m. ET, Kastner's Google location information, obtained via legal process, places him at the Federal Triangle Metro Station in downtown Washington, D.C. The Federal Triangle metro station is approximately 0.6 miles to the Ellipse and approximately 1.0 mile from the south side of the Capitol grounds. Financial records obtained via legal process show that Kastner made a purchase at that location on January 5, 2021, in the amount of $4.60. The next day—January 6, 2021—Kastner parked his car at the Rosslyn metro stop. Legal records show that Kastner took a photograph of a parking ticket on January 6, 2021, with the address of 1812 N. Moore St. This address is approximately 250 feet from the Rosslyn Metro Station. At 7:37 a.m. ET, Kastner made a $10.00 purchase near the Rosslyn Metro Station in Arlington, Virginia. The same metro card that Kastner used on January 5 and earlier in the day on January 6 was used to enter the Federal Triangle metro station at 3:28 p.m. on January 6, 2021. Thus, it appears that Kastner rode the metro into Washington, D.C. on both January 5 and 6, 2021. Importantly, based on this information, it appears Kastner rode the metro to the riot and to leave downtown D.C. on January 6, 2021.

defendant unlawfully entered the building. The initial breach occurred at 2:12 p.m., and Kastner entered the Capitol building at 2:17 p.m. After entering, he walked toward the Crypt, where he was confronted by a line of law enforcement officers who were preventing rioters from progressing into the building. During the standoff that ensued, rioters yelled at the law enforcement officers and moved forward toward the officers. Instead of leaving, Kastner remained in the Crypt until a crowd of rioters pushed forward into the law enforcement officers, eventually breaking the line. Ultimately, Kastner remained in the building for about 18 minutes. Kastner did not return to the location in Maryland where he was staying after departing the U.S. Capitol on January 6, 2021. Thus, if Kastner had a firearm with him, he either left it in his car near the Rosslyn Metro Station or brought it on his person to D.C. on January 6, 2021.

Due to his participation in the riot, the defendant was charged by criminal complaint on December 7, 2021, and arrested on December 8, 2021. ECF Nos. 1, 5. The government executed a search warrant at the time of arrest, and, among other items, seized the defendant's phone and khaki tactical-style pants that Kastner wore on January 6. The government has not yet reviewed the contents of the defendant's phone.

On December 8, 2021, the defendant had an initial appearance in the Southern District of Ohio. Also on December 8, 2021, the government filed a criminal information, charging Kastner with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The defendant's initial appearance in Washington, D.C. was held on December 13, 2021, before Magistrate Judge Faruqui, and Magistrate Judge Faruqui set conditions of release the same day. ECF No. 11. Prior to the initial appearance, the Pretrial Services Agency prepared a pretrial services report, which included a recommendation that Kastner not be allowed to possess firearms. ECF No. 10, p. 1. At the initial appearance, the government requested that the defendant not be permitted to possess firearms while on pretrial release; however, upon learning that the defendant provides security for his church at services on Wednesdays and Sundays, the Court set the following condition related to firearms:

> Defendant is permitted to possess a firearm only while on the premises of the Wilmington Baptist Church (herein "Church"), during the services held on Wednesdays and those held twice on Sundays. The firearm is to be stored and secured on the Church's premises. Defendant is prohibited from taking the firearms off of the Church's grounds. Outside of that limited exception, Defendant is prohibited from possessing firearms at any other time outside of the services mentioned. Defendant must also provide proof of the lawful ability to carry a firearm to Southern District of Ohio (Dayton) within 72 hours.

ECF No. 11, p. 3.

On January 21, 2022, the defendant filed the instant motion, in which the defendant argues that the firearms restriction is not reasonable or justified. ECF No. 20. The defendant argues that he "does not present any factors that would suggest he's a danger to others." *Id*. at 4. But, contrary to defendant's argument and for the reasons set forth below, the partial firearms restriction currently imposed is the least restrictive condition that will assure the safety of the community, and, thus, the Court should deny Kastner's motion.

