UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | USDC No. 21-cr-725-01 (RDM) |
| Jared Kastner, *defendant*. ) | |

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO MODIFY CONDITION OF RELEASE

Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, respectfully replies to the government's Response to Defendant's Motion to Modify Conditions of Release ("Response")..

1. Defendant is charged in a four-count criminal information with misdemeanor offenses the government alleges he committed on January 6, 2021, at the United States Capitol. Those offenses are Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Disorderly Conduct in a Capitol Building; and Parading, Demonstrating, or Picketing in a Capitol Buildings, violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§5104(e)(2)(D) and (e)(2)(G), respectively. Defendant is charged with codefendant Luke Faulker, who is charged identically.

2. The question the Court must answer is whether or not, under 18 U.S. §3142(c)(1)(B, permitting the defendant to possess firearms only when serving in his church's security detail is "the least restrictive further condition, or combination of conditions, that…will reasonably assure …the safety of any other person and the community, which may include the condition that the person…(k)(viii) refrain from possessing a firearm, destructive device or other dangerous weapon…" That's where the issue is joined.

3. The defendant takes issue with several items in the Response. The defendant will not quarrel here with this Court's characterization in *United States v. Paul Hodgkins,* 21-cr-0188 (RDM) that the events of January 6 constituted, as the Response notes, "an assault on the Capitol…and an assault on democracy." (Response, "Argument, part II," page 5. Defendant does dispute that he himself "participated in *storming* the Capitol building." (Response, page 6) The transitive verb "storm" means to "attack, take, or win over by storm//*storm* a fort." (Webster's Online Dictionary) Defendant's entered the Capitol peacefully, without using destructive means (e.g., the breaking of windows or doors), and he did not assault property or persons while inside the building. Images from the event accurately depict the storming of the building by others; the defendant was not one of them. The Response points to no factual assertions to establish that the defendant "stormed" the building.

4. The Response lists online searches the defendant made, starting on the evening of January 4, 2021, of various gun laws pertaining to "virginia beach gun laws," "Large Capacity Magazine in Virginia;" "concealed carry magazine limit DC," "concealed carry on train in DC," and so forth. (Response, page 6) Also noting a separate visit to the website, "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." This recitation darkly implies that the defendant was not only armed on his visit to D.C. for the January 6 events but also considered or planned violence. Defendant submits that, as described, this was *more* likely the effort of a responsible gun owner to assure compliance with firearms laws that can (and do) vary from place to place, state to state and even town to town. There are states that require firearms, when transported by motor vehicle, to be placed in a locked trunk, free of ammunition; in other

places, they may be kept in the glove box of a car or even openly in the passenger compartment.[1] There is *no* evidence – and the Response points to none – that the defendant brought a firearm into the District, much less onto the Capitol grounds or into the building itself.  Yet, in a sense, it does not matter whether or not the defendant had a firearm, because there is no evidence that he violated firearms laws during his trip to the District, his time here, or on returning to Ohio. There is also no evidence that the Google searches demonstrate – "at a minimum" no less! – that the defendant "contemplated bringing the firearm to the U.S. Capitol…." (Response, page 7)

     5. The Response notes defendant's assertion in his Motion that his "background (was) vetted by Ohio authorities when he sought and received his concealed carry permit." (ECF No. 20 at 4)  It then says that, since the permit was issued nearly a year before the January 6 events, "Ohio authorities were unable to factor in Kastner's actions on January 6, 2021, when issuing the permit."   The assertion is completely wrong.  An examination of the "Application for License to Carry a Concealed Handgun," issued by the Attorney General of the State of Ohio, shows that nothing about the defendant's January 6 conduct – even if he were eventually *convicted* of any or all of the four misdemeanor charges he faces – would *disqualify* him from receiving legally a concealed carry permit. (*See* https://www.ohioattorneygeneral. gov/Files/ Forms/Forms-for-Law-Enforcement/Concealed-Carry- License-and-Renewal Application.aspx)[2]

---

[1] Years ago, counsel represented in D.C. Superior Court a businessman from Massachusetts.  He owned fast food restaurants and frequently had to deposit large amounts of cash in his local bank.  He obtained a concealed carry permit based on need. He brought his daughter to D.C. to matriculate in college and while here, they  went to visit the National Archives.  Before he going  through security, he volunteered to the officer that he had a handgun strapped to an ankle holster, which his permit allowed him to possess. He was prepared to turn it over to security while in the building, but that offer was rebuffed.  The officer immediately arrested him for Carrying a Pistol without a License.. He spent three days in jail (it was during a federal holiday weekend) before being released.  The businessman's mistake was thinking that his state's permit would allow him to legally carry the firearm in D.C.  It's this kind of rude awakening that one can avoid by carefully reviewing laws in states through which one may travel.
[2] Ohio is an "open carry" state. No statute establishes this affirmatively, rather it is implied by Section 2923.12 ("Carrying Concealed Weapons") in the Ohio Laws and Administrative Rules, https://codes.ohio.gov/ohio-revised -code/ section- 2923.12.  Moreover, Ohio does not require the applicant for a concealed carry permit to establish a

6. The Response states that "Kastner has failed to provide a reason for needing a firearm," neither as a condition of employment nor for self-defense or even recreation. (Response, page 7)  If pressed, the defendant can give one: "I desire a legal means to carry a concealed handgun for defense of myself or a member of my family while engaged in lawful activity." (Id, Section VI(2), page 4) It's the reason – the only reason – the State of Ohio requires of each applicant for a concealed carry permit.[3]

For the reasons stated above, and those which he made in his original Motion, the defendant urges the Court to remove completely the restriction on the possession of firearms during the pendency of this case.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

---

*special* reason or need for carrying a concealed weapon; one must attest only to a general need. (*See* Exhibit, "State of Ohio Application for License to Carry a Concealed Handgun," 5 pp.)

[3] Defendant seeks a lifting of any firearms restriction, which would include his right in Ohio to carry a concealed firearm.  But this would necessarily include the lifting of his right in Ohio to openly carry a firearm.  That aspect should not be overlooked.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Monica Ann Stump, Esq., assistant U.S. Attorney for the District of Columbia, and Laura E. Hill, Esq., U.S. Dept. of Justice - CIV, this 4th day of February, 2022.

                              /s/
                              _____
                              *Nathan I. Silver, II*