UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America ) | |
| ) | |
| v.   ) | USDC No. 21-cr-725-01 (RDM) |
| Jared Kastner,   *defendant*.   ) | |

### MOTION TO RECONSIDER ORDER DENYING
### DEFENDANT'S MOTION TO REVIEW CONDITION OF RELEASE

Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, respectfully moves the Court to reconsider its Order (ECF Docket No. 35, Feb. 28, 2022) denying defendant's motion to review conditions of release ("Motion") (ECF Docket No. 21, Jan. 20, 2022).[1] The relief sought was to lift the restriction on defendant's ability to possess firearms during the pendency of this case. Defendant respectfully takes issue with the Court to reconsider its denial of his motion, and will respond to the Court's stated reasons for the denial in order in which they appear.

1. The Court states that "the firearms restriction is reasonable under the circumstances." Currently the defendant has limited permission to possess a firearm as part of a security detail at his church; he may possess a firearm, which the church provides after the defendant arrives at th premises, at services three times a week, once on Wednesdays and twice on Sundays. The problem with the restriction is that it overlooks the principal reason the defendant possesses a firearm: to protect himself and those close to him. It is laudable that he helps out his church in providing armed security; the Court is aware of the terrible attacks that have taken place in the past few years in houses

---

[1] The government opposed defendant's motion (ECF Docket No. 23, filed Feb. 4, 2022). Counsel for defendant has asked the government to withdraw its opposition to defendant's motion in light of developments in *United States v. Tina Logsdon,* 22-cr-23-02 (TFH), discussed infra. The government opposes a reversal of the Court's order denying a modification of the firearms restriction.

of worship in the United States. It is to avoid such an attack that the defendant has volunteered to put *his* life on the line to protect others.  But the defendant's service to his church is secondary to his own self-protection.

2. The defendant recognizes, as the Court stresses, the "'critical' need to 'safeguard' the Pretrial Services officers who visit the home [of criminal defendants] in the course of supervision." (citations omitted) (ECF Doc. 35, page 2)  In this instance, the defendant is charged with non-violent misdemeanor offenses and has been released on the least restrictive reporting requirements possible, home visits are neither anticipated nor likely.  Per the release order, "The defendant must (a) submit to supervision by and report for supervision to the Southern District of Ohio (Dayton) & verify address if not already done." (ECF Doc. 11, ¶7(a), page 2)  The only other requirements (apart from the firearms restriction) have to do with (1) travel and (2) a stay-away order from the District of Columbia, except for stated exceptions.   It is the Southern District of Ohio that provides "courtesy supervision."  Joshua Bohman, the officer so supervising, has already said that if he needs to visit the defendant in his home, he will call in advance.

3.  The Court in its order noted that the local (D.C.) Pretrial Services officer, whom it characterized as "supervising," objected to the lifting of the restriction, finding that objection to be significant.  Yet two points must be made: (1) the job of the D.C. officer in this instance is largely ministerial, not active; she must collect information from the officer on the ground (in Ohio), and relate it to the Court before each hearing or as needed.  Truly she is a supervising officer in name only.  (2) The Ohio officer supervises defendants in a state which permits both the open carry of firearms, and soon even *concealed* carry, without a permit.[2]  We may presume that Mr. Bohman is

---

[2] Ohio Gov. Mike DeWine recently signed a law that removes the permit requirement for the concealed carry of firearms,  so long as the person is 21 years of age or older and are legally eligible to own and possess a firearm in the states.  The law will go into effect in mid-June. (Patricia McKnight, "Ohio

mindful of the local laws, and of local customs, too, so one may expect him to take care to take precautions, as he sees fit, on home visits.  In sum, to give less credit to the actual supervisory officer's informed position than to that of one who is simply restating her office's policy, seems not reasonable in the circumstances.

    4.  The Court observes that while the "Defendant is charged with misdemeanors, he stands accused of being among the first people to breach the U.S. Capitol…where he was confronted by a line of law enforcement officers…and allegedly remained unlawfully in the Capitol building while rioters screamed and pushed  against law enforcement." (Id. at page 3)  On the contrary, whether or not the defendant's entry was legal or illegal, with permission or without, he did not engage in violence against persons or property during the entire time he was in or near the Capitol, and his presence while others "screamed and pushed against law enforcement" does not signify approval of or acquiescence in such protestors' actions.  He could not be expected to enter the scrum or take sides in such commotion.  His "silence," à la Sir Thomas More, did not mean "consent."

