UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-725 (RDM) |
| : | |
| JARED SAMUEL KASTNER, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO REVIEW CONDITIONS OF RELEASE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Jared Kastner's ("Kastner") Motion for Reconsideration of Order Denying Defendant's Motion to Modify Conditions of Release. Mot. to Reconsider, ECF No. 37. The defendant is again seeking to amend his conditions of release by removing the firearms restriction. The government continues to oppose removing this condition of release.

I.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

The government sets forth the details of Kastner's participation in this attack in its Opposition to Kastner's Motion to Modify Conditions of Release. ECF No. 22. In short, mere minutes after the initial breach of the U.S. Capitol building, the defendant unlawfully entered the building. The initial breach occurred at 2:12 p.m., and Kastner entered the Capitol at 2:17 p.m. After entering, he walked toward the Crypt, where he was confronted by a line of law enforcement

officers who were preventing rioters from progressing into the building. During the standoff that ensued, rioters yelled at the law enforcement officers and moved forward toward the officers. Instead of leaving, Kastner remained in the Crypt while a crowd of rioters pushed forward into the law enforcement officers, eventually breaking the line. Ultimately, Kastner remained in the building for about 18 minutes.

Also, the government has reason to believe that Kastner brought a firearm with him when he traveled to Maryland and, at a minimum, considered bringing the firearm with him into D.C. on January 6, 2021. Kastner's Google search history indicates as such. On January 4, 2021, at 7:04 p.m. ET, Kastner Googled "virginia beach gun laws", and subsequently visited the website "Large Capacity Magazines in Virginia." At 7:05 p.m. ET on the same day, Kastner, a concealed carry permit holder, Googled "concealed carry magazine limit washington DC." The next day, January 5, at 12:18 p.m. ET, he Googled "concealed carry on train in DC." Approximately one minute later, at 12:19 p.m. ET, Kastner Googled "concealed carry on train in 'DC.'" About ten seconds later, he visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." After, at 12:55 p.m. ET, the defendant Googled "metro to DC from VA." Notably, Washington, D.C. does not allow firearms on any Metrorail transit system, including the metro. *See* https://mpdc.dc.gov/page/prohibited-places-carry-concealed-firearm. Kastner subsequently rode the D.C. metro into the District on January 5, 2021, and on January 6, 2021. Kastner's Google search history, as well as his possession of a concealed carry permit and the fact that he subsequently rode the metro after Googling concealed carry laws on the metro, indicate that he traveled from Ohio with the firearm and contemplated bringing it with him to the Capitol.

Due to his participation in the riot, the defendant was charged by criminal complaint on

December 7, 2021, and arrested on December 8, 2021. ECF Nos. 1, 5. Also on December 8, 2021, the government filed a criminal information, charging Kastner with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 7.

Magistrate Judge Faruqui set Kastner's conditions of release ("Order Setting Conditions of Bond") on December 13, 2021, at the defendant's initial status conference in Washington, D.C. ECF No. 11. Prior to the initial status conference, the Pretrial Services Agency prepared a pretrial services report, which included a recommendation that Kastner not be allowed to possess firearms. ECF No. 10 at 1. At the initial appearance, consistent with this recommendation, the government requested that the defendant not be permitted to possess firearms while on pretrial release; however, upon learning that the defendant provides security for his church at services on Wednesdays and Sundays, the Court set the following condition related to firearms:

> Defendant is permitted to possess a firearm only while on the premises of the Wilmington Baptist Church (herein "Church"), during the services held on Wednesdays and those held twice on Sundays. The firearm is to be stored and secured on the Church's premises. Defendant is prohibited from taking the firearms off of the Church's grounds. Outside of that limited exception, Defendant is prohibited from possessing firearms at any other time outside of the services mentioned. Defendant must also provide proof of the lawful ability to carry a firearm to Southern District of Ohio (Dayton) within 72 hours.

ECF No. 11 at 3.

