UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case:  21-cr-725-1 (RDM) |
| | : |
| JARED SAMUEL KASTNER | : |
| | : |
| Defendant. | : |

**DEFENDANT JARED KASTNER'S RESPONSE AND OPPOSITION TO UNITED STATES' MOTION TO REVOKE RELEASE ORDER**

COMES NOW Defendant JARED SAMUEL KASTNER ("Kastner"), by and through counsel, with this response and opposition to the UNITED STATES' motion to revoke Kastner's release.  Every claim for revocation is groundless.

The United States invokes 18 U.S.C. § 3148(b) in its efforts to revoke.  That subsection provides that revocation may occur where, after a hearing, a court finds (A) probable cause that the person has committed a crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release.  In this case, the government does not allege that Kastner has committed any new crimes.  Rather, the government alleges that Kastner's new residence in Indiana contains firearms (which probation officers did not see).

Significantly, Kastner is charged with only misdemeanors.  Even if Kastner were ultimately to be convicted of every single count, Kastner still has the right to possess firearms.

Subsection (2)(B) provides that a rebuttable presumption favoring revocation exists where a supervisee committed a Federal, State, or local felony.  But under the 8th amendment, when the government alleges mere violations of conditions, the presumption is in favor of continued release. See *United States v. Hassanshahi*, 989 F. Supp. 2d 110 (D.D.C. 2013) ("Our system of criminal justice embraces a strong presumption against detention." *United*

*States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act requires that the Court release a defendant if there are release conditions that reasonably assure that the individual will not present a flight risk or a danger to the community.

**The Government's Interpretation of "possessed in the home" is not the law.**

The United States relies on an interpretation of the Conditions of Release that is at odds with federal law. Under federal law, "possession" of a firearm means "when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *United States v. Perryman*, 20 F.4th 1127, 1135 (7th Cir. 2021). Citing *Henderson v. United States*, 575 U.S. 622, 626 (2015).

Even "constructive possession" is established only "when the defendant exercises exclusive control over the premises." *Perryman*, at 1135 (citing *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012) (describing the two forms of constructive possession, "exclusive control" being the first and more straightforward); see also *United States v. Davis*, 896 F.3d 784, 791 (7th Cir. 2018).

At no time has Defendant Kastner possessed any firearms in the home. Any and all firearms kept in Kastner's marital residence were securely kept away from Kastner's control by Kastner's wife.

Yet the United States now seeks to reinterpret the phrase "possession in the home" to mean 'being present in the home.' This is not the law. As the Seventh Circuit held in *Perryman*, a firearm might be present in a home without a particular individual having "possession" of it. But "[h]ere, the evidence permitted a rational jury to find that Perryman constructively possessed the weapon discovered in his closet" because "Perryman lived alone in the home where the police found the weapon and, thus, controlled the premises.":

> While others may have had access, no one else resided there, so there was never joint ownership. And, as previously noted, when a defendant alone controls a property, a jury can reasonably assume that he controls the weapons present there. . . . .Moreover, the weapon was in Perryman's closet, by his clothes, feet away from the drugs that he confessed to own, and in the same master suite where he slept every night.

*Perryman*, at 1135.

"Actual possession exists when a tangible object is in the immediate possession or control of the party." *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir.1984). "Constructive possession exists when a person ... knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.1998). "Presence alone near a gun ... does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir.2007) (en banc) (quotations omitted). But where "other incriminating evidence [is] coupled with presence, ... [it] will serve to tip the scale in favor of' constructive possession. *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir.1976)."…

…"Our recent case law has acknowledged that "[a]lthough 'mere proximity' to a gun is insufficient to establish constructive possession, evidence of some other factor— including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise — coupled with proximity may suffice." *United States v. New-som*, 452 F.3d 593, 610 (6th Cir.2006).",,,

…"Here, the officers testified that they found Mackey standing in front of the kitchen sink with his arms outstretched, his hands just inches from the gun. A juror rationally could have concluded that Mackey had dropped the gun when he heard the officers enter the apartment, thus establishing that he had the "immediate possession or control" of the gun that is necessary for actual possession. See *Beverly*, 750 F.2d at 37". The D.C. Circuit holds that in addition to knowledge and proximity, "[t]here must be some action, some word, or some

conduct that links the individual to the [contraband] and indicates that he had some stake in [it], some power over [it]." *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (quoting *United States v. Pardo*, 636 F.2d 535, 549 (D.C. Cir. 1980)).

Kastner's conditions of release do not require that there be "no firearms in the home," but simply prohibits Kastner from *possessing* a firearm except while doing security duties at his church.

During the subject Pre-Trial Supervision home visit, with the Defendant and his Wife present, a checklist of questions were asked, one being 'are there firearm(s) in the house?'. Apparently the Wife answered in substance, yes, but they were under lock and key under her exclusive control. The PTS personnel apparently did not ask to see the locked containers, never had any opportunity to view the size, shape, weight or security features of the containers, nor did they ever ask or were offered any type of description of the contents of the box.

