## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JARED SAMUEL KASTNER,<br><br>*Defendant.* | Criminal Action No. 21-cr-725 (RDM) |

## ORDER

On August 22, 2022, the Pretrial Services Agency for the District of Columbia ("PSA") filed a Pretrial Violation Report, which is currently before the Court.  Dkt. 45.  After considering the relevant briefing, testimony, and other evidence, the Court finds that an order of revocation and detention is unwarranted under 18 U.S.C. § 3148(b).  The Court does find, however, that a more restrictive combination of conditions of release is needed reasonably to assure the safety of the community.  *See id.*; *see also* 18 U.S.C § 3142(c).

### I. BACKGROUND

This is one of the many criminal cases pending before this Court relating to the attack on the U.S. Capitol that occurred on January 6, 2021.  The government alleges that Jared Samuel Kastner was among the first people to breach the Capitol, entering "within five minutes of the mob's 'initial breach.'"  Dkt. 42 at 2 (quoting Dkt. 22 at 3).  Kastner witnessed a standoff between other rioters and law enforcement officers, but rather than leave the building, Kastner remained in the Capitol "while a crowd of rioters pushed forward into enforcement officers, eventually breaking the [law enforcement] line."  Dkt. 47 at 2.  Kastner is charged with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or

grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building or

grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in

a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *Id.*  He was arrested in Ohio on

December 8, 2021 and initially appeared in the Southern District of Ohio, where he was released

on personal recognizance.  *Id.* at 2-3.

According to the government, Kastner traveled from his home in Ohio to the

Washington, D.C. area on January 4, 2021.  Dkt. 42 at 2.  That night and the following day, he

allegedly conducted Google searches related to D.C. area gun laws, *id.*, and Kastner has

confirmed that he brought firearms with him on his journey from Ohio to the D.C. area and that,

before researching the relevant laws, he considered bringing a firearm to the January 6th rally,

Sept. 6, 2022 Hearing Tr.  He denies, however, that he brought firearms with him to the rally or

to the attack on the Capitol.  *Id.*

Kastner appeared virtually before Magistrate Judge Faruqui of this Court shortly after his

initial appearance in Ohio.  *Id.*  At that hearing, Kastner's counsel raised concerns about the

standard firearms condition to pretrial release, explaining that Kastner wanted an exception from

the condition because he "provide[d] security at his church," which "require[d] him to be

armed."  Dec. 14, 2021 Hearing Tr. at 21.  Kastner personally represented that he "would be able

to store a firearm . . . at a third-party location."  *Id.* at 23.  After hearing from the parties, Judge

Faruqui agreed to modify the standard conditions of release, but subject to the following

admonition: "**Mr. Kastner, you are not to have any firearms or explosive devices in your**

**residence at any time.  You are not to possess a firearm or explosive device at any time**

**except for one narrow limited exception, a firearm that is stored at your church's**

**premises.**"  *Id.* at 26 (emphasis added).  Kastner then swore to abide by the conditions of release. *Id.* at 28.

The written conditions of release confirmed that Kastner was not to possess a firearm except "while on the premises of the Wilmington Baptist Church."  Dkt. 11 at 3.  And they confirmed that the "firearm is to be stored and secured on the Church's premises;" that "Defendant is prohibited from taking the firearms off the Church's grounds;" and that "[o]utside of that limited exception, Defendant is prohibited from possessing firearms at any other time." *Id.*  Kastner then twice moved this Court to lift the remaining firearm restrictions.  Dkt. 20; Dkt. 37.  The Court denied both requests.  Dkt. 35; Dkt. 42.  In denying Kastner's first request, the Court noted the importance of protecting the safety of Pretrial Services officers, who may need to visit criminal defendants while on pretrial release, and "credit[ted]" the view of D.C. Pretrial Services that "permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit."  Dkt. 35 at 2-3.  Although Kastner reported that his Pretrial Services officer in Ohio took a more lenient view than D.C. Pretrial Services and indicated that he could simply "advise [Kastner] to store the firearms securely before" he "visit[s] the residence," the Court was unpersuaded.  *Id.* at 2.

Notwithstanding this direction from the Court, Kastner asserts that Pretrial Services Officer Joshua Bohman for the Southern District of Ohio permitted him to turn over his firearms to his father, David Kastner, with whom Jared Kastner resided, and allowed David Kastner to keep the firearms in a lock box in their shared home.  Dkt. 46 at 2.  In preparation for the hearing on the pending matter, PSA "reached out to the previous courtesy supervision officer in the Southern District of Ohio," who informed PSA that he did, in fact, permit Kastner "to have his firearm secured in a lock box within his residence."  Dkt. 48 at 2.  Officer Bohman "advised PSA

that he was still [mistakenly] going by the signed conditions of release that were imposed by the Southern District of Ohio instead of the Defendant's current conditions issued by Judge Faruqui." *Id.* As far as the Court can discern, Kastner never brought Magistrate Judge Faruqui's or the undersigned's orders to Officer Bohman's attention and never sought clarification from the Court.

