UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-725 (MAU) |
| | : | |
| JARED SAMUEL KASTNER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY CONDITIONS ON SECOND AMENDMEN GROUNDS

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Jared Kastner's ("Kastner") Motion to Modify Conditions on Second Amendment Grounds.[1] ECF No. 88. For the fourth time during the pendency of this matter, the Defendant is seeking to amend his conditions of pretrial release to alter or remove the firearms restriction. The government continues to oppose removing this condition of release.

The Court should deny the Defendant's motion under the standard of review for a motion for reconsideration. Kastner has not presented any intervening change in law with regards to conditions of pretrial release, any clear error, or new evidence not previously available when Judge Moss ruled on the Defendant's initial motion to remove the firearms restriction or on the Defendant's first motion for reconsideration. In the alternative, if the Court entertains the Defendant's arguments regarding the constitutionality of a firearms restriction as a condition of

---

[1] While the defendant's filing is styled as a "Motion to Modify Conditions on Second Amendment Grounds," the government contends that it is instead a second motion for reconsideration of Judge Moss's order denying the defendant's motion to modify the defendant's conditions of pretrial release to remove the firearms restriction. *See* Order Denying Motion to Modify Conditions of Release, ECF No. 35; *see also* Order Denying Motion for Reconsideration of Order Denying Motion to Modify Conditions of Release, ECF No. 42.

1

pretrial release, the Court should find that the law allowing a court to order that the Defendant "refrain from possessing a firearm" while on pretrial release when that is the least restrictive way to ensure community safety comports with the Second Amendment. 18 U.S.C. § 3142(c)(1)(B)(viii).

I.   **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

   A.   **Events of January 6, 2021 and Kastner's arrest**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

The government sets forth the details of Kastner's participation in this attack in its Opposition to Kastner's Motion to Modify Conditions of Release. ECF No. 22. In short, mere minutes after the initial breach of the U.S. Capitol building, the Defendant unlawfully entered the building. The initial breach occurred at 2:12 p.m., and Kastner entered the Capitol at approximately 2:17 p.m. After entering, he walked toward the Crypt, where he was confronted by a line of law enforcement officers who were preventing rioters from progressing further into the building. During the standoff that ensued, rioters yelled at the law enforcement officers and moved forward toward the officers. Instead of leaving, Kastner remained in the Crypt while a crowd of rioters pushed forward into the law enforcement officers, eventually breaking the line. Ultimately, Kastner remained in the Capitol building for about 18 minutes.

The government has reason to believe that Kastner brought firearms with him when he traveled from Ohio to Maryland and that, at a minimum, he considered bringing those firearms with him into Washington, D.C., on January 6, 2021. As further detailed below, in August 2022,

Kastner was found to be in violation of his pretrial release based on firearms being present in his residence. During a pretrial violation hearing, on September 6, 2022, Kastner testified that he brought firearms with him on his journey from Ohio to the Washington, D.C., area on January 4, 2021. However, Kastner denied bringing firearms with him to the rally or to the attack on the Capitol on January 6. *See* ECF 57. Consistent with the above admission, Kastner's Google search history revealed that he researched bringing firearms with him to the D.C. area. On January 4, 2021, at 7:04 p.m., Kastner Googled "virginia beach gun laws", and subsequently visited the website "Large Capacity Magazines in Virginia." At 7:05 p.m. on the same day, Kastner, a concealed carry permit holder, Googled "concealed carry magazine limit washington DC." The next day, January 5, at 12:18 p.m., he Googled "concealed carry on train in DC." Approximately one minute later, at 12:19 p.m., Kastner Googled "concealed carry on train in 'DC.'" About ten seconds later, he visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." After, at 12:55 p.m., Kastner Googled "metro to DC from VA." Notably, Washington, D.C. does not allow firearms on any Metrorail transit system, including the metro. *See* https://mpdc.dc.gov/page/prohibited-places-carry-concealed-firearm. Kastner subsequently rode the D.C. metro into the District on January 5, 2021, and on January 6, 2021. Kastner's testimony during a pretrial violation hearing for firearms possession, as well as Kastner's Google search history, revealed that he traveled from Ohio to the D.C. area with firearms and, at a minimum, contemplated bringing those firearms with him to D.C. on January 6.

