**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-CR-725 (RDM)** |
| | **:** | |
| **JARED KASTNER,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**DEFENDANT'MOTION TO MODIFY CONDITIONS**
**ON SECOND AMENDMENT GROUNDS**

COMES NOW, the Defendant, Jared Kastner, by and through counsel, and herewith respectfully files his REPLY to the Government's Opposition and moves the Court for an order striking his release conditions prohibiting Kastner and his wife from possessing firearms. Kastner is a nonviolent defendant facing mere victimless misdemeanor charges, whose rights to keep and bear arms under the Second Amendment are being violated.

## I.  WHAT HAS CHANGED

Departing from the normal format of starting with an introduction and overview of facts, here it is probably most helpful to the Court to begin in an unusual fashion with what is different.

The Government correctly explains that the Defendant Kastner has filed several motions for modification of the terms of his release addressing the condition that he not be allowed to own or possess firearms while awaiting trial, while presumed innocent.  It is correct that this issue is important to Kastner, as important in his view as the ultimate resolution of his case.  It is obvious that legal uncertainties, especially on constitutional grounds, require that citizens assert their rights to be tested by all levels of the Judiciary.

In no way is Defendant Kastner unappreciative of the Court's granting of his release on bail while awaiting trial.  Kastner has no wish to weary or be disrespectful to this Court.  Kastner appreciates and welcomes the Court's allowance of him fulfilling his role as a volunteer security guard for his church by having access to a firearm kept only on the Church property, although he disagreed with the concept of having the firearm locked up as that would inhibit any reaction to a threat that could ever develop at the church.

However, each time Kastner has raised this issue, it is now and has been due to legal developments external to him and this case.

In *United States v. Quiroz*, 2022 WL 4352482 (W.D.Tx 2022), on or about September 20, 2022, the U.S. District Court for the Western District Court of Texas, Pecos Division, struck down sections of 18 U.S.C. §922 as unconstitutional.  *See* Derek Hawkins, "U.S. can't ban gun sales to people indicted on felony charges, judge says," Washington Post, Sept. 20, 2022, (https://www.washingtonpost.com/nation/2022/09/20/texas-gun-ban-indictment.

That ruling is on appeal to the U.S. Court of Appeals for the Fifth Circuit.

That involved a charge of a felony.  Here it is only a couple misdemeanors.  The question has now arisen on a serious level that the restriction upon a Defendant *presumed innocent* while awaiting trial of gun possession may be an unconstitutional "infringe[ment]" upon the Second Amendment, with at least one case heading to the Fifth Circuit on appeal, where there is no grounds for fearing violence by the Defendant.

Therefore, Kastner is careful and thorough now today to ask this Court if the condition may be removed upon him in his case.

The Government is also correct that Kastner has acknowledged that the Second Amendment might be subject to "reasonable restrictions" but that was intended to address

circumstances where a Defendant indicates risks of actual violence, is accused of a crime of

violence, or has a history of violence.

Bail of course rests on two main issues:  The likelihood to show up for trial and any

danger to the public or oneself.  Here, however, there was no suggestion that Kastner would be a

danger to anyone.  In fact, the normality of gun ownership in his region of the country with

other people owning guns in the same residence has created more confusion and problem than

benefit.

Thus, the current motion is a result of a recent change in the law, at least persuasive

authority at this point, and a change of the law that Kastner would like to make sure he will be

able to avail himself of after any appellate developments.

Furthermore, the U.S. the Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n, Inc.*

*v. Bruen*, ⸺ U.S. ⸺ –, 142 S. Ct. 2111, 2130, 2134, 213 L.Ed.2d 387 (June 23, 2022) changed

the applicable framework for analyzing firearm regulations under the Second Amendment.

Therefore, Kastner asserts that the framework constitutional law and legal principles governing

the instant question of a condition on Defendant's release on bail awaiting trial have shifted

underneath the current status and order.  Kastner and his counsel sincerely believe they would be

lacking in diligence by not exhausting every step in claiming his rights.

Previously, in Kastner's Motion To Reconsider Order Denying Defendant's Motion To

Review Condition Of Release on April 13, 2022, at Dkt. # 37, Kastner was responding to

decisions of District Court judges in related cases that had recently occurred as of that filed:

In two other January 6 cases, judges of this Court lifted restrictions on firearms.

