UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-725 (RDM) |
| | : | |
| JARED SAMUEL KASTNER, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF MAGISTRATE JUDGE DECISION

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Jared Kastner's ("Kastner") Appeal of His Second Amendment Restrictions.[1] ECF No. 100. For the fifth time during the pendency of this matter, the Defendant is seeking to amend his conditions of pretrial release to alter or remove the firearms restriction. The government continues to oppose removing this condition of release.

The Court should deny the Defendant's appeal since it was not timely filed in accordance with Local Criminal Rule 58(e) and Federal Rule of Criminal Procedure 58. If the Court declines to deny on that basis and elects to consider the Defendant's arguments, the Court should affirm the magistrate judge's order and find that the magistrate judge did not abuse her discretion in denying the Defendant's second motion for reconsideration.

---

[1] While the defendant's filing is styled as an "Appeal Of His Second Amendment Restrictions," the government contends that it is instead an appeal of an order denying the Defendant's second motion for reconsideration of this Court's order denying the defendant's motion to modify the defendant's conditions of pretrial release to remove the firearms restriction. *See* Order Denying Motion to Modify Conditions of Release, ECF No. 97. *See also,* Order Denying Motion to Modify Conditions of Release, ECF No. 35; and Order Denying Motion for Reconsideration of Order Denying Motion to Modify Conditions of Release, ECF No. 42.

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

      A.      **Events of January 6, 2021 and Kastner's arrest**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

The government sets forth the details of Kastner's participation in this attack in its Opposition to Kastner's Motion to Modify Conditions of Release. ECF No. 22. In short, mere minutes after the initial breach of the U.S. Capitol building, the Defendant unlawfully entered the building. The initial breach occurred at 2:12 p.m., and Kastner entered the Capitol at approximately 2:17 p.m. After entering, he walked toward the Crypt, where he was confronted by a line of law enforcement officers who were preventing rioters from progressing further into the building. During the standoff that ensued, rioters yelled at the law enforcement officers and moved forward toward the officers. Instead of leaving, Kastner remained in the Crypt while a crowd of rioters pushed forward into the law enforcement officers, eventually breaking the line. Ultimately, Kastner remained in the Capitol building for about 18 minutes.

The government has reason to believe that Kastner brought firearms with him when he traveled from Ohio to Maryland and that, at a minimum, he considered bringing those firearms with him into Washington, D.C., on January 6, 2021. As further detailed below, in August 2022, Kastner was found to be in violation of his pretrial release based on firearms being present in his residence. During a pretrial violation hearing, on September 6, 2022, Kastner testified that he brought firearms with him on his journey from Ohio to the Washington, D.C., area on January 4, 2021. However, Kastner denied bringing firearms with him to the rally or to the attack on the

Capitol on January 6. *See* ECF 57. Consistent with the above admission, Kastner's Google search history revealed that he researched bringing firearms with him to the D.C. area. On January 4, 2021, at 7:04 p.m., Kastner googled "virginia beach gun laws", and subsequently visited the website "Large Capacity Magazines in Virginia." At 7:05 p.m. on the same day, Kastner, a concealed carry permit holder, googled "concealed carry magazine limit washington DC." The next day, January 5, at 12:18 p.m., he googled "concealed carry on train in DC." Approximately one minute later, at 12:19 p.m., Kastner googled "concealed carry on train in 'DC.'" About ten seconds later, he visited a website titled "District of Columbia Concealed Carry Gun Law: CCPL… - USCCA." After, at 12:55 p.m., Kastner googled "metro to DC from VA." Notably, Washington, D.C. does not allow firearms on any Metrorail transit system, including the metro. *See* https://mpdc.dc.gov/page/prohibited-places-carry-concealed-firearm. Kastner subsequently rode the D.C. metro into the District on January 5, 2021, and on January 6, 2021. Kastner's testimony during a pretrial violation hearing for firearms possession, as well as Kastner's Google search history, revealed that he traveled from Ohio to the D.C. area with firearms and, at a minimum, contemplated bringing those firearms with him to D.C. on January 6.

Due to his participation in the riot, the Defendant was charged by criminal complaint on December 7, 2021, and arrested on December 8, 2021. ECF Nos. 1, 5. Also on December 8, 2021, the government filed a criminal information, charging Kastner with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 7.

