UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-725 (RDM) |
| | : | |
| JARED KASTNER, | : | |
| | : | |
| Defendant. | : | |

DEFENDANT'S RESPONSE TO THE COURT IN SUPPORT OF
DEFENDANT'MOTION TO MODIFY CONDITIONS
ON SECOND AMENDMENT GROUNDS

COMES NOW, the Defendant, Jared Kastner, by and through counsel, and herewith respectfully files his RESPONSE to the Court's inquiry.

The Court by the Honorable Judge Randolf D. Moss, District Court Judge, ordered by Minute Order:

> On or before April 18, 2023, Defendant Kastner shall file a response to the arguments made in the Government's filing at Dkt. [101], including that (1) the appeal is untimely; and (2) the Magistrate Judge's order should be affirmed on its merits. Signed by Judge Randolph D. Moss on 4/12/2023. (lcrdm2)

The Defendant, by counsel, believes that he has adequately briefed most of these issues but appreciates the opportunity for the Court to make sure that all information is before the Court. Accordingly, Defendant responds to the Court's Minute Order as follows:

2

**First**, as to the timeliness of the appeal from the Order of the Magistrate to the District Court:

- The Honorable Moxila A. Upadhyaya, U.S. Magistrate Judge, issued an Order on March 16, 2023.

- Starting with the day after the triggering event, an appeal (if any) was due 14 days later on Friday, March 31, 2023.

- Defendant by counsel filed his appeal from the Magistrate Judge's Order on Sunday, April 2, 2023.

- Defendant by counsel filed a motion for an extension of time on April 3, 2023, asking for an extension of 7 days which would make the new deadline April 10, 2023.

- However, if the District Court is not satisfied with the above-mentioned response there is good cause for the untimely appeal based on a trojan virus and malware which was sent to Defendant's counsel during discovery which disabled staff member's laptops and resulted in significant delays to file the appeal.

- Furthermore, due to excusable neglect and/or good cause Rule 4(b)(4)'s Motion for Extension of Time permits Defendant's "untimely" appeal:

> "Upon a finding of excusable neglect or good cause, the district court may — before or after the time has expired, with or without motion and notice — extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)."

**<u>Second</u>**, as should be clear, Defendant Kastner is vindicating in effect not only his own rights under the Second Amendment to the U.S. Constitution but also his wife's Second Amendment rights.

- As the Court has been fully briefed, the problem is that his wife with whom he lives in the same residence owns firearms, <u>*but Defendant Kastner does not*</u> (since January 6, 2021, events).

- Therefore, past precedents and practice are inapplicable and inapposite where the conditions of release forbidding the Defendant from owning a firearm have been transformed into imposing his uncharged wife with a prohibition to own a firearm.

- In effect, in violation of public policy and in a clash between fully-recognized constitutional rights (one explicit as to the Second Amendment the other implied as to the privacy of marriage as decisively upheld in *Obergefell v. Hodges*, 576 U.S. 644 (2015)), the Court's bail restrictions would require Defendant to choose between two fundamental constitutional rights: (a) living with his wife in the

4

same residence or (b) his liberty interests by giving up his Second Amendment rights.

- The only way that Defendant Kastner can comply with the pre-trial bail restrictions is to separate from his wife, or worse.

- And the Court is in effect denying his wife her Second Amendment rights even though she has been charged with no crime.

- This irreconcilable conflict between constitutional rights is (a) different from past precedents or practice and (b) an intolerable infringement of those rights.

**Third**, clearly the Defendant desires, as is his right to argue for an extension or overturning of existing precedent.

**Fourth**, this effort to argue for an extension or overturning of existing precedent was triggered by precedents outside of Defendant Kastner's initiative. As Kastner explained to the Court, case in September 2022 just ruled that even on *felony* charges a defendant presumed innocent awaiting trial cannot constitutionally have their second amendment rights infringed.

> "However, each time Kastner has raised this issue, it is now and has been due to legal developments external to him and this case.
>
> In *United States v. Quiroz*, 2022 WL 4352482 (W.D.Tx 2022), on or about September 20, 2022, the U.S. District Court for the Western District Court of Texas, Pecos Division, struck down sections of 18 U.S.C. §922 as unconstitutional.  *See*

5

> Derek Hawkins, "U.S. can't ban gun sales to people indicted on felony charges, judge says," <u>Washington Post</u>, Sept. 20, 2022, ([https://www.washingtonpost.com/nation/2022/09/20/texas-gun-ban-indictment](https://www.washingtonpost.com/nation/2022/09/20/texas-gun-ban-indictment).

