UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case: 21-cr-725-1 (RDM) |
| | : |
| JARED SAMUEL KASTNER | : |
| | : |
| Defendant. | : |

DEFENDANT KASTNER'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS

Defendant Kastner, by and through his attorney of record John Pierce, hereby replies to the government's opposition to his motion to suppress (ECF113).

Kastner and others on January 6 were victims of the largest "search warrant" in human history: a warrant in which the United States government demanded all cell phone location data for several hours' time within one of America's largest public buildings; an area of more than a million square feet. The warrant was a general warrant by any definition. It stated only a range of hours. It did not identify a specific criminal offense. It did not describe any individual criminal suspect. It admittedly captured the cell phone location tracking data of countless innocent individuals.

And at the time this "search warrant" identified the cell phone number of defendant Kastner, authorities had no probable cause to accuse Kastner of any offense. It was only upon further questioning and investigation—fruit of the poisonous tree—that authorities could even identify what alleged offenses to present against Kastner.

The general warrant(s) in this case illustrate the unconstitutional overzealousness of the United States Department of Justice. As Justice Douglas wrote a half century ago, "we are currently in the throes of another national seizure of paranoia, resembling the hysteria which surrounded the Alien and Sedition Acts, the Palmer Raids, and the McCarthy era. Those who register dissent or who petition their governments for redress are subjected to scrutiny by grand juries." *United States v. U.S. District Court for Eastern District of Michigan* (also known as the Keith Case), 407 U.S. 297, 329 (1972) (Douglas, J., concurring). "We have as much or more to fear from the erosion of our sense of privacy and independence by the omnipresent electronic ear of the Government as we do from the likelihood that fomenters of domestic upheaval will modify our form of governing." *Id*. At 333.

Much of the government's opposition relies on now-outdated-and-overturned extensions of doctrines found in cases such as Rakas v. Illinois, 439 U.S. 128, 143 (1978), Townsend v. United States, 236 F. Supp. 3d 280, 324

(D.D.C. 2017), *Smith v. Maryland*, 442 U.S. 735, 740 (1979), and *Katz v. United States*, 389 U.S. 347, 351 (1967). Specifically, those pre-Carpenter cases generally held that persons have no reasonable expectations of privacy in their data that is held, interfaced, or submitted between themselves and any "third party."

But the Supreme Court in *Jones*, and then in *Carpenter*, has dispensed with these notions, at least regarding modern cellular phone tracking data. As the Court is well aware, Americans today carry almost all of their "papers and affects" in their cell phones, and perhaps even their very "houses, papers and effects" if one were to consider that such devices may now be the actual keys to Americans' homes and living spaces. Modern Americans literally keep the keys to all of their private lives in their cell phones, including all their family photos, their financial and transaction records, and the entirety of their daily or hourly correspondence. In many ways, the modern cell phone represents the person himself as it tracks, assists, and monitors the person's movements, thoughts, communications and travel.

As Chief Justice Roberts wrote in *Carpenter v. United States*, 138 S.Ct. 2206 (2018), "when *Smith* was decided in 1979, few could have imagined a society in which a phone goes wherever its owner goes, conveying to the wireless carrier not just dialed digits, but a detailed and comprehensive record of the person's movements." "We decline to extend *Smith* and *Miller* to cover these novel

circumstances. Given the unique nature of cell phone location records, . . . . we hold that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI."

In *United States v. Jones* (2012), the Supreme Court decided 9-0 that police violated the Fourth Amendment's protection against "unreasonable search and seizures" when they surreptitiously installed a GPS tracking device on a car driven by a suspected drug dealer. Police initially obtained a warrant but installed the device after the warrant expired. The government argued no warrant was required.

*Jones* settled that police must get a warrant to install a GPS on a car. But, the unanimous decision contains a lot of disagreement that leaves unsettled whether police need a warrant to remotely track cell phones.

Much of this disagreement was resolved six years later in *Carpenter*. In Carpenter, the Supreme Court wrote that "First, that the [Fourth] Amendment seeks to secure "the privacies of life" against "arbitrary power,"" citing *Boyd v. United States*, 116 U. S. 616, 630 (1886). "Second," wrote the Court, "that a central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance,"" citing *United States v. Di Re*, 332 U. S. 581, 595 (1948).

As the Supreme Court held in Carpenter, a search of cell tracking data is indeed a search, which requires individualized probable cause to believe a specific

crime or set of crimes were committed by a specific suspect.  The warrants used in this case were general warrants by any definition or standard.  And no reasonable officer could have carried out such a search in good faith.

Accordingly, the Court must invalidate the search in this case, along with all evidence gained therefrom.

RESPECTFULLY SUBMITTED,

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street,
3rd Floor OMB #172
Woodland Hills, CA 91367
(213) 279-7648
jpierce@johnpiercelaw.com

CERTIFICATE OF SERVICE

I hereby certify and attest that on June 14, 2023, I uploaded this document to the Court's ECF electronic filing system, thereby serving the document on all parties.

/s/ John Pierce