## ARGUMENT

I.     **Applicable Authority.**

Under the Bail Reform Act, 18 U.S.C. § 3142(b), if a judicial officer determines that release under two standard conditions (not committing federal, state, or local crimes while on pretrial release and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1)(B). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include prohibiting the defendant "from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii).

To determine the appropriate conditions of release, the judicial officer considers (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence;" (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

II.     **The Court Should Not Modify Kastner's Release Conditions.**

The factors set forth in 18 U.S.C. § 3142(g) establish that the prohibition barring Kastner from possessing a firearm during pretrial release, outside of his volunteer position as armed security during church services, is not unduly restrictive. Regarding the nature and circumstances of the offense charged, the events of January 6, 2021 are unprecedented. The attack "was an assault on the Capitol, and it was an assault on democracy." *United States v. Paul Hodgkins*, 21-cr-0188

5

(RDM), Tr. at 71. It resulted in significant injuries to law enforcement officers who were protecting the Capitol and members of Congress from the mob. Kastner's individual actions on January 4 through January 7, 2021, also warrant the partial ban on firearm possession while on pretrial release.

During the evening of January 4, 2021, Kastner Googled "virginia beach gun laws" and subsequently visited the website "Large Capacity Magazines in Virginia." Kastner, a concealed carry permit holder, also Googled "concealed carry magazine limit washington DC." On January 5, 2021, the day before the violent attack on the Capitol, Kastner, a concealed carry permit holder, Googled "concealed carry on train in DC" and "concealed carry on train in 'DC.'" He subsequently visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." Later on January 5, 2021, Kastner rode the D.C. metro into the District. The next day, on January 6, 2021, Kastner took the metro into D.C., where he participated in storming the Capitol building. He entered the Capitol building just minutes after the initial breach of the building. And instead of leaving when he encountered a line of law enforcement officers attempting to stop the rioters from progressing into the building, Kastner remained inside. He witnessed the mob push past the line of law enforcement officers and watched the mob continue into the building.

Likewise, the weight of the evidence is overwhelming. When interviewed at the time of his arrest, Kastner admitted he entered the U.S. Capitol building. The government also has extensive video evidence showing Kastner inside the U.S. Capitol building on January 6, 2021, as well as several witnesses placing Kastner in the U.S. Capitol building or in Washington, D.C. on January 6, 2021.

Regarding the remaining two factors, Kastner's history and characteristics and the nature and seriousness of the danger to any person or the community, Kastner is employed as a civilian

by the U.S. Air Force at Wright-Patterson Air Force Base. Kastner has no criminal history. The Pretrial Service Agency, however, noted that Kastner presented a medium risk of rearrest. ECF No. 10 at 1 (Pretrial Services Agency recommendation). Also, the defendant contends that Kastner's "background has been vetted by Ohio authorities when he sought and received his concealed carry permit." ECF No. 20 at 4. Yet Kastner's concealed carry permit was issued on January 7, 2020, well before the riot on January 6, 2021, so Ohio authorities were unable to factor in Kastner's actions on January 6, 2021, when issuing the permit. Finally, as discussed above, the government has reason to believe that Kastner brought a firearm from Ohio to Maryland and, at a minimum, contemplated bringing the firearm to the U.S. Capitol, based primarily on his Google search activity.

Outside of the Bail Reform Act framework, the defendant emphasizes that Pretrial Services in the Southern District of Ohio does not oppose lifting the firearms condition. But, prior to this brief, Pretrial Services in the Southern District of Ohio did not have access to the most relevant evidence, including Kastner's Google search history and his specific actions on January 6, 2021.

Finally, Kastner has failed to provide a reason for needing a firearm. His employment does not require him to possess a firearm, and he has made no argument regarding self-defense or even recreation.

## CONCLUSION

WHEREFORE, for the above-stated reasons, the Court should deny Kastner's Motion to Modify Condition of Release.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By: _____
      LAURA E. HILL
      Trial Attorney, Detailee
      NV Bar No. 13894
      175 N Street, NE, 9th Floor
      Washington, D.C. 20002
      Laura.E.Hill@usdoj.gov
      (202) 598-3962