    5.  The defendant also quarrels with the Court's observation that his internet searches were "evidence that he hoped, if lawful, to bring a weapon equipped with a large capacity magazine to the rally-turned riot…"  Rather, his conduct and actions were evidence of his intent to obey the law.   Had he been armed and determined to cause trouble, he could have brought a firearm illegally to the rally.  There's no evidence he did.

    6.  In two other January 6 cases, judges of this Court have lifted restrictions on firearms.  In *United States v. Tina Logsdon,* 22-cr-722-01 (TFH),  Judge Thomas F. Hogan recently lifted the restriction on firearms possession for that defendant.  Ms. Logsdon, like the defendant, has no

---

Becomes Latest State to Permit Concealed Gun Carry Without a Permit," newsweek.com, March 14, 2022 (https://www.newsweek.com/ohio-becomes-latest-state-allow-concealed-gun-carry-without-permit-1687963)

criminal record, is charged with the same non-violent misdemeanors as the defendant, legally possesses her firearm.[3] It is for her protection and that of her family. The government in the Logsdon case, upon reviewing her motion to lift the restriction, agreed that a

"... modification of the pretrial firearms restriction is justified in this case. Ms. Logsdon is not charged with any crimes of violence and has no violent criminal history. Ms. Logsdon is not required to meet with Pretrial Services in person at this time. Ms. Logsdon has asserted that she wishes to possess a firearm in her home while her husband works overnight and Ms. Logsdon is at home with their children. Ms. Logsdon has an Illinois permit to possess a firearm in her home. Based on those unique circumstances, the parties agree that a modification of the condition can be imposed here. The parties agree that Ms. Logsdon should not possess any firearm other than her own personal firearm in her residence for personal protection, and not possess any other weapon or destructive device. If at any time Ms. Logsdon meets with Pretrial Services in person, she should not be allowed to possess her firearm during those visits." (ECF Doc.18, 22-cr-23-01, page 2 of 2)[4]

Likewise, in *United States v. Loruhamah Yazdani-Isfehani*, 21-cr-543-03 (CRC), Judge Christopher R. Cooper lifted the restriction for a similarly-situated defendant, keeping in place the restriction on other destructive devices and weapons, and allowing the defendant to possess her firearm in her residence, for her protection and that of her boyfriend's children, who are frequent overnight guests. (Minute Order, April 5, 2022). There, too, the government did not oppose lifting the restriction as to firearms kept in the residence for her protection.[5]

    7. The irony of the firearms restriction here is that it is designed for a specific purpose: to protect pretrial officers from potential harm. Yet no one contends, and the government has never argued at the several hearings, that the defendant is a danger to the public at large. Apart from not

---

[3] Ms. Logsdon resides in Illinois, which requires firearms owners to obtain a Firearm Owner's Registration Card, known as a FOID card, for legal possession. The FOID allows only the possession of the firearm in one's home (or likely place of business) but not outside the home. Mrs. Logsdon possesses such a card. Counsel represents Mrs. Logsdon in that case.

[4] In granting the motion, Judge Hogan *sua sponte* ordered, after consultation with Pretrial Services, that the agency was relieved from making visits to Mrs. Logsdon's home during the pendency of the case. Counsel later learned from PSA Off. Andre Sidbury that PSA asked Judge Hogan not to require it to make such visits to the Logsdon home.

[5] Counsel represents the defendants in both the Logsdon and Yazdani cases.

asking for his detention or more restrictive conditions of release, the government has not contended that the defendant would endanger others who come to his residence, either friends or family, unexpected visitors or persons soliciting for charitable, religious or commercial purposes, for example, Girl Scouts, Jehovah's Witnesses, or representatives of lawn care companies or housekeeping services. Given that the defendant is not considered –and has no history of being– a danger to the general public, it is not reasonable to conclude that he would be a danger to a supervisory officer, especially to one (namely, Joshua Bohman) who has already said that he would contact the defendant before making a visit so the defendant could secure the firearm.

8. Last, the restriction if left in place means that the defendant would himself be unprotected for a period of many months – from, say, a criminal home invasion. That is the principal purpose of his having a firearm. It is defeated if he is not permitted to possess firearms legally, in his home, during the pendency of this case.

9. The government has informed counsel that it continues to oppose the lifting of the restriction in this case.

For the reasons stated above, the defendant renews his request that the Court lift the restriction on his possession of firearms during the pendency of this case.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Laura E. Hill, Esq., U.S. Dept. of Justice - CIV, this 13th day of April, 2022.

/s/
_____
*Nathan I. Silver, II*