On January 21, 2022, the defendant filed a motion to modify conditions of release ("Motion"), in which the defendant argued that the above-described firearms restriction was not reasonable or justified. ECF No. 20. On January 28, 2022, the government filed its response in

opposition to the Defendant's motion. ECF No. 22. On February 4, 2022, the defendant filed a reply in support of his motion ("Reply"). ECF No. 23. On February 18, 2022, the Court heard oral argument on the Motion, including testimony from the D.C. Pretrial Services officer supervising the defendant, who opposed modifying the firearms restriction. On February 28, 2022, the Court issued a written order denying the defendant's motion ("Order"), finding that "the firearms restriction is reasonable under the circumstances." Order, ECF No. 35 at 2. The Court credited the views of the supervising D.C. Pretrial Services officer who "remains concerned that permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." *Id.* at 2-3. The Court expressed concern based on Kastner's Google search history that he even considered bringing "a weapon equipped with a large capacity magazine to the rally-turned-riot." *Id.* at 3-4. The Court found that "a partial restriction is appropriate" and noted that Magistrate Judge Faruqi's decision to allow Kastner to possess a firearm during limited time windows to provide security at his church "was reasonably tailored to Defendant's circumstances." *Id.* at 3-4. On April 13, 2022, the defendant filed the Motion for Reconsideration. ECF No. 37.

## II.   ARGUMENT

### A.   Standard of Review

This Court "regularly entertain[s] motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure." *In Matter of Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016). Typically, Courts look to Federal Rule of Civil Procedure 60(b) when considering a motion for reconsideration; however, "the standard of review for interlocutory decisions differs from the standards applied to final judgments under" Rule 60(b). *Id*. (quoting *Williams v. Savage*, 569 F.Supp.2d 99, 108 (D.D.C. 2008)). Federal Rule of Civil

Procedure 54(b) allows a district court to revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[R]econsideration of an interlocutory decision is available under the standard 'as justice requires.'" *Liuksila*, 133 F.Supp.3d at 256 (quoting *Judicial Watch v. Dep't of Army*, 466 F.Supp.2d 112, 123 (D.D.C. 2006)). To that end, a Court may consider "whether the court 'patently' misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. *Id*. (citing *Loumiet v. United States*, 65 F. Supp. 3d 19, 2014 WL 4100111, at *2 (D.D.C. 2014)).

Motions for reconsideration, however, "cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 48 (D.D.C. 2013).

      **B.**      **Kastner has failed to present facts or arguments to warrant reconsideration.**

Kastner does not argue that there has been any intervening change in law, any clear error by the Court, or any new evidence not previously available. Instead, Kastner repeats arguments made in his prior motion. In so doing, Kastner has failed to provide any new information that would justify the Court revisiting its Order.

The Court already found the existing firearms restriction to be reasonable, temporary, and justified. The Court noted that the Magistrate Judge "struck a reasonable balance" by allowing Kastner to possess firearms three times per week while serving on his church's security detail and prohibiting Kastner from possessing firearms at his home to protect Pretrial Services officers who

5

might visit the defendant. Order at 3. Kastner has not specified any change in circumstance that would justify the modification of this temporary restriction. Rather, Kastner references the same broad concerns for "self-protection" that the Court already considered when denying the defendant's previous motion. *See* Reply at 4.

The position of the D.C. Pretrial Services officer who is supervising Kastner has not changed. The Court previously heard testimony from that officer in opposition to the defendant's request to modify the conditions of his pretrial release to remove the firearms restriction. Order at 2-3. Kastner now asks the Court to reject that testimony and, instead, to consider Ohio firearms laws and "local customs," and then to "presume" that the Pretrial Services officer providing courtesy supervision in the Southern District of Ohio would "take care to take precautions" before visiting the armed defendant at his home. Mot. to Reconsider at 2-3. The Court has already credited the views of the D.C. Pretrial Services officer, who "remains concerned that permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." Order at 2-3.