The conditions taken as a whole allows us to make some pretty easy inferences regarding any motivation to oppose the interpretation that the procedure employed by the Defendant's wife regarding firearms is anything other than appropriate and consistent with the conditions as a whole. First, any prohibition against this Defendant charged only with misdemeanors will be temporary at best, and only upon conviction.  The Court's obviously prudent decision to allow the Defendant to carry a firearm multiple times per week while at church services undercuts any contrary "public safety" argument to maintain the prohibition of the Defendant having access to firearms, or, at the least, the Wife having the exclusive use and possession of firearms in the home. It seems obvious that carrying a firearm at the Church services confers a far greater responsibility on the person, and places him among an arguably large number of Church Patrons et al. in the process than the responsibility of one who merely has a firearm in his residence. (Of course the Defendant has steadfastly strictly complied with

the firearm restriction imposed herein.) Thus, since there is an absence of a public safety concern, the only purpose for ordering the prohibition against Defendant's possession of a firearm in the home is punitive in nature, and taken another step, should the Court prohibit any firearm(s) in the home, including those of the Defendant's Wife, treads heavily on the Wife's Second Amendment rights, and, given her status as a "woman", her equal rights under the law.

## ARGUMENT

The allegations in the release violation charge against Defendant, ostensibly for violating his release conditions by "possessing" a firearm is not to any degree supported by the facts. The only evidence is that either Defendant or Wife admitted there were firearms in the house. This leaves open nearly every relevant fact necessary to establish Defendant "possessed" a firearm. Admissions of Husband/Defendant Jared Kastner or his Wife, Kaitlyn Kastner, are insufficient as a matter of law to meet the clear and convincing burden necessary to establish that Defendant "possessed" a firearm, either directly or constructively, in violation of his bond conditions. *Harris v. Jones*, 2017 WL 1017644, at *7 (N.D. Fla. Jan. 31,2017) ("Traditional application of the corpus delicti rule requires the State to at least show the existence of each element of the crime to authorize the introduction of a defendant's admission or confession.") Accordingly, the United States cannot even prove that there was any firearm(s) in the house at the time of the visit or at any other time since there is a complete absence of any underlying observations to establish this.

The allegations necessary to be made, and then proven, to establish "possession" or "constructive possession" are set forth below in these Sixth Circuit cases which should control as that is where the Defendant is supervised; the District of Columbia cases should not ipso facto control as Defendant was ordered to stay out of the District as a condition of his release. The limiting factor here pertinent to these facts is that "presence alone near a gun" is insufficient. Moreover, it further establishes that "constructive possession" is proved when a

person "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." There is absolutely no evidence to provide a basis for concluding any of these above requisite elements. Even if they can prove there was a firearm in the Defendant's and his Wife's house, 'mere proximity' to a gun is insufficient to establish constructive possession, evidence of some other factor— including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise — coupled with proximity may suffice.

Attached is an affidavit of Kaitlyn Kastor (Defendant's wife) which establishes that any firearms that are the subject of the United States' motion as being allegedly improperly stored at the household of Defendant have been removed.

Further, all the safeguards possible were in place and honored in accordance with the Court's orders and conditions of release. Katlyn states     clearly that the firearms were hers, they were kept in secured, locked containers and she was the only person to have a key to the boxes. It is further apparent that she was aware of the Defendant, her Husband's, prohibition from possessing firearms other than as set forth by exception at his church services, and in fact used the same safeguards in her home as was ordered at the church by using secured, locked storage.

1) Officers indicated they "discovered" that Kastner's dwelling contained firearms; omitting that Kastner <u>himself disclosed</u> the existence of the firearms.
2) Officers never, in fact, saw any firearms, but were simply told about them by Kastner himself, who couldn't show the firearms to officers because he had no access to them or control over them.
3) Officers omitted the fact that Kastner's original release conditions in the U.S. Southern District of Ohio allowed him to own firearms as long as Kastner had no

access to the firearms; and that Kastner's transfer of supervision to the District of Indiana was under the assumption of the <u>same rules and conditions</u>.

4) Officers omitted that Kastner was recently married and that Kastner's wife Kaitlyn is the owner of the firearms in question.

**Kaitlyn Kastner has a constitutional right to keep arms in her home.**

The issue of prohibited persons dwelling in the same households with nonprohibited persons, who have a constitutional right to possess arms, has been addressed in a number of law review articles and cases.  *See*, for example, Eugene Volokh*, Nonlethal Self-Defense*, 62 STAN. L. REV. 199, 227 n. 121 (2009) (citing *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005), and *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995).).

Notably the Third Circuit addressed this issue in *United States v. Huet*, 665 F.3d 588 (3rd Cir. 2012).  Although the Third Circuit reversed the district court's dismissal of charges against Huet (a nonfelon with a right to keep arms who resided with her felon boyfriend), the Third Circuit did so on narrow, fact-related grounds.[1]  The Third Circuit recognized Huet's right to keep and bear arms, so long as she did not facilitate her boyfriend's unlawful possession.

The *Huet* case, and federal and state law generally, appear to be settling into agreement that a non-prohibited person such as Kaitlyn Kastner cannot be deprived of her rights simply due to her residence with a prohibited person.

---

[1] Huet was charged with facilitating and aiding and abetting her boyfriend's unlawful firearm use, and prosecutors contended that she committed overt acts in furtherance of such crimes.

## CONCLUSION

For all the reasons stated herein, Defendant prays for an order DENYING the motion of the United States to revoke Kastner's release.

                                                            Respectfully submitted,

                                                         /s/ John M. Pierce

## CERTIFICATE OF SERVICE

I hereby certify that, on September 6, 2022, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce

EXHIBITS:

(1) Affidavit of Kaitlyn Marie Kastner
(2) Firearms Removal Form
(3) Affidavit of William Murdock
(4) Affidavit of James Michael Rankin