In June 2022, Kastner informed PSA that he intended to move to the Southern District of Indiana due to his recent marriage. Dkt. 47 at 5-6. After the move, on July 26, 2022, Pretrial Services Officer Shallon Watson, acting as courtesy supervisor in the Southern District of Indiana, conducted a home visit at Kastner's new Indiana residence. *Id.* at 6. According to the government, "Officer Watson asked Kastner whether there were any firearms located at Kastner's residence," and Kastner "disclosed that his wife, Kaitlyn, had firearms within the residence," which included "two handguns and a rifle." *Id.* The parties dispute whether all three weapons were secured during the visit. Kaitlyn Kastner testified that all three weapons were in the lock box (although the rifle was disassembled, and the barrel was not in a lockbox). Sept. 6, 2022 Hearing Tr. The Court notes, however, that Kaitlyn submitted an affidavit attesting that "all firearms in the residence I share with Jared were *at all times* locked in suitable containers and I was the only person who had the key," Dkt. 55-1 at 1 (K. Kastner Decl. ¶ 5) (emphasis added), only later to acknowledge under questioning from the Court that she removed firearms for her personal use while Jared was not in the house. Officer Watson testified that she understood that the disassembled rifle and one of the handguns were not in a lock box, although all agree that she did not personally view any of the weapons. *Id.*; *see also* Dt. 47 at 6. Kastner maintains that he had an arrangement with Officer Bohman that his father could hold his guns

and that, after he moved to Indiana, he thought that he was under the same arrangement, but with his wife. *Id.*

On July 28, 2022, Kastner texted Office Watson to ask: "Can you remind me of what you had said regarding Kaitlyn's Firearms at the residence." Gov't Ex. 16. Officer Watson did not see the text message and thus failed promptly to respond. On August 5th, Kastner texted Officer Watson again to inform her that he was "following the rules of the agreement." *Id.* On August 13th, he again texted Officer Watson to inform her of upcoming travel plans. *Id.* Finally, on August 15th, Officer Watson texted Kastner, apologizing for not "get[ting] back with [him] regarding firearms but" plainly stating that Kaitlyn "**cannot have firearms in the residence. Wherever you are residing needs to be free of any firearms.** I double checked with DC and your conditions." *Id.* (emphasis added). Officer Watson then asked: "Does your wife have a place to store her firearms until the completion of this case?" *Id.* Kastner responded: "Yes. There is a lockbox." *Id.* That same day, Officer Watson responded:

> I received this email from Katrina Stanford regarding firearms: "**All firearms should be removed from the residence. Mr. Kastner should already be aware of this condition of release. Nothing has changed in his conditions of release but his address.** Let me know if you run into any issues about removing any firearms from the residence and I will notify the court."

*Id.* (emphasis added). Kastner replied:

> False. Conditions under Southern Ohio were not so. Firearms were secured in the residence in the possession of another resident who could legally possess firearms. These INCLUDED firearms registered to the defendant. This is agreed upon through Pretrial Services, and (as far as I am aware) checked and cleared with DC. DC Pretrial has made false statements and even in court before.

*Id.* (formatting modified). Officer Watson did not leave matters there, once again explaining: "The copy of the conditions I have that we went over and that you signed state you cannot have access to firearms outside the Wilmington church. Since you are no longer a member of that

church you should not have access to firearms at all, at this time." *Id.*  She added, "[i]f you disagree with this I can let DC know and they can set the matter for a hearing to clear up any confusion." *Id.*  Kastner responded: "Let me discuss this with my lawyer." *Id.*  Neither Kastner nor his lawyer raised any issue with the Court, which had previously made clear that he was not permitted "to have any firearms or explosive devices in [his] residence at any time" and that the sole exception to the firearms condition allowed him to possess a firearm while working security at his church on the condition that the "firearm [was] stored at [the] church." Dec. 14, 2021 Hearing Tr. at 26.