Due to his participation in the riot, the Defendant was charged by criminal complaint on December 7, 2021, and arrested on December 8, 2021. ECF Nos. 1, 5. Also on December 8, 2021, the government filed a criminal information, charging Kastner with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C.

§ 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 7.

**B.    The Court's Restriction on Kastner's Possession of Firearms as a Condition of Pretrial Release and Subsequent Litigation**

Magistrate Judge Faruqui set Kastner's conditions of release ("Order Setting Conditions of Bond") on December 13, 2021, at the Defendant's initial status conference in Washington, D.C. ECF No. 11. Prior to the initial status conference, the Pretrial Services Agency prepared a pretrial services report, which included a recommendation that Kastner not be allowed to possess firearms. ECF No. 10 at 1. At the initial appearance, consistent with this recommendation, the government requested that the Defendant not be permitted to possess firearms while on pretrial release; however, upon learning that the Defendant provides security for his church at services on Wednesdays and Sundays, Magistrate Judge Faruqui set the following condition related to firearms:

> Defendant is permitted to possess a firearm only while on the premises of the Wilmington Baptist Church (herein "Church"), during the services held on Wednesdays and those held twice on Sundays. The firearm is to be stored and secured on the Church's premises. Defendant is prohibited from taking the firearms off of the Church's grounds. Outside of that limited exception, Defendant is prohibited from possessing firearms at any other time outside of the services mentioned. Defendant must also provide proof of the lawful ability to carry a firearm to Southern District of Ohio (Dayton) within 72 hours.

ECF No. 11 at 3.

On January 21, 2022, the Defendant filed a motion to modify conditions of release, in which the Defendant argued that the above-described firearms restriction was not reasonable or justified. ECF No. 20. In that brief, the Defendant asserted his right to possess firearms under the

4

Second Amendment. *Id.* at 4-5, *citing McDonald v. Chicago*, 561 U.S. 742 (2010) and *Heller v. District of Columbia*, 554 U.S. 570 (2008). However, the Defendant conceded that "[t]hat right may, of course, be subject to reasonable restrictions." ECF No. 20 at 4.

On January 28, 2022, the government filed its response in opposition to the Defendant's motion. ECF No. 22. On February 4, 2022, the Defendant filed a reply in support of his motion. ECF No. 23. On February 18, 2022, Judge Moss heard oral argument on the motion, including testimony from the D.C. Pretrial Services officer supervising the Defendant, who opposed modifying the firearms restriction. On February 28, 2022, Judge Moss issued a written order denying the Defendant's motion, finding that "the firearms restriction is reasonable under the circumstances." ECF No. 35 at 2. Judge Moss credited the views of the supervising D.C. Pretrial Services officer who "remains concerned that permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." *Id.* at 2-3. Judge Moss expressed concern based on Kastner's Google search history that he even considered bringing "a weapon equipped with a large capacity magazine to the rally-turned-riot." *Id.* at 3-4. Judge Moss found that "a partial restriction is appropriate" and noted that Magistrate Judge Faruqui's decision to allow Kastner to possess a firearm during limited time windows to provide security at his church "was reasonably tailored to Defendant's circumstances." *Id.* at 3-4.