In *United States v. Tina Logsdon*, 22-cr-722-01 (TFH), Judge Thomas F. Hogan had

recently lifted the restriction on firearms possession for that defendant. Ms. Logsdon, like

Defendant Kastner, has no criminal record, is charged with the same non-violent misdemeanors

as the defendant, legally possesses her firearm. It is for her protection and that of her family. The

government in the Logsdon case, upon reviewing her motion to lift the restriction, agreed that a

> "... modification of the pretrial firearms restriction is justified in this
> case. Ms. Logsdon is not charged with any crimes of violence and has no
> violent criminal history. Ms. Logsdon is not required to meet with
> Pretrial Services in person at this time. Ms. Logsdon has asserted that she
> wishes to possess a firearm in her home while her husband works
> overnight and Ms. Logsdon is at home with their children. Ms. Logsdon
> has an Illinois permit to possess a firearm in her home. Based on those
> unique circumstances, the parties agree that a modification of the
> condition can be imposed here. The parties agree that Ms. Logsdon
> should not possess any firearm other than her own personal firearm in
> her residence for personal protection, and not possess any other weapon
> or destructive device. If at any time Ms. Logsdon meets with Pretrial
> Services in person, she should not be allowed to possess her firearm
> during those visits." (ECF Doc.18, 22-cr-23-01,

Likewise, in *United States v. Loruhamah Yazdani-Isfehani*, 21-cr-543-03 (CRC), Judge

Christopher R. Cooper lifted the restriction for a similarly-situated defendant, keeping in place

the restriction on other destructive devices and weapons, and allowing the defendant to possess

her firearm in her residence, for her protection and that of her boyfriend's children, who are

frequent overnight guests. (Minute Order, April 5, 2022). There, too, the government did not

oppose lifting the restriction as to firearms kept in the residence for her protection.[5]

Therefore, each renewed motion was based upon and triggered by changes in the law in

the form of precedents questioning the limitation of gun ownership and possession as conditions

upon release from incarceration on bail awaiting trial.

## II.  INTRODUCTION AND CONTEXT RELEVANT TO THE MOTION

By superseding Information filed in the record on February 9, 2022, at Dkt. # 24, the

Defendant was charged with four misdemeanors.

A.  COUNT ONE alleging Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1).

B.  COUNT TWO alleging Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2)

C.  COUNT THREE alleging Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D)

D.  COUNT FOUR alleging Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G)

Counts II, III, and IV are multiplicious, redundant, duplicative, repetitive, the same, and unnecessarily superfluous.

Meanwhile, COUNT FOUR alleging Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G) can be different from COUNT THREE alleging Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and COUNT TWO alleging Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2) only in free speech protected under the First Amendment of the U.S. Constitution.

"Parading, Demonstrating, or Picketing" when Kastner is already charged with "Disorderly and Disruptive Conduct" can only include pure First Amendment expression.  Any form of "parading" which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.  Any form of "demonstration" which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.  Any form of "parading" which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.

Therefore, Count IV is an unconstitutional attack on free speech under the First Amendment. The only additional content of Count IV is expression protected by the First Amendment.  If such expressive conduct were "disorderly" it would already be covered by Counts II and III.  If such expressive conduct were "disruptive" it would already be covered by Counts II and III.  Therefore only First Amendment (free speech and petitioning the government for redress of grievances) expressions and messages are covered within Count IV.

Accordingly, there are effectively only two misdemeanors with which Kastner is charged, in terms of the seriousness of the pending charges within the context of considering conditions of release pending trial.

Otherwise, the Information is content-free and offers no factual allegations, circumstances, or explanation of any kind.  Therefore, we are left adrift as to the factual circumstances and allegations other than the Statement of Facts at Dkt. #1-1.

However, the case presents fairly mild concerns in terms of the threat from possession of a gun.

### III. GOVERNMENT'S FAILURE TO ALLEGE FACTS SHOWING GUILT

Defendant Kastner is not alleged to have damaged any property in or around the District of Columbia on or about January 6, 2021, nor harmed or interfered with any law enforcement official or other official nor committed any crime but merely allegedly being present in the U.S. Capitol for 18 minutes.

As has become a disturbing and conspicuous trend, the Government argues in its Opposition (Dkt. # 95) that:

      A.  "thousands of rioters took part in an attack on the U.S. Capitol" but relies upon vague and meaningless terms like "took part in" and fails to connect this

allegation to Defendant Kastner as an individual.  Some unknown,

unidentified "rioters" with evidently no connection to Kastner "took part in"

an undefined "attack."