B.     **The Court's Restriction on Kastner's Possession of Firearms as a Condition of Pretrial Release and Subsequent Litigation**

Magistrate Judge Faruqui set Kastner's conditions of release ("Order Setting Conditions of Bond") on December 13, 2021, at the Defendant's initial status conference in Washington, D.C. ECF No. 11. Prior to the initial status conference, the Pretrial Services Agency prepared a pretrial services report, which included a recommendation that Kastner not be allowed to possess firearms. ECF No. 10 at 1. At the initial appearance, consistent with this recommendation, the government requested that the Defendant not be permitted to possess firearms while on pretrial release; however, upon learning that the Defendant provides security for his church at services on Wednesdays and Sundays, Magistrate Judge Faruqui set the following condition related to firearms:

> Defendant is permitted to possess a firearm only while on the premises of the Wilmington Baptist Church (herein "Church"), during the services held on Wednesdays and those held twice on Sundays. The firearm is to be stored and secured on the Church's premises. Defendant is prohibited from taking the firearms off of the Church's grounds. Outside of that limited exception, Defendant is prohibited from possessing firearms at any other time outside of the services mentioned. Defendant must also provide proof of the lawful ability to carry a firearm to Southern District of Ohio (Dayton) within 72 hours.

ECF No. 11 at 3.

On January 21, 2022, the Defendant filed a motion to modify conditions of release, in which the Defendant argued that the above-described firearms restriction was not reasonable or justified. ECF No. 20. In that brief, the Defendant asserted his right to possess firearms under the Second Amendment. *Id.* at 4-5, *citing McDonald v. Chicago*, 561 U.S. 742 (2010) and *Heller v. District of Columbia*, 554 U.S. 570 (2008). However, the Defendant conceded that "[t]hat right may, of course, be subject to reasonable restrictions." ECF No. 20 at 4.

On January 28, 2022, the government filed its response in opposition to the Defendant's motion. ECF No. 22. On February 4, 2022, the Defendant filed a reply in support of his motion. ECF No. 23. On February 18, 2022, the Court heard oral argument on the motion, including testimony from the D.C. Pretrial Services officer supervising the Defendant, who opposed modifying the firearms restriction. On February 28, 2022, the Court issued a written order denying the Defendant's motion, finding that "the firearms restriction is reasonable under the circumstances." ECF No. 35 at 2. The Court credited the views of the supervising D.C. Pretrial Services officer who "remains concerned that permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." *Id.* at 2-3. The Court expressed concern based on Kastner's Google search history that he even considered bringing "a weapon equipped with a large capacity magazine to the rally-turned-riot." *Id.* at 3-4. The Court found that "a partial restriction is appropriate" and noted that Magistrate Judge Faruqi's decision to allow Kastner to possess a firearm during limited time windows to provide security at his church "was reasonably tailored to Defendant's circumstances." *Id.* at 3-4.

On April 13, 2022, the Defendant filed a motion for reconsideration, again arguing that the firearms restriction was unreasonable and unjustified. ECF No. 37. On May 2, 2022, the government filed its response in opposition to the Defendant's motion. ECF No. 39. On May 13, 2022, the Court issued a written opinion denying the Defendant's motion, finding that "the standard for reconsideration [had] not been met" and upholding the firearms restriction as a condition of the Defendant's pretrial release. ECF No. 42 at 8-10. Again, the Court credited the views of Kastner's supervising D.C. Pretrial services officer, quoting extensively from the Pretrial Services Agency ("PSA") report filed at the Court's request in response to the Defendant's Motion for Reconsideration:

> Any doubt about whether justice requires reconsideration of this issue is put to rest by a report filed (at the Court's request) on May 4, 2022, by PSA. Dkt. 40; see also Minute Order (Apr. 19, 2022). That report explains why PSA "maintains that the current conditions of release are sufficient and [the] least restrictive" means of assuring the safety of other persons and the community. Dkt. 40 at 2. According to the report, "[i]n courtesy supervision cases[,] the lead office" for "decisions and statements" is "the office where the case originates"—in this case, PSA. *Id.* The report further explains that, although Kastner is not currently receiving home visits, "[that] does not preclude home visits from occurring should a law enforcement need arise," and, such "[h]ome visits are not always announced." *Id.* Given the risks associated with unannounced visits, the report continues, "officer safety is paramount." *Id.* Moreover, the report explains that during Kastner's post-arrest interview, he was "asked if he would remove the firearms from his home where he resided with his parents" and both Kastner and his father "indicated that they would remove the firearms but they would not be happy." *Id.* And finally, the report notes that PSA maintains its view that, notwithstanding Kastner's lack of prior convictions, "his alleged conduct prior to January 6 . . . as well as the violent criminal activity" that he was present for "support the currently imposed least restrictive conditions for this defendant while under active pretrial release." *Id.*

ECF. No. 42 at 9-10.