That ruling is on appeal to the U.S. Court of Appeals for the Fifth Circuit. The legal developments of recognizing the Second Amendment to the U.S. Supreme Court are changing rapidly since *District of Columbia v. Heller*, 554 U.S. 570 (2008), which seemingly accelerated just in the last couple of years.

    As the Defendant explained:

> [T]he U.S. the Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130, 2134, 213 L.Ed.2d 387 (June 23, 2022) changed the applicable framework for analyzing firearm regulations under the Second Amendment.  Therefore, Kastner asserts that the framework constitutional law and legal principles governing the instant question of a condition on Defendant's release on bail awaiting trial have shifted underneath the current status and order.  Kastner and his counsel sincerely believe they would be lacking in diligence by not exhausting every step in claiming his rights.

    **Fifth**, the biggest question lies in the recent *Bruen* and *Quiroz* cases.  The Government includes its brief in a Ninth Circuit U.S. Court of Appeals case, attached as Exhibit 101-3, *United States of America v. John Fencl*, Record No. 22-50316. However, *Fencl* like *Quiroz* both involved pending <u>*felony*</u> criminal charges. Kastner is charged only with misdemeanors, none of which involve any violence.

6

Clearly balancing of these factors is to some extent the nature of this inquiry. Additionally, neither *Fencl* nor *Quiroz* burdened the Second Amendment rights of other, innocent, uncharged parties.

The Government is correct that Kastner has acknowledged that the Second Amendment might be subject to "reasonable restrictions" but that was intended to address circumstances where a Defendant indicates risks of actual violence, is accused of a crime of violence, or has a history of violence. Bail of course rests on two main issues: The likelihood to show up for trial and any danger to the public or oneself. Here, however, there was no suggestion that Kastner would be a danger to anyone. Thus, the current motion is a result of a recent change in the law, at least persuasive authority at this point, and a change of the law that Kastner would like to make sure he will be able to avail himself of after any appellate developments.

Previously, in Kastner's Motion To Reconsider Order Denying Defendant's Motion To Review Condition Of Release on April 13, 2022, at Dkt. # 37, Kastner was responding to decisions of District Court judges in related cases that had recently occurred as of that filed:

In two other January 6 cases, judges of this Court lifted restrictions on firearms.

7

In *United States v. Tina Logsdon*, 22-cr-722-01 (TFH), Judge Thomas F. Hogan had recently lifted the restriction on firearms possession for that defendant. Ms. Logsdon, like Defendant Kastner, has no criminal record, is charged with the same non-violent misdemeanors as the defendant, legally possesses her firearm. It is for her protection and that of her family. The government in the Logsdon case, upon reviewing her motion to lift the restriction, agreed that a

> "... modification of the pretrial firearms restriction is justified in this case. Ms. Logsdon is not charged with any crimes of violence and has no violent criminal history. Ms. Logsdon is not required to meet with Pretrial Services in person at this time. Ms. Logsdon has asserted that she wishes to possess a firearm in her home while her husband works overnight and Ms. Logsdon is at home with their children. Ms. Logsdon has an Illinois permit to possess a firearm in her home. Based on those unique circumstances, the parties agree that a modification of the condition can be imposed here. The parties agree that Ms. Logsdon should not possess any firearm other than her own personal firearm in her residence for personal protection, and not possess any other weapon or destructive device. If at any time Ms. Logsdon meets with Pretrial Services in person, she should not be allowed to possess her firearm during those visits." (ECF Doc.18, 22-cr-23-01,

Likewise, in *United States v. Loruhamah Yazdani-Isfehani*, 21-cr-543-03 (CRC), Judge Christopher R. Cooper lifted the restriction for a similarly-situated defendant, keeping in place the restriction on other destructive devices and weapons, and allowing the defendant to possess her firearm in her residence, for her protection and that of her boyfriend's children, who are frequent overnight

8

guests. (Minute Order, April 5, 2022). There, too, the government did not oppose lifting the restriction as to firearms kept in the residence for her protection.5

Therefore, each renewed motion was based upon and triggered by changes in the law in the form of precedents questioning the limitation of gun ownership and possession as conditions upon release from incarceration on bail awaiting trial.