Kastner has not presented any arguments with respect to his conduct on January 6 that this Court has not already considered and rejected. Although the defendant is charged with non-violent misdemeanors, the Court noted in its Order that the defendant was "among the first people to breach the U.S. Capitol" and "remained unlawfully in the Capitol building while rioters screamed and pushed against law enforcement." *Id.* at 3. Based on the defendant's internet search history in the days preceding January 6, the Court—assuming *arguendo* that the defendant's suggestion that his Internet search history showed that he was attempting to comply with the law—still expressed concern about the defendant's "hope[] to bring a weapon equipped with a large capacity magazine to a rally-turned riot." *Id.* at 3-4. Kastner may disagree with the Court's characterizations of the

above-described conduct on and around January 6, but the defendant does not dispute any of the facts set forth in the Court's Order. The defendant's purported "quarrels" with the Court's interpretations of the facts do not constitute new evidence not previously available under the standard of review, nor sufficient reason to revisit the imposition of a temporary restriction as a condition of pretrial release.

Kastner notes that the government has not opposed motions to modify the firearms condition of release in two pending January 6 matters, *United States v. Tina Logsdon*, 22-cr-23 (TFH) and *United States v. Loruhamah Yazdani-Isfehani*, 21-cr-543 (CRC). These cases presented unique circumstances with facts that are distinguishable from those in Kastner's case. Primarily, neither defendant in the *Logsdon* and *Yazdani* cases brought or—to the government's knowledge—even considered bringing a firearm with them to Washington, D.C. for the riot. Unlike Kastner, neither Logsdon nor Yazdani searched for "concealed carry magazine limit Washington DC" or "concealed carry on train in 'DC'" on the day before their unlawful entry into the Capitol.

Also, both Logsdon and Yazdani care for children alone in the evenings. *See* 22-cr-23, ECF No. 17 at 4. And Yazdani's boyfriend, who lives with Yazdani, keeps a firearm in the home that is needed for his employment as a law enforcement officer. 21-cr-543, ECF No. 36 at 2-3. In addition, Logsdon was not required to meet with Pretrial Services officers in person, which obviated the need to protect officers from possible firearms-related incidents. 22-cr-23, Minute Order, March 9, 2022; 22-cr-23, ECF No. 20. With this context and considering that Pretrial Services may conduct home visits for Kastner, the firearms restriction continues to be necessary.

The Bail Reform Act requires that a defendant on pretrial release be "subject to the least restrictive condition, or combination of conditions" that will "reasonably assure the appearance of

7

the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). When considering the "least restrictive" conditions of pretrial release, Magistrate Judge Faruqui already granted Kastner an exception to the firearms restriction, which allows the defendant to serve in a security detail at his church. Order at 1; Order Setting Conditions of Bond at 3. This Court further concluded that "on the facts of this case, a partial restriction is appropriate and… the Magistrate Judge's decision was reasonably tailored to Defendant's circumstances." *Id*. at 4. Kastner has not informed the Court of any intervening change in law regarding the firearms restriction or presented any new evidence that would justify the Court revisiting this issue. *See* 555 F. Supp. 2d at 129. Rather, the defendant is using the motion as "an opportunity to reargue facts and theories upon which a court has already ruled." 729 F. Supp. 2d at 14. The Court did not commit an error in its analysis when determining that the firearms restriction as a condition of the Kastner's pretrial release remains part of the least restrictive combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(c)(1)(B).

## CONCLUSION

WHEREFORE, for the above-stated reasons, the Court should deny Kastner's Motion for Reconsideration of Order Denying Defendant's Motion to Modify Conditions of Release.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

By: ✍ *W N Widman*
_____
WILL N. WIDMAN
NC Bar No. 48158
Trial Attorney, Detailee
1301 New York Avenue NW, 8th Floor
Washington, DC 20530
(202) 353-8611
Will.Widman@usdoj.gov


BY: /s/_____
LAURA E. HILL
Trial Attorney, Detailee
NV Bar No. 13894
175 N Street, NE, 9th Floor
Washington, D.C. 20002
(202) 598-3962
Laura.E.Hill@usdoj.gov

9