On August 22, 2022, PSA Officer Katrina Stanford filed the Pretrial Violation Report at issue in this Order.  Dkt. 45.  In the Report, she recommended that "the defendant be removed from Pretrial Supervision due to non-compliance" for having firearms within his residence. *Id.* at 2.  She stated that "the defendant is fully aware that no firearm should be within his residence." *Id.*  In light of the Report, the Court ordered the parties to appear for an in-person hearing on August 31, 2022.  Aug. 26, 2022 Minute Order.  Kastner filed a motion to convert the hearing to video, Dkt. 46, which the Court denied, Aug. 29, 2022 Minute Order.  Kastner then changed counsel and moved to continue the hearing for 60 days.  Dkt. 49, 50, 52.  The Court denied that request but briefly continued the hearing to permit Kastner's new lawyer to attend, Dkt. 53.

On August 29, 2022, Officer Watson again exchanged texts with Kastner.  Dkt. 47 at 8.  Officer Watson asked Kastner: "Were you able to remove the firearms from your residence?  If so, where were they relocated?"  Gov't Ex. 19 (formatting modified).  Remarkably, Kastner responded: "Was I directed to do so?  That was unclear." *Id.*  Officer Watson replied "[y]es," and she then included a screenshot of her prior text messages.  Kastner responded: "Kaitlyn has

relocated them. I am not fully aware of the details at this time." *Id.* Officer Watson advised: "Let me know once you know. I will be out to meet with you within the next week to sign a firearms disposal form." *Id.* Kastner replied: "I have all our messages. The image you just sent contains no directions or clarification. A what form?" *Id.* Officer Watson replied, quoting her August text message, "'You should not have access to firearms at all, at this time[.]'" *Id.* She continued: "If you are unclear[,] I am telling you now they need to be out. My job is to ensure you abide by the conditions set forth by the sentencing court. I'm not into game[s] Mr. Kastner." *Id.* In an affidavit, Kaitlyn Kastner attested that: "I have removed all of the firearms from our residence as of 29 August, 2022." Dkt. 55 Ex. 1 at 1.

The Court held a hearing on this matter on September 6, 2022, and heard testimony from Officer Stanford, Officer Watson, Jared Kastner, David Kastner, and Kaitlyn Kastner. The Court has considered that testimony, as well as the parties' evidence and briefing. This matter is now ripe for the Court's decision.

## II. ANALYSIS

"A person who has been released under section 3142 of this title, and who has violated a condition of his release is subject to a revocation of release, an order of detention, and a prosecution for contempt of court. 18 U.S.C. § 3148(a). A "judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

> (1) finds that there is--

>> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

>> (B) clear and convincing evidence that the person has violated any other condition of release; and

> (2) finds that--

> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id.* at § 3148(b). "If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions," however "the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly." *Id.*

Starting with the first prong of the inquiry, this Court finds by "clear and convincing evidence that" Kastner violated the conditions of his release, at least after August 15, 2022. Before August 15th, it is at least possible that Kastner was genuinely confused as to the conditions of his pretrial release. On one hand, Judge Faruqui stated, in the clearest of terms, that Kastner "was not to have any firearms or explosive devices in [his] residence at any time." Dec. 14, 2021 Hearing Tr. at 26. But, on the other hand, Officer Bohman did allow Kastner to keep his firearms in a lockbox (which turned out to be a locked closet) within his residence in Ohio, creating some confusion on the issue. In addition, the Court is unable to determine on the existing record whether all three of Kaitlyn Kastner's firearms were, in fact, secured in a lockbox on every occasion when Kastner was in the residence.

As of August 15th, however, Kastner was clearly in violation of the conditions of his pretrial release. On that date, Officer Watson texted Kastner that Kaitlyn "cannot have firearms in the residence" and that "[w]herever you are residing needs to be free of any firearms." Gov't Ex. at 16. There is no ambiguity whatsoever in that statement. Instead of immediately

complying with Officer Watson's direction, however, Kastner claimed that he could keep firearms in his residence and went so far as to accuse D.C. Pretrial Services of making false statements. *Id.* And when Officer Watson asked Kastner on August 29th to confirm that the firearms were out of the residence, he disingenuously claimed confusion and that Officer Watson's orders were "unclear." Gov't Ex. at 19.