On April 13, 2022, the Defendant filed a motion for reconsideration, again arguing that the firearms restriction was unreasonable and unjustified. ECF No. 37. On May 2, 2022, the government filed its response in opposition to the Defendant's motion. ECF No. 39. On May 13, 2022, Judge Moss issued a written order denying the Defendant's motion, finding that "the standard for reconsideration [had] not been met" and upholding the firearms restriction as a condition of the Defendant's pretrial release. ECF No. 42 at 8-10. Again, Judge Moss credited the

views of Kastner's supervising D.C. Pretrial services officer, quoting extensively from the Pretrial Services Agency ("PSA") report filed at Judge Moss's request in response to the Defendant's Motion for Reconsideration:

> Any doubt about whether justice requires reconsideration of this issue is put to rest by a report filed (at the Court's request) on May 4, 2022, by PSA. Dkt. 40; see also Minute Order (Apr. 19, 2022). That report explains why PSA "maintains that the current conditions of release are sufficient and [the] least restrictive" means of assuring the safety of other persons and the community. Dkt. 40 at 2. According to the report, "[i]n courtesy supervision cases[,] the lead office" for "decisions and statements" is "the office where the case originates"—in this case, PSA. *Id.* The report further explains that, although Kastner is not currently receiving home visits, "[that] does not preclude home visits from occurring should a law enforcement need arise," and, such "[h]ome visits are not always announced." *Id.* Given the risks associated with unannounced visits, the report continues, "officer safety is paramount." *Id.* Moreover, the report explains that during Kastner's post-arrest interview, he was "asked if he would remove the firearms from his home where he resided with his parents" and both Kastner and his father "indicated that they would remove the firearms but they would not be happy." *Id.* And finally, the report notes that PSA maintains its view that, notwithstanding Kastner's lack of prior convictions, "his alleged conduct prior to January 6 . . . as well as the violent criminal activity" that he was present for "support the currently imposed least restrictive conditions for this defendant while under active pretrial release." *Id.*

ECF. No. 42 at 9-10.

In the conclusion of his order denying the motion for reconsideration, Judge Moss credited the PSA report as a "reflect[ion] of the official views of the agency charged with Kastner's pretrial release" and noted that the PSA report "[took] into account the safety of the community and any officer who might be asked to conduct a home visit, with or without advance notice." *Id.* at 10.

**C.      Kastner's Move to Indiana and Pretrial Violation for Firearms**

On June 9, 2022, D.C. Pretrial Services Officer Katrina Stanford informed the government that Kastner planned to move from the Southern District of Ohio to the Southern District of Indiana. According to Officer Stanford, the move was scheduled to occur on June 25, 2022. As result of the move, the responsibility for Kastner's courtesy pretrial supervision would be

6

transferred to the Southern District of Indiana. The Defendant cited his recent marriage as the basis for the move to Indiana. ECF. No. 45.

On July 26, 2022, Pretrial Services Officer Shallon Watson, acting as a courtesy supervision officer in the Southern District of Indiana, conducted a home visit at Kastner's new residence in Indiana. Kastner did not inform Officer Watson of the presence of firearms in his residence prior to Officer Watson's home visit. During an interview at Kastner's residence, Officer Watson asked Kastner whether there were any firearms located at the residence. Kastner disclosed that his wife, Kaitlyn, had firearms within the residence. Officer Watson was informed that there were three firearms in the residence, including two handguns and a rifle. Officer Watson was told that one of the handguns was secured in a lockbox, and the other handgun and rifle were not secured. Officer Watson did not observe any of the weapons; rather, she learned of the firearms from Kastner. After the home visit and based on advice from Kastner's supervisor PSA officer in D.C., Officer Watson subsequently instructed Kastner that firearms were not allowed in his residence. Rather than immediately comply, Kastner told Officer Watson that he would talk to his lawyer about the matter.

On August 22, 2022, Officer Stanford filed a Pretrial Violation Report. ECF No. 45. Officer Stanford advised:

> PSA recommends that the defendant be removed from Pretrial Supervision due to non-compliance. On 7/26/2022, the defendant relocated to the Southern District of Indiana. A home assessment was also conducted on 7/26/2022 and a firearm was discovered within the residence. The Southern District of Indiana instructed the defendant to remove the firearm from the residence. PSA was informed that the defendant stated that he will follow up with Defense Counsel concerning the removal of the firearm.

*Id.* at 2.