B.  "These rioters forced their way into the U.S. Capitol building" but does not

identify "these rioters" nor identify why Kastner is responsible for what other

people did.

C.  Despite the Affiant of the Statement of Facts at Dkt. #1-1 having no personal

knowledge of Defendant Kastner, but only comparing videos of someone he

had never met, the Statement claims that Kastner entered the U.S. Capitol on

January 6, 2021.

D.  Kastner was arrested because of his alleged "Due to his participation in the

riot," but no clarification of what "participation" means nor what constitutes a

"riot" or how Kastner "participated" in any "riot" is provided.

E.  Like millions of tourists every year and an estimated 500,000 peaceful

demonstrators who never went to Capitol Hill on January 6, 2021, Kastner

exercised his Constitutionally-recognized "Right to Travel" (found implied by

the U.S. Supreme Court) and travelled to the Nation's Capitol.

F.  Kastner "ultimately" remained in the Capitol building for an earth-shattering

18 minutes, a severe threat to the continued existence of the Republic. [1]

G.  Using the exact same technology as Dnesh D'Souza's documentary film

"2,000 Mules" documenting election fraud in the 2020 election, the

Department of Justice and Federal Bureau of Investigation used cell phone

tower "geo-location" (carefully avoiding that term) through Google to find

---

[1]   The British Army occupied and burned much of Washington, D.C., to the ground during the War of 1812.

that someone apparently carrying Kastner's cell phone was at and in the U.S.

Capitol (suggesting a very high level of precision in the exact location of the

phone).

In its Opposition (Dkt. # 95), the Government refers us to its Opposition (Dkt. # 22) for

further details but the factual details are actually mostly the same, except that Kastner is accused

of a fashion crime by wearing "khaki tactical-style pants" and is alleged to have entered the U.S.

Capitol at 2:17 PM.  According to the Parliamentarian Thomas Wickham testifying in *U.S. v.*

*Stewart Rhodes*, Case No. 1:22-cr-00015, on October 19, 2022, the recess of the Joint Session of

Congress began at 2:13 PM if not earlier when Speaker Nancy Pelosi was moved out of the

House Chambers by her security detail within the U.S. Capitol Police.  Therefore, the

Government alleges that Kastner did not enter the Capitol until after the decision had been made

to recess the official proceeding.

## IV. GOVERNMENT INADVERTENTLY ADMITS KASTNER'S LAW-ABIDING BEHAVIOR

Surely not what the Government intends or wishes to convey, in an attempt to suggest

that Kastner brought firearms which he lawfully and constitutionally owned into the

Commonwealth of Virginia and might have brought them into Washington, D.C., the

Government in fact inadvertently admits that Kastner was carefully thoughtful and law-abiding:

### A.  COMPLYING METICULOUSLY WITH GUN LAWS

In its Opposition at Dkt. #22, referred to and relied upon in its Opposition at Dkt. # 95,

the Government inadvertently proves how Kastner intended to and diligently did comply with

the gun laws of the District of Columbia:

> During the evening of January 4, 2021, Kastner Googled "virginia beach gun laws" and subsequently visited the website "Large Capacity Magazines in Virginia." Kastner, a concealed carry permit holder, also Googled "concealed carry magazine limit washington DC." On January 5, 2021, the day before the violent attack on the Capitol, Kastner, a concealed carry permit holder, Googled "concealed carry on train in DC" and "concealed carry on train in 'DC.'" He subsequently visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." Later on January 5, 2021, Kastner rode the D.C. metro into the District.

Therefore, contrary to the "echo chamber" thinking of the Government, Kastner exhibits an unusually responsible and careful devotion to abide by the law by fully understanding what the District of Columbia requires. The Government's evidence (at this stage) does not show a risk of gun use, but precisely the opposite. The evidence shows Kastner's care and responsibility to know what he is allowed under the law to do and not do.

There is no basis to think that Kastner did not fully comply with those laws.

## B. KASTNER COMPLIED WITH POLICE DIRECTIVES

Again showing the opposite of what must have been intended, in its Opposition at Dkt. #22, referred to and relied upon in its Opposition at Dkt. # 95, the Government inadvertently proves how Kastner carefully complied with the police:

> He entered the Capitol building just minutes after the initial breach of the building. And instead of leaving when he encountered a line of law enforcement officers attempting to stop the rioters from progressing into the building, Kastner remained inside. He witnessed the mob push past the line of law enforcement officers and watched the mob continue into the building.