In the conclusion of his order denying the motion for reconsideration, the Court credited the PSA report as a "reflect[ion] of the official views of the agency charged with Kastner's pretrial release" and noted that the PSA report "[took] into account the safety of the community and any officer who might be asked to conduct a home visit, with or without advance notice." *Id.* at 10.

### C. Kastner's Move to Indiana and Pretrial Violation for Firearms

On June 9, 2022, D.C. Pretrial Services Officer Katrina Stanford informed the government that Kastner planned to move from the Southern District of Ohio to the Southern District of Indiana. According to Officer Stanford, the move was scheduled to occur on June 25, 2022. As result of the move, the responsibility for Kastner's courtesy pretrial supervision would be transferred to the Southern District of Indiana. The Defendant cited his recent marriage as the basis for the move to Indiana. ECF. No. 45.

On July 26, 2022, Pretrial Services Officer Shallon Watson, acting as a courtesy supervision officer in the Southern District of Indiana, conducted a home visit at Kastner's new residence in Indiana. Kastner did not inform Officer Watson of the presence of firearms in his residence prior to Officer Watson's home visit. During an interview at Kastner's residence, Officer Watson asked Kastner whether there were any firearms located at the residence. Kastner disclosed that his wife, Kaitlyn, had firearms within the residence. Officer Watson was informed that there were three firearms in the residence, including two handguns and a rifle. Officer Watson was told that one of the handguns was secured in a lockbox, and the other handgun and rifle were not secured. Officer Watson did not observe any of the weapons; rather, she learned of the firearms from Kastner. After the home visit and based on advice from Kastner's supervisor PSA officer in D.C., Officer Watson subsequently instructed Kastner that firearms were not allowed in his residence. Rather than immediately comply, Kastner told Officer Watson that he would talk to his lawyer about the matter.

On August 22, 2022, Officer Stanford filed a Pretrial Violation Report. ECF No. 45. Officer Stanford advised:

> PSA recommends that the defendant be removed from Pretrial Supervision due to non-compliance. On 7/26/2022, the defendant relocated to the Southern District of Indiana. A home assessment was also conducted on 7/26/2022 and a firearm was discovered within the residence. The Southern District of Indiana instructed the defendant to remove the firearm from the residence. PSA was informed that the defendant stated that he will follow up with Defense Counsel concerning the removal of the firearm.

*Id.* at 2.

The cited bases for the recommendation included the Order Setting Conditions of Release issued by the Court on December 14, 2021; the Order Denying the Defendant's Motion to Modify the Firearms Restriction issued on February 28, 2022; and the Order Denying the Defendant's

Motion for Reconsideration of the Motion to Modify the Firearms Restriction issued on May 13, 2022. *See* ECF Nos. 11, 35, and 42. Based on the above, Officer Stanford advised, "The Defendant is fully aware that no firearm should be within his residence." ECF No. 45 at 1-2. After PSA issued a Pretrial Violation Report, Kastner denied being told by Officer Watson to remove the firearms from his residence. When Kastner eventually told Officer Watson that the firearms had been removed from his residence, he denied knowledge of where the firearms were relocated.

On August 26, 2022, in light of the Pretrial Violation Report, the Court ordered Kastner, his attorney, the government, and a representative from PSA to appear for an in-person hearing on August 31, 2022. In response, on August 27, 2022, Kastner filed a Motion to Convert the In-person Hearing to VTC (ECF No. 46), which the Court denied. During the pendency of the pretrial violation proceedings, the Defendant fired former defense counsel, Mr. Nathan I. Silver, II. On August 30, 2022, current defense counsel, Mr. John M. Pierce, entered notice of appearance.