**Sixth**, showing the opposite of what must have been intended, in its Opposition at Dkt. #22, referred to and relied upon in its Opposition at Dkt. # 95, the Government inadvertently proves how Kastner carefully complied with the police:

> He entered the Capitol building just minutes after the initial breach of the building. And instead of leaving when he encountered a line of law enforcement officers attempting to stop the rioters from progressing into the building, Kastner remained inside. He witnessed the mob push past the line of law enforcement officers and watched the mob continue into the building.

So, the Government admits that a line of law enforcement officers *inside* the Capitol showed a line beyond which people were not allowed to progress. Yet, the Government admits that Kastner respected and complied with the line of police officers. The Government appears to be trying to charge many January 6 Defendants with "***criminal watching***." Kastner – the Government tells us – watched other people push past the line of law enforcement officers, ***something Kastner (they say) did not do***.

9

Therefore, the Government round-about concedes that Kastner remained peaceful and respectful, even if it is alleged that he ventured further than he should have. The U.S. Capitol is always marbled with sections that are open to the public and those that are for authorized personnel only. There have always been corridors which tours of school children and tourists and citizen lobbyists may freely travel in alongside corridors marked with tiny little wooden signs about waist high saying Authorized Personnel Only. Here, the Government contends that there was a line of police indicating that demonstrators were not allowed to progress further – and Kastner did not.

However, the Government also persists in a fundamental mistake. On April 6, 2022, Judge Trevor McFadden provided a very interesting split decision, including in *United States v. Matthew Martin*, Case No. 1:21-cr-00394, in this District. Judge McFadden found Matthew Martin not guilty because the U.S. Capitol Police had not given notice to the public of a restricted area under 18 U.S.C. 1752(a)(1) (that is, notice was not still visible after efforts by some to remove barricades) and police officers did not express any discouragement of Martin entering the Capitol. But McFadden found another Defendant had crawled over walls and other obstructions to enter the Capitol. Thus, Judge McFadden found, the second co-Defendant did not need to see signs posted to realize that he

was not supposed to be entering the building, if he had to crawl over walls to do it. The split decision strongly reveals the legal test that is important.

However, the Government has stretched or misunderstood Judge McFadden's rulings. McFadden's ruling was not that simply seeing other people engaged in misconduct causes one to be guilty. Seeing guilt does not create guilt. Seeing people brawling would lead a reasonable person to conclude that those people will be arrested and the remainder of the crowd may continue to demonstrate. Continuing to make this mistake, the Government wrongly thinks that upon seeing police Americans are required to turn and flee. People who see a scuffle are free to stand and watch.

**Seventh,** finally, the Government argues at Dkt. #22, that, " Kastner has failed to provide a reason for needing a firearm. His employment does not require him to possess a firearm, and he has made no argument regarding self-defense or even recreation." However, the Constitutional right to keep and bear arms is not dependent upon a showing of "need," any more than one's "need" to Free Speech must be shown before one may exercise their First Amendment rights.  One does not need to convince anyone, that one "needs" due process of law before one has a right to it.  The Bill of Rights is widely regarded as a restraint upon Government. The Second Amendment like other rights is not based upon the divine favor of a beneficent Government bestowing its grants of blessings upon its favorites.  The

11

need for a gun is overwhelmingly obvious as set out in the Second Amendment, and it extends to every citizen in the United States of America

I. **CONCLUSION**

Thus, based on the above-mentioned arguments the appeal is not untimely due to the previously filed motion to extend and good cause reasons provided; and the Magistrate Judge's order should not be affirmed on its merits due to recent and ongoing legal precedents. In the alternative, Defendant requests for a final judgment on this issue or certification of an interlocutory appeal in order to proceed with an appeal to the higher Courts. For the foregoing, reasons, notwithstanding the Government's Opposition, Defendant Kastner continues to maintain that the Court should grant his appeal.

Dated: April 18, 2023

*/s/ John M. Pierce*
John M. Pierce
JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

*COUNSEL FOR THE DEFENDANT*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

*/s/ John M. Pierce*
John M. Pierce