The Court, accordingly, finds by clear and convincing evidence that at least between August 15th and August 29th, Kastner was in knowing violation of his conditions of pretrial release. At that point, any possible confusion regarding Magistrate Judge Faruqui's otherwise unambiguous order (which might have resulted from Officer Bohman's mistaken advice) was unquestionably clarified. Kastner's assertions of continuing confusion—at least at that point—are not credible, and they amount to gamesmanship designed to resist the Court's order and the clear direction from Officer Watson. *See* Sept. 6, 2022 Hearing Tr. ("Q. And so at this point in the text thread and exchange, . . . was . . . it your understanding that you were being directed at that point or required to ensure that the firearms were removed from the residence altogether? A. No not[] at all in fact[.] [I]t was my understanding that I should continue according to the agreement that I already had with Mrs. Shallon Watson."). Other aspects of Kastner's testimony, moreover, were evasive or less than forthright. *See, e.g.*, Sept. 6, 2022 Hearing Tr. ("Q. How many firearms do you own personally? A. It's been a little while[.] I have a few. Q. Do you know exactly how many? A. No." . . . . Q. "THE COURT: I'm sorry I find that kind of hard to believe[,] that you don't know how many firearms [you own.] [I]f it's a few[,] how can you not know how many you own. THE WITNESS: I think it's approximately 10. I haven't touched them in a long time."); *id.* (in response to questions about Judge Faruqui's admonition that

Kastner not have any firearms in his residence, Kastner responded "I believe that was . . . referring to the limited exception" for church).

A finding that Kastner violated the conditions of release does not end of the inquiry, however.  The Court must next consider whether there is any combination of conditions of release that will ensure Kastner will not flee or pose a danger to the community and whether Kastner is likely to abide by any combination of conditions of release.  18 U.S.C. § 3148(b).  At least as the record now stands, the Court is unpersuaded that revocation is warranted.  To start, the Court finds that Kastner is not a flight risk:  He is facing only misdemeanor charges, and there has been no indication that Kastner is likely to flee.  Public safety, however, poses a more substantial concern, given Kastner demonstrated reticence to follow Officer Watson's directions regarding a matter of public safety and the risk posed to his supervising officers during any (announced or unannounced) home visits.

A handful of considerations, however, persuade the Court that conditions short of incarceration offer a less restrictive means of reasonably assuring the safety of the community, at least at this time.  *See* 18 U.S.C. § 3148(b)(2)(A).  First, although Kastner's conduct to date raises significant concerns about his ability to abide by the orders of this Court and the directions of his supervising Pretrial Services officers, this is his first violation.  The Court hopes that he now understands that he is on thin ice and that any future violations may require his incarceration pending trial.  Second, Kastner is charged with only misdemeanors, none of which involve any allegations that Kastner personally engaged in any violent conduct.  Third, and relatedly, he has no criminal record and, most notably, no history of engaging in any violent criminal activity.  Fourth, his wife has agreed—on pain of contempt—to ensure that no weapons, whether his, hers, or anyone else's, are allowed in their mutual home, regardless of how any such weapon is stored

or kept.  Finally, a lesser step—here, a period of home detention—can serve the purpose of ensuring that Kastner fully appreciates the need to abide by all conditions of his pretrial release and to do so unbegrudgingly.  Should he fail to abide by the conditions of his release in the future, the Court can impose additional restrictions, can institute contempt proceedings, and/or can revoke Kastner's pretrial release.

In light of the above, it is hereby **ORDERED** that:

(1) Jared Samuel Kastner may not reside in any residence where any firearm is present, no matter how the firearm is stored or kept.  In addition, should Kastner wish to stay with his father or anyone else during the period of his pretrial release, there may not be any firearm (no matter how the firearm is stored or kept) in that residence during his stay.[1]

(2) So long as Kaitlyn Kastner resides with Jared Kastner, she may not possess any firearm in their shared residence, no matter how it is stored or kept, during the pendency of the proceedings against Jared Kastner.  With Kaitlyn Kastner's consent, this order binds her as well as Jared Kastner, and any violation may subject either or both Jared and Kaitlyn Kastner to contempt of court.

(3) The exemption providing that Jared Kastner could possess a firearm while on the premises of the Wilmington Baptist Church, Dkt. 11 at 3, is vacated.  Kastner may not possess a firearm at any time and under any circumstances, including while at church.

---

[1] Kastner's observation that the phrase "in proximity to any firearm" from the Court's prior order is ambiguous is well-taken.  *See* Dkt. 56 at 2.  As such, the Court has modified that condition in this Order.  Should Mr. Kastner have any further confusion about the Order, he should alert the Court immediately.

(4) Jared Kastner is committed to Home Detention for a period of thirty (30) days,

beginning September 15, 2022 and running through October 15, 2022.  He will be

restricted to his place of residence continuously during that period, except for

authorized absences, enforced by an appropriate means of surveillance by the Pretrial

Services Agency.  In consultation with Pretrial Services, Kastner may receive

authorization to leave his home for gainful employment, religious services, medical

care and at such other times as may be specifically authorized by his supervising

Pretrial Services officer.  Electronic monitoring is an appropriate means of

surveillance for home detention.  Pretrial Services shall place Jared Kastner on home

detention by September 15, 2022.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 11, 2022