The cited bases for the recommendation included the Order Setting Conditions of Release issued by Judge Moss on December 14, 2021; the Order Denying the Defendant's Motion to Modify the Firearms Restriction issued on February 28, 2022; and the Order Denying the Defendant's Motion for Reconsideration of the Motion to Modify the Firearms Restriction issued on May 13, 2022. *See* ECF Nos. 11, 35, and 42. Based on the above, Officer Stanford advised, "The Defendant is fully aware that no firearm should be within his residence." ECF No. 45 at 1-2. After PSA issued a Pretrial Violation Report, Kastner denied being told by Officer Watson to remove the firearms from his residence. When Kastner eventually told Officer Watson that the firearms had been removed from his residence, he denied knowledge of where the firearms were relocated.

On August 26, 2022, in light of the Pretrial Violation Report, Judge Moss ordered Kastner, his attorney, the government, and a representative from PSA to appear for an in-person hearing on August 31, 2022. In response, on August 27, 2022, Kastner filed a Motion to Convert the In-person Hearing to VTC (ECF No. 46), which Judge Moss denied.

On September 6, 2022, Judge Moss held an in-person pretrial violation hearing, which included testimony from Officer Stanford, Officer Watson, Jared Kastner, David Kastner (the Defendant's father), and Kaitlyn Kastner (the Defendant's wife). Based on the testimony, Judge Moss issued an order finding by clear and convincing evidence that Kastner had violated the conditions of his release by having firearms in his residence and revising Kastner's conditions of pretrial release to include additional firearms restrictions. ECF No. 57. The government and PSA requested detention based on the violation; however, Judge Moss determined that there were conditions less restrictive than incarceration to ensure the safety of the community and issued the following revised conditions of pretrial release:

> (1) Jared Samuel Kastner may not reside in any residence where any firearm is present, no matter how the firearm is stored or kept. In addition, should Kastner wish to stay with his father or anyone else during the period of his pretrial release, there may not be any firearm (no matter how the firearm is stored or kept) in that residence during his stay. [internal fn. omitted]
> (2) So long as Kaitlyn Kastner resides with Jared Kastner, she may not possess any firearm in their shared residence, no matter how it is stored or kept, during the pendency of the proceedings against Jared Kastner. With Kaitlyn Kastner's consent, this order binds her as well as Jared Kastner, and any violation may subject either or both Jared and Kaitlyn Kastner to contempt of court.[2]
> (3) The exemption providing that Jared Kastner could possess a firearm while on the premises of the Wilmington Baptist Church, Dkt. 11 at 3, is vacated. Kastner may not possess a firearm at any time and under any circumstances, including while at church.
> (4) Jared Kastner is committed to Home Detention for a period of thirty (30) days, beginning September 15, 2022 and running through October 15, 2022. He will be restricted to his place of residence continuously during that period, except for authorized absences, enforced by an appropriate means of surveillance by the Pretrial Services Agency. In consultation with Pretrial Services, Kastner may receive authorization to leave his home for gainful employment, religious services, medical care and at such other times as may be specifically authorized by his supervising Pretrial Services officer. Electronic monitoring is an appropriate means of surveillance for home detention. Pretrial Services shall place Jared Kastner on home detention by September 15, 2022.

*Id.* at 11-12.[3]

On December 19, 2022, the Defendant made a motion for a trial by magistrate judge (ECF No. 69), which the government did not oppose (ECF No. 73). Judge Moss granted the motion and the case was reassigned to this Court. On January 25, 2023, Kastner filed

---

[2] During the pretrial violation hearing, Kaitlyn Kastner "agreed—on pain of contempt—to ensure that no weapons, whether his, hers, or anyone else's, are allowed in their mutual home, regardless of how any such weapon is stored or kept." *Id.* at 10-11.