So, the Government admits that a line of law enforcement officers _inside_ the Capitol showed a line beyond which people were not allowed to progress.

The U.S. Capitol is always marbled with sections that are open to the public and those that are for authorized personnel only. There have always been corridors which tours of school

children and tourists and citizen lobbyists may freely travel in alongside corridors marked with tiny little wooden signs about waist high saying Authorized Personnel Only.

Here, the Government contends that there was a line of police indicating that demonstrators were not allowed to progress further – and Kastner did not.

That is, inadvertently, the Government shows that even if Kastner should not have entered the building, he complied with police directives spoken and unspoken.  Where the police created a line of where people were to stop, Kastner stopped.  Kastner did not advance beyond that line.

The Government in these related cases has shown an unusual obsession with what people "watched" like what a crowd said or yelled.  There is no crime nor probative value in Kastner watching other people.

The Government is trying to suggest that "instead of leaving," Kastner witnessed the mob push past the line of law enforcement officers and watched the mob continue into the building."

Thus, setting aside for the moment whether Kastner had proper notice not to enter the building and should not have entered, the Government further believes (repeated over and over in related cases) that Kastner is guilty of criminal "watching."  Kastner is guilty because of what he watched and saw other people do.  The Government is trying to suggest that seeing other people misbehaving would create a restricted area under 18 U.S.C. 1752(a)(2), which clearly it does not, and/or that seeing other people misbehave creates a duty to leave.  Neither are true.

### C.  IDEA THAT SEEING SIGNS OF A RIOT CREATE GUILT

On April 6, 2022, Judge Trevor McFadden provided a very interesting split decision, including in *United States v. Matthew Martin*, Case No. **1:21-cr-00394, in this District.**

Judge McFadden found Matthew Martin not guilty because the U.S. Capitol Police had not given notice to the public (that is, it was not still visible after efforts by some to remove barricades) and police officers did not express any discouragement of Martin entering the Capitol.

But McFadden found a co-Defendant had crawled over walls and other obstructions to enter the Capitol.  Thus, Judge McFadden found, the second co-Defendant did not need to see signs posted to realize that he was not supposed to be entering the building, if he had to crawl over walls to do it.

But the Government has stretched or misunderstood Judge McFadden's rulings.  Ever since, the Government has been fixated on the claim that Defendants saw some people rioting. That is not what McFadden decided, however.  The ruling was not that simply seeing other people engaged in misconduct causes one to be guilty.  Seeing guilt does not create guilt.

Rather, McFadden ruled, the Defendant was reasonably aware that he was not supposed to be entering the Capitol if he could not do it normally, walking in the door, but had to go to extraordinary efforts crawling over walls and dodging police to get into the building.

Instead the Government presents a theory like the myth of Medusa, where one turned to stone by seeing Medusa's head.  The Government suggests that seeing people rioting makes one a rioter.  And the Government suggests that seeing others misbehave creates an obligation – other than to one's mother's training and home wisdom – to turn tail and leave.  But those ideas

were not the reasoning McFadden offered in splitting the decisions between guilt and "not

proven" (not guilty).

### D.  NO CONSTITUTIONAL BASIS FOR "NEED" FOR A FIREARM

Finally, the Government argues at Dkt. #22, that

> Finally, Kastner has failed to provide a reason for needing a firearm. His
> employment does not require him to possess a firearm, and he has made
> no argument regarding self-defense or even recreation.

But the Constitutional right to keep and bear arms is not dependent upon a showing of

"need," any more than one's "need" to Free Speech must be shown before one may exercise their

First Amendment rights.  One does not need to convince anyone, subject to their subjective

decision, that one "needs" due process of law before one has a right to it.

### V.  CONCLUSION

For the foregoing, reasons, notwithstanding the Government's Opposition, Defendant

Kastner continues to maintain that the Court should grant his motion.


                                        COUNSEL FOR THE DEFENDANT

                                        */s/ John M. Pierce*
                                        John M. Pierce
                                        JOHN PIERCE LAW
                                        21550 Oxnard Street 3rd Floor, PMB #172
                                        Woodland Hills, CA 91367
                                        jpierce@johnpiercelaw.com
                                        (213) 279-7846

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

*/s/ John M. Pierce*
John M. Pierce