On September 6, 2022, the Court held a pretrial violation hearing, which included testimony from Officer Stanford, Officer Watson, Jared Kastner, David Kastner (the Defendant's father), and Kaitlyn Kastner (the Defendant's wife). Based on the testimony, the Court issued an order finding by clear and convincing evidence that Kastner had violated the conditions of his release by having firearms in his residence and revising Kastner's conditions of pretrial release to include additional firearms restrictions. ECF No. 57. The government and PSA requested detention based on the violation; however, the Court determined that there were conditions less restrictive than incarceration to ensure the safety of the community and issued the following revised conditions of pretrial release:

> (1) Jared Samuel Kastner may not reside in any residence where any firearm is present, no matter how the firearm is stored or kept. In addition, should Kastner wish to stay with his father or anyone else during the period of his pretrial release,

there may not be any firearm (no matter how the firearm is stored or kept) in that residence during his stay. [internal fn. omitted]

(2) So long as Kaitlyn Kastner resides with Jared Kastner, she may not possess any firearm in their shared residence, no matter how it is stored or kept, during the pendency of the proceedings against Jared Kastner. With Kaitlyn Kastner's consent, this order binds her as well as Jared Kastner, and any violation may subject either or both Jared and Kaitlyn Kastner to contempt of court.[2]

(3) The exemption providing that Jared Kastner could possess a firearm while on the premises of the Wilmington Baptist Church, Dkt. 11 at 3, is vacated. Kastner may not possess a firearm at any time and under any circumstances, including while at church.

(4) Jared Kastner is committed to Home Detention for a period of thirty (30) days, beginning September 15, 2022 and running through October 15, 2022. He will be restricted to his place of residence continuously during that period, except for authorized absences, enforced by an appropriate means of surveillance by the Pretrial Services Agency. In consultation with Pretrial Services, Kastner may receive authorization to leave his home for gainful employment, religious services, medical care and at such other times as may be specifically authorized by his supervising Pretrial Services officer. Electronic monitoring is an appropriate means of surveillance for home detention. Pretrial Services shall place Jared Kastner on home detention by September 15, 2022.

*Id.* at 11-12. [3]

### D.  Kastner's Second Motion for Reconsideration

On December 19, 2022, the Defendant made a motion for a trial by magistrate judge pursuant to 18 U.S.C. § 3401 (ECF No. 69), which the government did not oppose (ECF No. 73). The Court granted the motion and ordered "this case . . . [be] referred to a Magistrate Judge, to be assigned at random by the Clerk's Office, *for all purposes*," including but not limited to a

---

[2] During the pretrial violation hearing, Kaitlyn Kastner "agreed—on pain of contempt—to ensure that no weapons, whether his, hers, or anyone else's, are allowed in their mutual home, regardless of how any such weapon is stored or kept." *Id.* at 10-11.

[3] In its order, the Court found Kastner's testimony about his understanding of the firearms restriction to be "not credible" and "gamesmanship designed to resist the Court's order and the clear direction of [PSA]." ECF 57 at 9. When Kastner was questioned about the number of firearms that he owned and his understanding of Magistrate Judge Faruqui's admonition that Kastner not have any firearms in his residence, the Court found Kastner's responses to be "evasive or less than forthright." *Id.* The Court informed Kastner that he was on "thin ice and that any future violations may require his incarceration pending trial." *Id.* at 10.

misdemeanor trial. Minute Order (December 21, 2022) (emphasis added). The case was subsequently reassigned to Magistrate Judge Upadhyaya.

On January 25, 2023, Kastner filed a "Motion to Modify Conditions on Second Amendment Grounds" (ECF No. 88), which the government contended (and the magistrate judge agreed) constituted a second motion for reconsideration of this Court's prior order denying the Defendant's motion to modify the conditions of pretrial release to remove the firearms restriction. *See* ECF No. 97. On February 21, 2022, the government filed a response. ECF. No. 95. On March 1, 2023, the Defendant filed a reply. ECF No. 96.

On March 16, 2023, Magistrate Judge Upadhyaya issued a written opinion denying Kastner's motion and finding that the Defendant had not satisfied the "as justice requires" standard for a motion for reconsideration. ECF No. 97. Specifically, Magistrate Judge Upadhyaya held, "Kastner presents no new evidence or a change in factual circumstances to warrant reconsideration of the Court's previous decisions setting conditions of release[;]" "Neither [*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, ⸺ U.S. ⸺, 142 S. Ct. 2111 (2022)] nor [*U.S. v. Quiroz*, 2022 U.S. Dist. LEXIS 168329, 22-cr-00104 (W.D. Tx. 2022)] warrant modification of Kastner's conditions [of pretrial release;]" and "Kastner has failed to raise . . . a reason to correct a manifest injustice." ECF No. 97 at *4-5, 7.