[3] In his order, Judge Moss found Kastner's testimony about his understanding of the firearms restriction to be "not credible" and "gamesmanship designed to resist the Court's order and the clear direction of [PSA]." ECF 57 at 9. When Kastner was questioned about the number of firearms that he owned and his understanding of Magistrate Judge Faruqui's admonition that Kastner not have any firearms in his residence, Judge Moss found Kastner's responses to be "evasive or less than forthright." *Id.* Judge Moss informed Kastner that he was on "thin ice and that any future violations may require his incarceration pending trial." *Id.* at 10.

the instant motion, inviting this Court to revisit the firearms restriction as a condition of pretrial release.

## II.     ARGUMENT

### A.     Kastner has failed to meet the standard of review for a motion to reconsider

#### i.  Standard of Review

Judges "regularly entertain motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure." *In Matter of Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016). Typically, courts look to Federal Rule of Civil Procedure 60(b) when considering a motion for reconsideration; however, "the standard of review for interlocutory decisions differs from the standards applied to final judgments under" Rule 60(b). *Id*. (quoting *Williams v. Savage*, 569 F.Supp.2d 99, 108 (D.D.C. 2008)). Federal Rule of Civil Procedure 54(b) allows a district court to revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[R]econsideration of an interlocutory decision is available under the standard 'as justice requires.'" *Liuksila*, 133 F.Supp.3d at 256 (quoting *Judicial Watch v. Dep't of Army*, 466 F.Supp.2d 112, 123 (D.D.C. 2006)). To that end, a Court may consider "whether the court 'patently' misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. *Id*. (citing *Loumiet v. United States*, 65 F. Supp. 3d 19, 2014 WL 4100111, at *2 (D.D.C. 2014)).

Motions for reconsideration, however, "cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. District of*

*Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 48 (D.D.C. 2013).

### ii. Kastner has failed to present facts or arguments to warrant reconsideration.

Kastner does not argue that there has been any clear error by Judge Moss, or any new evidence not previously available. The Defendant, instead, mistakenly argues that there has been an intervening change in law. Kastner relies primarily on an out-of-circuit district court opinion, *United States v. Quiroz,* 2022 WL 4352482 (W.D. Tx 2022), which concerns the constitutionality of criminal statute 18 U.S.C. § 922(n)—*not* the constitutionality of pretrial release conditions under 18 U.S.C. § 3142(c)(1)(B)(viii)—and which is currently under appeal in the Fifth Circuit Court of Appeals. The district court in *Quiroz* specifically declined to consider whether restricting a defendant's right to possess a firearm as a condition of pretrial release is constitutional. *Id.* at *11. Though *Quiroz* relied on *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), *Bruen* did not create a change in law with respect to pretrial release. By citing inapplicable case law, Kastner has failed to provide any new change in law that would justify this Court revisiting Kastner's conditions of pretrial release.

The Bail Reform Act requires that a defendant on pretrial release be "subject to the least restrictive condition, or combination of conditions" that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In a prior order, Judge Moss noted that Magistrate Judge Faruqui "struck a reasonable balance" by allowing Kastner to possess firearms three times per week while serving on his church's security detail and prohibiting Kastner from possessing firearms at his home to protect Pretrial Services officers who might visit the Defendant. ECF No. 35 at 3. However,

Kastner could not abide by those reasonable conditions, and he received a violation for having firearms in his household. ECF No. 45. After a violation hearing, Judge Moss found by clear and convincing evidence that Kastner had knowingly violated the terms of pretrial release. ECF No. 57. Judge Moss found that "a more restrictive combination of conditions of release is needed reasonably to assure the safety of the community." *Id.* at 1, *citing* 18 U.S.C. § 3148(b) and 18 U.S.C § 3142(c). These more restrictive conditions included the removal of the accommodation for Kastner to have a firearm while at church and clear conditions that both Kastner and his wife were restricted from having firearms in their shared household. ECF No. 57 at 11-12. The government contends that firearms conditions ordered by Judge Moss in this matter are reasonable, temporary, and justified.