On April 2, 2023—17 days after the magistrate judge's order was entered—Kastner filed the instant appeal, citing "a fundamental change in law in his request for relief." ECF No. 100.

II. **ARGUMENT**

A. **The Court may have jurisdiction to hear Kastner's appeal**

Under 18 U.S.C. § 3401, "When specially designated to exercise such jurisdiction by the district court or courts he serves, any United States magistrate judge shall have jurisdiction to try

10

persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district." In accordance with the above statute and Federal Rule of Criminal Procedure 58, under Local Criminal Rule 58(a), "A magistrate judge may conduct trials (with or without a jury), accept pleas, impose sentence, and otherwise exercise jurisdiction in cases of misdemeanor offenses . . . ."

As noted above, Kastner requested (and the government did not oppose) a trial before a magistrate judge. The Court in its discretion granted that request on December 21, 2022:

> Upon consideration of Defendant Jared Kastner's Motion for Trial by Magistrate Judge, Dkt. 71 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that (1) this case (at the request of Defendant and without objection from the Government) is referred to a Magistrate Judge, to be assigned at random by the Clerk's Office, *for all purposes*; (2) the status conference set for January 12, 2023 is VACATED; and (3) the assigned Magistrate Judge shall conduct the colloquy required under 18 U.S.C. 3401(b).

Minute Order (December 21, 2022) (emphasis added). The government understood that the Court had referred this case to a magistrate judge "for all purposes," including but not limited to a misdemeanor trial.

It did not come as a surprise to the government when Kastner filed the appeal before the Court, requesting again to remove the firearms restriction as a condition of pretrial release. The Defendant stated in his Reply, "[the firearms restriction] issue is important to Kastner, as important in his view as the ultimate resolution of his case." ECF No. 96. The Defendant further stated, "It is obvious that legal uncertainties, especially on constitutional grounds, require that citizens assert their rights to be tested by all levels of the Judiciary." *Id.* Since this Court previously denied two motions by the Defendant related to the removal of the firearms restriction, and this Court previously found by clear and convincing evidence that Kastner violated the conditions of his release by having firearms in his residence, the government submits that the Defendant believed

another "level[] of the Judiciary"—a magistrate judge—could rule differently on the removal of the firearms restriction. Assuredly, on January 25, 2023, the same date of Kastner's first status hearing before Magistrate Judge Upadhyaya, the Defendant filed a motion to remove the firearms restriction from his conditions of pretrial release. ECF No. 88. As noted above, on March 16, 2023, Magistrate Judge Upadhyaya issued a written opinion denying Kastner's motion for reconsideration (ECF No. 97) and, on April 2, 2023, Kastner filed an appeal of that order, which is now before the Court (ECF No. 100).

Under Local Criminal Rule 58(e), "Appeal from a magistrate judge's order under this Rule is governed by Federal Rule of Criminal Procedure 58(g)." Federal Rule of Criminal Procedure Rule 58(g)(2)(A) allows for an interlocutory appeal of a magistrate judge's order or judgement:

> Either party may appeal an order of a magistrate judge to a district judge within 14 days of its entry if a district judge's order could similarly be appealed. The party appealing must file notice with the clerk specifying the order being appealed and must serve a copy on the adverse party.

*Id.* Accordingly, when analyzing whether Kastner's appeal of Magistrate Judge Upadhyaya's order could be taken up by this Court, the Court must address (1) whether the Defendant's appeal of the magistrate's order was made within 14 days of its entry, and (2) whether a district judge's order could similarly be appealed to the court of appeals.