Kastner has not specified any change in circumstance or facts that would explain the need for modification of this temporary restriction. Rather, Kastner references the same broad concerns for self-defense that Judge Moss already considered when denying the Defendant's previous motions. *See* ECF 88 at 1-2. Judge Moss did not commit an error in his analysis when determining that a more restrictive combination of conditions of release was needed reasonably to assure the safety of the community. ECF No. 57 at 1. The firearms restriction as a condition of the Kastner's pretrial release remains part of the least restrictive combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

The position of the D.C. Pretrial Services officer who is supervising Kastner has not changed. The Court previously heard testimony from that officer in opposition to the Defendant's request to modify the conditions of his pretrial release to remove the firearms restriction. ECF No. 35 at 2-3, *see also* ECF No. 57 at 8-9. Judge Moss previously credited the views of the D.C. Pretrial

Services officer, who "remains concerned that permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." ECF No. 35 at 2-3. Kastner does not address the views (or safety) of Pretrial Services officers at all in the most recent motion.

Kastner has not presented any arguments with respect to his conduct on January 6 that Judge Moss did not already consider and reject. Although the defendant is charged with non-violent misdemeanors, Judge Moss noted that the defendant was "among the first people to breach the U.S. Capitol" and "remained unlawfully in the Capitol building while rioters screamed and pushed against law enforcement." ECF No. 35 at 3. Based on the Kastner's own admissions during a pretrial hearing, the government now understands that he traveled from Ohio to the D.C. area with firearms. ECF 57 at 2. Based on the Defendant's internet search history in the days preceding January 6, Judge Moss previously expressed concern about the defendant's "hope[] to bring a weapon equipped with a large capacity magazine to a rally-turned riot." ECF No. 35 at 3-4. Kastner may disagree with Judge Moss's characterizations of the above-described conduct on and around January 6, but the defendant has not disputed any of the facts set forth in prior orders.

In a prior motion to remove the firearms restriction, as further detailed above, the Defendant already recognized that his Second Amendment rights are "subject to reasonable restrictions" while on pretrial release. *See* ECF 20 at 4-5. Judge Moss has twice concluded that these restrictions are reasonable. As explained further below, neither *Bruen* nor *Quiroz* have called into question Kastner's prior concession that reasonable restrictions on firearm rights are permissible.

There has not been a change of law regarding the constitutionality of the firearms restriction as a condition of pretrial release. Kastner notes that in *Quiroz,* the District Court for

Western District of Texas recently held that 18 U.S.C. § 922(n), a statute that criminalizes the receipt of a firearm by a person under indictment, is unconstitutional. *See* 2022 WL 4352482 at *13. While the Defendant argues at length in his motion that § 922(n) is unconstitutional and that "the Government [] must show that § 922(n) is consistent with the historical understanding of the Second Amendment," Kastner is not charged with a violation of 18 U.S.C. § 922(n). ECF No. 88 at 4. Kastner is charged with violations of 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). The Defendant requests that this Court remove "all conditions of his pretrial release which limit or interfere with his 2nd Amendment right to keep and bear arms or with the 2nd Amendment rights of his wife, family and household" based on the holding in *Quiroz*. However, the court in *Quiroz* specifically declined to comment on the constitutionality of the restricting a defendant's right to possess firearms as a condition of pretrial release. *See* 2022 WL 4352482 at *11. The government contends that the Defendant's reliance on *Quiroz* is unfounded and does not meet the "intervening change in law" standard of review for a motion to reconsider.

While *Quiroz* relies on *Bruen* to reach its conclusion, *Bruen* did not work a change in law with respect to conditions of pretrial release. *Bruen* set forth the appropriate framework for evaluating laws that burden the rights of law-abiding, responsible individuals. It did not purport to upset a long line of authority upholding liberty restrictions on those charged with crimes. In his reliance on *Quiroz*, Kastner has not informed the Court of any intervening change in law regarding the conditions of pretrial release or presented any new evidence that would justify the Court revisiting this issue. Rather, the defendant is using the motion as "an opportunity to reargue facts and theories upon which a court has already ruled." 729 F. Supp. 2d at 14.