### i. The Court should deny Kastner's appeal for failure to timely file

As detailed above, under Federal Rule of Criminal Procedure 58(g)(2)(A), an appeal of a magistrate judge's order must be made "within 14 days of its entry . . . ." Federal Rule of Criminal Procedure 45 outlines the rules for "computing any time period specified in [the Federal Rules of Criminal Procedure,] in any local rule or court order, or in any statute that does not specify a method of computing time." Under Rule 45(a)(1), "When the period is stated in days . . . (A) exclude the day of the event that triggers the period; (B) count every day, including

12

intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

Magistrate Judge Upadhyaya issued an order denying Kastner's motion for reconsideration on March 16, 2023. Excluding the day of the order's entry, a timely appeal under Rule 45 should have been filed on or before March 30, 2023. The appeal before the Court was filed on April 2, 2023, which was 17 days after the date of the order's entry and three days after the cutoff for an appeal. Consequently, under Local Criminal Rule 58(e) and Federal Rule of Criminal Procedure Rule 58(g)(2)(A), the Court should deny Kastner's interlocutory appeal for failure to timely file.

### ii. A district judge's order could be similarly appealed

If the Court in its discretion elects to waive this timing defect, under Federal Rule of Criminal Procedure Rule 58(g)(2)(A), the Court must next consider whether a district judge's order denying a motion for reconsideration could similarly be appealed to the court of appeals. As noted by the Court in its order denying the Defendant's first motion for reconsideration, "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules of the Court expressly provide for motions for reconsideration in criminal cases." ECF No. 42. However, "it is . . . well understood that district courts may—and, at times, should—[entertain motions for reconsideration] in criminal cases." *Id.*, *quoting United States v. Trabelsi*, No. 06-cr-89-RDM, 2020 U.S. Dist. LEXIS 43852 at *23 (D.D.C. Mar. 13, 2020). A district judge's denial of a motion for reconsideration in a criminal matter may be appealed to the court of appeals. *See, e.g., United States v. Trabelsi*, 28 F.4th 1291 (D.C. Cir. 2022) (hereinafter *Trabelsi*) (affirming this Court's denial of a motion for reconsideration in a criminal case). Therefore, under Local Criminal Rule 58(e) and Federal Rule of Criminal Procedure Rule 58(g)(2)(A), Magistrate Judge Upadhyaya's order denying the

Defendant's motion for reconsideration would be appealable to this Court (again, assuming arguendo, that the Court in its discretion waives untimely filing).

      **B.**      **The Court should affirm the magistrate judge's order**

            **i. Standard of Review**

The Local Criminal Rules contemplate the delegation of certain hearings by a district judge to a magistrate judge, wherein a magistrate judge can issue a ruling, or make findings of fact and recommendations. When considering an objection to a magistrate judge's opinion, the standard of review for the district judge who delegated the hearing is included in the rule itself. For example, under Local Criminal Rule 59.1:

> (a) At the request of the district judge to whom a *felony case* is assigned, a magistrate judge may hear and *determine any nondispositive pretrial motion* or matter other than those motions specified in [Local Criminal Rule] 59.2 of these Rules, and may conduct pretrial proceedings and enter orders pursuant to [Local Criminal Rule] 57.2 of these Rules.
>
> (b) Any party may file written objections to a magistrate judge's ruling under paragraph (a) within 14 days after being served with the order of the magistrate judge or after the oral order is stated on the record, unless a different time is prescribed by the magistrate judge or the district judge. The objections shall specifically designate the order or part thereof to which objection is made, and the basis for the objection . . . .
>
> (c) Upon consideration of objections filed in accordance with this Rule, a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be *clearly erroneous or contrary to law*.

*Id.* (emphasis added).

Less conveniently, the standard of review is not as readily determinable in the appeal before the Court. This is not a felony case where a district judge has delegated the determination of a discrete, non-dispositive pretrial motion to a magistrate judge. Here, the Court ordered that the matter be referred "to a Magistrate Judge . . . *for all purposes,*" including but not limited to a misdemeanor trial. Minute Order (December 21, 2022) (emphasis added).

14

Once more, pursuant to Local Criminal Rule 58(a), "A magistrate judge may conduct trials (with or without a jury), accept pleas, impose sentence, and otherwise exercise jurisdiction in cases of misdemeanor offenses in accordance with 18 U.S.C. § 3401 and Rule 58, Federal Rules of Criminal Procedure." Under Local Criminal Rule 58(e), "Appeal from a magistrate judge's order under this Rule is governed by Federal Rule of Criminal Procedure 58(g)." Under Federal Rule of Criminal Procedure Rule 58(g)(2)(D), "The scope of the appeal is the same as in an appeal to the court of appeals from a judgement entered by a district judge." Thus, the standard of review for the instant case would be the same as that of an appeal of a district judge's order denying a motion for reconsideration to the court of appeals.