**B.    A temporary firearms restriction is proper and justified**

    **i. Certain rights must give way to reasonable restrictions on pretrial release to protect others' safety, lessen risk of flight, and ensure compliance with release conditions**

While the Court need not decide the constitutional issue that Kastner raises, the temporary firearm restriction passes constitutional muster as it is consistent with the Nation's historical tradition of gun regulation and imposing reasonable conditions of release on defendants facing criminal charges.[4]

There is no absolute to right to pretrial release and no absolute right for a defendant to possess a firearm while on pretrial release. *E.g., United States v. Portes*, 786 F.3d 758, 766 (7th Cir. 1985); *United States v. Snead*, No. 12-132M, 2014 WL 4473773, at *8 (D.R.I. Feb. 4, 2014). Logically, if the government has the power to detain a defendant pending trial and deny him his liberty and freedom of movement, and to deny him the right to possess a firearm altogether, the government must also have the lesser power to release him subject to appropriate conditions, such as a firearm restriction.

The Supreme Court upheld the constitutionality of the provisions of the 1984 Bail Reform Act allowing pretrial detention based on potential dangerousness. *United States v. Salerno*, 481 U.S. 739 (1987). Federal courts have also upheld the pretrial firearm restriction in

---

[4] Attached as Exhibit A is the "Response of the United States to Appellant's Memorandum," *U.S. v. Fencl*, 22-50316, ECF No. 16 (9th Cir. Jan. 13, 2023). In *Fencl*, the Ninth Circuit is considered the question: "Does the pre-trial release condition barring gun possession when that is the least restrictive way to ensure community safety violate the Second Amendment facially or as applied to Fencl?" The Ninth Circuit affirmed the district court's denial of the defendant's motion to modify the conditions of release and indicated that an opinion explaining that disposition will follow. *Fencl*, No. 22-50316, ECF No. 24 (Jan. 26, 2023). To avoid unnecessary exposition, government adopts and incorporates by reference the arguments regarding the constitutionality of firearms restrictions as a condition of pretrial release made in Exhibit A.

§ 3142(c)(1)(B)(viii) as constitutional. *Snead*, 2014 WL 4473773, at *8; *United States v. Campbell*, 309 F. Supp. 3d 738, 750 (D.S.D. 2018), *aff'd* No. 18-1578, 2018 WL 11392845 (8th Cir. May 4, 2018). In fact, "the imposition of a pretrial restriction on the possession of firearms has been found to be critical 'in most cases' because it safeguards the Pretrial Services officers who visit the home in the course of supervision." *Snead*, 2014 WL 4473773, at *8 (*citing United States v. Smedley*, 611 F.Supp.2d 971, 974 (E.D.Mo.2009)), *see also* ECF No. 35 and 42 (Judge Moss explaining in the instant matter why a temporary firearms restriction is necessary for the protection of Pretrial Services officers assigned to Kastner). Federal courts have found that the "prohibition from possession of firearms is not an unreasonable restriction on liberty and serves the interest in assuring the defendant's presence for trial." *E.g., Campbell*, 309 F. Supp. 3d at 750. In sum, the Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Salerno*, 481 U.S. at 748.

### ii. Kastner's *Bruen* challenge lacks merit

Kastner incorrectly contends that the firearm-prohibition conditions of his pretrial release "are unconstitutional on their face" after *Bruen*. ECF No. 88 at 7. His claim fails. To prevail on a facial challenge to a statute, "the challenger must establish that no set of circumstances exist under which the [statute] would be valid." *Salerno*, 481 U.S. at 745. A facial challenge carries a "heavy burden", and it is "the most difficult challenge to mount successfully." *Id*. The standard condition is a discretionary and temporary condition. A court may impose it after an individualized assessment of the defendant's circumstances and determination that it is needed to reasonably assure the defendant's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c)(B)(viii) (the court may impose the condition). The condition is

discretionary, and it no longer applies if charges are dismissed or a defendant is found not guilty, and the Court can modify it as needed.