In *Trabelsi*, the D.C. Circuit Court recently addressed an appeal of the denial of a motion to reconsider that was issued by this Court in a criminal matter. The D.C. Circuit Court opined, "[The court of appeals] review a denial of a motion to reconsider in a civil case for abuse of discretion . . . and the same standard applies to a denial of a motion for reconsideration in a criminal case." 28 F.4th at 1297, *citing United States v. Christy*, 739 F.3d 534 (10th Cir. 2014) (applying abuse of discretion standard in a criminal case where defendant appealed a district judge's order granting in part the government's motion to reconsider).[4]

An abuse of discretion standard should therefore apply in the instant appeal. As noted above, this is not a matter that was referred to a magistrate judge for a ruling on a discrete, non-

---

[4] Notably, in *Trabelsi*, the D.C. Circuit Court did not apply an abuse of discretion standard and, instead, reviewed the case *de novo*. 28 F.4th at 1297. The motion to reconsider at issue in *Trabelsi* involved the interpretation of the U.S.-Belgian Extradition Treaty. The D.C. Circuit Court reasoned, "[B]ecause the motion to reconsider turns on whether the District Court correctly interpreted the Extradition Treaty, and because we review the interpretation of treaties *de novo*, our review is effectively *de novo*." *Trabelsi*, 28 F.4th at 1297 (internal citations omitted), *citing United States v. Fanfan*, 558 F.3d 105, 106-107 (1st Cir. 2009) (*de novo* review proper where defendant "charges the district court with misconstruing its legal authority" on motion for reconsideration).

dispositive issue. The Court ordered that a magistrate judge take over the case "for all purposes." Minute Order (December 21, 2022). Under Federal Rule of Criminal Procedure Rule 58(g)(2)(D), the standard of review would be the same as that of an appeal of a district judge's order denying a motion for reconsideration to the court of appeals. The D.C. Circuit Court has recently held that the abuse of discretion standard applies when reviewing the denial of a motion to reconsider in a criminal case. *Trabelsi*, 28 F.4th at 1297. This is not a matter involving the interpretation of a treaty or any other matter that the court of appeals would otherwise review *de novo*. *See id*. Likewise, Kastner has not argued that the magistrate judge misconstrued her legal authority in denying the Defendant's motion for reconsideration. *Compare* ECF No. 100.

Kastner has not yet addressed what standard of review should apply in his appeal. In his filing, the Defendant does, however, "assert[] that his no-firearm condition violates his fundamental rights under the Second Amendment and the due process clause." ECF No. 100. Citing *Bruen* and *Quiroz*, the Defendant claims relief is warranted due to a "fundamental change in law." *Id.* The Defendant concludes by "request[ing] that this Court dispose and remove all firearm impediments and restrictions." *Id.*[5]

---

[5] In the Defendant's "Motion to Modify Conditions on Second Amendment Grounds" (ECF No. 88), "Reply in Support of Motion to Modify Conditions on Second Amendment Grounds" (ECF No. 96), and in the appeal before the Court (ECF No. 100), the Defendant raises constitutional challenges under *Bruen* and *Quiroz* that the Court has not previously considered.

The Defendant's "Motion to Modify Conditions of Pretrial Release," first requesting this Court to remove all firearms-related restrictions, was filed on January 21, 2022. ECF No. 20. After a hearing on that motion on February 18, 2022, the Court issued an order denying the motion without prejudice on February 28, 2022. ECF No. 35. The Defendant's "Motion to Reconsider Order Denying Defendant's Motion to Review Condition of Pretrial Release" was filed on April 13, 2022. ECF No. 37. The Court denied the motion for reconsideration on May 13, 2022. ECF No. 42. The U.S. Supreme Court opinion in *Bruen* was issued on June 23, 2022. —— U.S. —— , 142 S. Ct. 2111. The Western District of Texas opinion in *Quiroz* was issued on September 22, 2022. 2022 U.S. Dist. LEXIS 168329, 22-cr-00104.