Moreover, in *Bruen*, the U.S. Supreme Court repeatedly confirmed that the Second Amendment presumptively guarantees the right of "ordinary, law-abiding," "responsible" citizens to keep and carry firearms. *Bruen*, 142 S. Ct. at 2134; *see also District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). Simply put, Kastner falls outside the Second Amendment's protection because he isn't an "ordinary, law-abiding" citizen. Second Amendment rights are not unlimited. *See Heller*, 554 U.S. at 592; *see also Bruen*, 142 S. Ct. at 2128 ("From Blackstone through 19th-century cases, commentators and courts routinely explained that the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."), *see also Fecl* brief, Exhibit A at 21-22 ("The Second Amendment applies to law abiding citizens"). Kastner has been charged with four misdemeanor offenses arising out of the January 6 attack on the U.S. Capitol. In lieu of detention pending trial, he has been released subject to conditions that place reasonable limitations on his liberty to ensure his appearance as required and the safety of any other person and the community.

Under § 3142, a federal court can order a defendant detained pending trial, *Salerno*, 481 U.S. at 741, where he would necessarily be precluded from possessing any type of firearm while in custody. This is consistent with our Nation's historical tradition of firearms regulation, as there is no constitutional right to bail. *See Slye*, 2022 WL 9728732, at *3. And based on historical tradition, if the government has the greater power to put a defendant in custody pending trial and deny him the right to possess a firearm altogether, it must also have the lesser power to release him subject to reasonable conditions. *See United States v. Slye*, No. 1:22-MJ-144, 2022 WL

17

9728732, at *2 (W.D. Pa. Oct. 6, 2022). Imposing a standard condition restricting firearms possession does not offend Kastner's constitutional rights under the Second Amendment.

If an indictment for a crime and the interests in community safety can justify restrictions on Fourth, Fifth, and Sixth Amendment rights and even outright detention pending trial, then they can also justify the restriction of a defendant's Second Amendment rights as a temporary and judicially authorized condition of pretrial release. *See Bruen*, 142 S. Ct. at 2130 ("Th[e] Second Amendment standard accords with how we protect other constitutional rights"); *id*. at 2156 (the Second Amendment is subject to the same "body of rules" as "other Bill of Rights guarantees"). Restrictions on a defendant's liberty while charges are pending, even those as significant as detention, are necessary regulatory measures that do not violate the Constitution or the presumption of innocence. *Salerno*, 481 U.S. at 748; *Thomas*, 540 F. Supp. 3d at 371 (explaining that 18 U.S.C. § 3142(c)(1)(B) expressly provides that a pretrial release condition may require a person to refrain from possessing a gun notwithstanding the person's Second Amendment rights). Because the Second Amendment's protections are limited to "law-abiding, responsible citizens" and Kastner has not affirmatively demonstrated that he falls within that group of people, he is not entitled to Second Amendment protection here.

Even if Kastner were treated as a law-abiding citizen, the restriction temporarily barring gun possession as a condition of pretrial release when that is the least restrictive way to protect the community is consistent with historical tradition. As explained more fully in Exhibit A, that tradition includes: (1) historical restrictions on indicted defendants, including pretrial detention; (2) historical laws restricting the gun rights of groups deemed dangerous or untrustworthy; and (3) historical surety laws restricting the gun rights of people accused of posing a threat. *See* Exhibit A at 12-21 ("Historical analogues show that the pretrial-release gun condition is valid").

**Conclusion**

For these reasons, the government respectfully requests that the Court deny the Defendant's motion to remove the firearms restriction as a condition of his pretrial release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *(signature)*
_____
WILL N. WIDMAN
NC Bar No. 48158
Trial Attorney, Detailee
1301 New York Avenue NW, 8th Floor
Washington, DC 20530
(202) 353-8611
Will.Widman@usdoj.gov