Based on the above timeline, the government anticipates the Court could decide not to

### ii. Kastner failed to meet the standard of review for a motion to reconsider

The Court should affirm the magistrate judge's order denying the Defendant's motion for reconsideration and find that the magistrate judge did not abuse her discretion when she held that the Defendant "failed to raise a change in factual circumstances, an intervening change in law, or a reason to correct a manifest injustice." ECF No. 97 at 7. In support of its argument, the government adopts and incorporates by reference the following: Magistrate Judge Upadhyaya's Order Denying Defendant's Motion to Modify Conditions on Second Amendment Grounds (ECF No. 97) (Attached as Exhibit A) and Government's Response to Defendant's Motion to Modify Conditions on Second Amendment Grounds (ECF. No. 95) (Attached as Exhibit B) (arguing Kastner failed to meet the standard of review for a motion to reconsider at *10-14).

---

review the Defendant's filing as an appeal of a magistrate judge's order denying a motion for reconsideration and, instead, construe *Bruen* and/or *Quiroz* as changes in law that compel the Court to revisit the Defendant's initial motion to modify the conditions of pretrial release.

As such, neither 18 U.S.C. § 3142 nor § 3145 specifies the standard of review to be applied by a district court reviewing a magistrate judge's release order, and the D.C. Circuit "ha[s] not squarely decided the issue." *United States v. Blackson*, 2023 U.S. Dist. LEXIS 18988, 23-cr-0025-BAH (D.D.C. February 6, 2023), *quoting United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021). Citing the Bail Reform Act, the Federal Magistrates Act, 28 U.S.C. § 636, and an exhaustive list of circuit court opinions, the Court in *Blackson* held that a district court reviews a magistrate judge's release order *de novo*. *Blackson*, 2023 U.S. Dist. LEXIS 18988 at *14, *also citing United States v. Chrestman*, 525 F. Supp. 3d 14, 23-25 (D.D.C. 2021) (explaining the reasoning behind *de novo* review of magistrate judge detention orders).

If the Court decides to review the Defendant's appeal *de novo*, the government urges the Court to uphold the firearms restriction as a condition of pretrial release and find that the law allowing a court to order that the Defendant "refrain from possessing a firearm" while on pretrial release when that is the least restrictive way to ensure community safety comports with the Second Amendment. 18 U.S.C. § 3142(c)(1)(B)(viii), *see also* Government's Response to Defendant's Motion to Modify Conditions on Second Amendment Grounds, ECF No. 95.

### iii. A temporary firearms restriction is proper and justified

In the alternative, if the Court entertains the Defendant's arguments regarding the constitutionality of a firearms restriction as a condition of pretrial release and decides to review the Defendant's motion *de novo*, the Court should deny the Defendant's motion to remove the firearms restriction and find that the law allowing a court to order that the Defendant "refrain from possessing a firearm" while on pretrial release when that is the least restrictive way to ensure community safety comports with the Second Amendment. 18 U.S.C. § 3142(c)(1)(B)(viii). In support of its argument, the government adopts and incorporates by reference the following: Magistrate Judge Upadhyaya's Order Denying Defendant's Motion to Modify Conditions on Second Amendment Grounds (ECF No. 97) (Attached as Exhibit A) (observing that pretrial restrictions on the possession of firearms are constitutional at *6, fn. 4); Government's Response to Defendant's Motion to Modify Conditions on Second Amendment Grounds (ECF. No. 95) (Attached as Exhibit B) (arguing a temporary firearms restriction passes constitutional muster as it is consistent with the Nation's historical tradition of gun regulation and imposing reasonable conditions of release on defendants facing criminal charges at *15-18); and Response of the United States to Appellant's Memorandum, *U.S. v. Fencl*, 22-50316, ECF No. 16 (9th Cir. Jan. 13, 2023) (Attached as Exhibit C) (referred to in Government's Response, ECF No. 95, as "Exhibit A").

### Conclusion

For these reasons, the government respectfully requests that the Court affirm the magistrate judge's order denying the Defendant's motion to remove the firearms restriction as a condition of his pretrial release.

      Respectfully submitted,

      MATTHEW M. GRAVES
      United States Attorney
      D.C. Bar No. 481052


By: /s/ Will N. Widman
      _____
      WILL N. WIDMAN
      NC Bar No. 48158
      Trial Attorney, Detailee
      1301 New York Avenue NW, 8th Floor
      Washington, DC 20530
      (202) 353-8611
      Will.Widman@usdoj.gov