**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 1:21-CR-725 (MAU)** |
| | : | |
| **JARED SAMUEL KASTNER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT KASTNER'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS,
AND FOR FAILURE TO STATE A CLAIM**

The United States of America respectfully submits this opposition to Jared Kastner's untimely motion to dismiss all counts of the Superseding Information. ECF No. 114. Kastner seeks to contest facts in his motion to dismiss, which is inappropriate for a pretrial motion under Rule 12(b)(3)(B)(v), claiming, as Kastner appears to do here, the failure to state an offense. Additionally, Kastner argues that the "First Amendment, and other binding case law, forbids this case from proceeding." *Id.* at 1. Finally, Kastner claims without elaboration that the Court "lacks jurisdiction in this matter entirely." *Id.* Kastner's claims are not new; motions similar—if not identical—to the one filed here have been rejected by other judges in this district. *See United States v. Baez,* --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 98766 (D.D.C. June 2, 2023)*; United States v. Gray,* --- F. Supp. 3d ---, 2023 U.S. Dist. 2023 LEXIS 70431 (D.D.C. January 26, 2023)*.* His claims remain meritless here and this Court should deny them.

I.   **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

   A.  **Events of January 6, 2021 and Kastner's Arrest**

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced

their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

The government set forth the details of Kastner's participation in this attack in its Opposition to Kastner's Motion to Modify Conditions of Release. ECF No. 22. In short, mere minutes after the initial breach of the U.S. Capitol building, the Defendant unlawfully entered the building. The initial breach occurred at 2:12 p.m., and Kastner entered the Capitol at approximately 2:17 p.m. After entering, he walked toward the Crypt, where he was confronted by a line of law enforcement officers who were preventing rioters from progressing further into the building. During the standoff that ensued, rioters yelled at the law enforcement officers and moved forward toward the officers. Instead of leaving, Kastner remained in the Crypt while a crowd of rioters pushed forward into the law enforcement officers, eventually breaking the line. Ultimately, Kastner remained in the Capitol building for about 18 minutes.

For his participation in the riot, Kastner was charged by criminal Complaint on December 7, 2021, and arrested on December 8, 2021. ECF Nos. 1, 5. On December 8, 2021, the government filed a criminal Information charging Kastner with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 7. On February 9, 2022, the government filed a criminal Superseding Information charging Kastner with the same above offenses and including another co-defendant. ECF No. 24.

On June 6, 2023—18 days after the pretrial scheduling order's May 19th deadline for dispositive motions under Federal Rule of Criminal Procedure 12(a)-(d)—Kastner filed the instant Motion to Dismiss on First Amendment Grounds, and For Failure to State a Claim. ECF No. 114.

## II.   LEGAL STANDARD

### A.  Jurisdiction

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a criminal defendant may, at any time, move to dismiss an indictment for lack of jurisdiction. *United States v. Chilcoat*, 22-cr-299-CKK, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 3842, at *7-8 (D.D.C January 10, 2023). When considering a challenge to an indictment, "a district court is limited to reviewing the face of the indictment" and the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed). Kastner's motion never provides any basis for his claim that this Court is without jurisdiction.  He does not identify whether his objection refers to a supposed lack of subject matter jurisdiction, personal jurisdiction, or a statutory prerequisite for the Court's ability to preside over this case. Subject matter jurisdiction in every criminal case is derived from 18 U.S.C. § 3231, which grants the district courts of the United States original jurisdiction "of all the offenses against the laws of the United States." *See United States v. Delgado-Garcia*, 374 F.3d 1337, 1341-42 (D.C. Cir. 2004). The only prerequisite for personal jurisdiction is the defendant's presence in the United States. *E.g., United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005) (personal jurisdiction in a federal criminal prosecution is supplied by the defendant's presence in the United States).

### B.  Failure to state a claim

A defendant may move before trial to dismiss an information or indictment, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of

a charging document, such as an information or indictment, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148–149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A charging document is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an *indictment* 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

When assessing the sufficiency of criminal charges before trial, an indictment "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether the allegations "if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

There are two ways in which an information may fail to state an offense. First, "if the charged statutory provision is unconstitutional," and second, "if the offense charged does not apply to the defendant's conduct." *United States v. Nassif*, 21-CR-421 (JDB), --- F. Supp. 3d ---, 2022 U.S. Dist. LEXIS 164181, at *2 (D.D.C. Sept. 12, 2022) (citations omitted); however, in the

context of a pretrial motion to dismiss, "the sole question before the court is the legal sufficiency of the information." *Id*. (cleaned up).

### C. First Amendment Challenge

"To prevail on an as-applied First Amendment challenge," a defendant "must demonstrate that the statute is unconstitutional as applied to his particular expressive activity." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). The Court must "first assess whether [the defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression.'" *Id.* (*citing Texas v. Johnson*, 491 U.S. 397, 403, (1989)). If the statute is not related to expression, then the less stringent standard the Supreme Court announced in *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), for regulation of noncommunicative conduct controls. *Caputo*, 201 F. Supp. 3d, at 71. That test has four prongs: first, the challenged regulation must be "within the constitutional power of government"; second, it must "further[ ] an important or substantial government interest"; third, this interest must be "unrelated to the suppression of free expression"; and fourth, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *Id.* (*citing O'Brien*, 391 U.S., at 377).

### III.   ARGUMENT

### A. Kastner's Jurisdictional Challenge Is Meritless

Kastner appears to raise a jurisdictional challenge, claiming at the start of his motion to dismiss that this Court "lacks jurisdiction in this matter entirely." ECF 114 at 1. Kastner fails to explain how this Court lacks jurisdiction. He does not provide any binding caselaw or other citation to support this claim. Similarly, he offers no explanation or authority for the premise that the First Amendment deprives this Court of authority to hear this criminal case.

This Court does have jurisdiction over Kastner's case, for reasons that the D.C. Circuit has explained:

> Under Article III of the Constitution, "[t]he judicial power of the United States" is "vested ... in such inferior Courts as Congress may from time to time establish." U.S. Const. art. III, § 2. Congress conferred original jurisdiction on the district court over appellants' case by enacting 18 U.S.C. § 3231. That statute, passed originally in 1948, *see* 62 Stat. 826, provides that the "district courts of the United States shall have original *jurisdiction* ... of all offenses against the laws of the United States." The ordinary meaning of the term "jurisdiction" at the time that statute was passed referred to a court's power to "declar[e] and administer [ ] law or justice." [] The Oxford English Dictionary 635 (1933); *see also* Webster's Third New International Dictionary 1227 (1961). Section 3231 identifies "offenses against the laws of the United States" as the relevant "law" over which the court has "power" (or "jurisdiction"). The power to declare that law includes the power to decide whether the offense charged is a true offense, for, as Justice Holmes noted long ago, that power remains whether the court's "decision" on the law (in this instance, the court's judgment as to the "offense") "is right or wrong." *Lamar v. United States,* 240 U.S. 60, 65, 36 S.Ct. 255, 256, 60 L.Ed. 526 (1916) (noting that "[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case" rather than the court's jurisdiction). The district court's subject matter jurisdiction in this case therefore included the power to decide whether the indictment charged a proper "offense."

*Delgado-Garcia*, 374 F.3d, at 1341-42 (D.C. Cir. 2004). Because the Superseding Information charges federal offenses against Kastner, "[t]hat's the beginning and the end of the 'jurisdictional inquiry.'" *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999); *see also Alikhani v. United States*, 200 F.3d 732, 743-35 (11th Cir. 2000) (the filing of an indictment charging violation of laws of the United States empowered the district court to enter judgment on the merits of the indictment). Kastner's suggestion to the contrary is meritless.

If Kastner means to argue that this Court lacks personal jurisdiction, such an argument has even less validity. Personal jurisdiction in a federal criminal prosecution is "supplied by the fact that the defendant is within the territory of the United States." *United States v. Burke*, 425 F.3d

6

400, 408 (7th Cir. 2005); *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) ("A defendant need not acquiesce in or submit to the court's jurisdiction or actually participate in the proceedings in order for the court to have personal jurisdiction over the defendant"); *United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (per curiam) ("Physical presence in the United States usually supplies the only necessary prerequisite for personal jurisdiction in a federal criminal prosecution"). Where a district court has subject matter jurisdiction over the offenses charged it is "axiomatic" that the court has personal jurisdiction over the individuals charged. *E.g.*, *United States v. Halkbank*, No. 15-cr-867, 2020 U.S. Dist. LEXIS 182312, at *7 (S.D.N.Y. Oct. 1, 2020); *see also United States v. Williams*, 341 U.S. 58, 65, 71 (1951) ("The District Court had jurisdiction of offenses against the laws of the United States. Hence, it had jurisdiction of the subject matter, to wit, an alleged violation of a federal conspiracy statute, and, of course, of the persons charged." (internal citation and footnote omitted)).[1]

## B.  The Superseding Information Adequately States an Offense for All Counts

Kastner's motion fails on the merits because the Superseding Information adequately states an offense in every Count. Count One of the Superseding Information alleges that, in violation of 18 U.S.C. § 1752(a)(1):

> On or about January 6, 2021, in the District of Columbia, Jared Samuel Kastner, Luke Faulkner, and Kenneth Duncan Massie, did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off,

---

[1] Under Rule 12(b)(2), a motion that the Court lacks "jurisdiction may be made at any time while the case is pending." Rule 12(b)(2), however, is limited to claims based on subject matter jurisdiction and not personal jurisdiction. *United States v. Ghanem*, 993 F.3d 1113, 1132 (9th Cir. 2021); *United States v. Marquez*, 594 F.3d 855, 858-60 (11th Cir.), *cert. denied*, 560 U.S. 947 (2010). Accordingly, Rule 12(b)(2) does not excuse Kastner's untimely filing insofar as he asserts that this Court is without personal jurisdiction, and his meritless challenge to the Court's subject matter jurisdiction does make his other arguments timely.

and otherwise restricted area within the United States Capitol and its grounds,
where the Vice President was temporarily visiting, without lawful authority to
do so.

ECF No. 24 at 1.

The elements of Count One are:

1)      The defendant entered or remained in a restricted building or grounds
        without lawful authority to do so.

2)      The defendant did so knowingly.

*See United States v. Rivera*, 607 F. Supp. 3d 1, 7 (D.D.C. 2022) (opinion of Judge Kollar-Kotelly

outlining the elements for all four offenses charged in the Superseding Information).

Count Two of the Superseding Information alleges that, in violation of 18 U.S.C.

§ 1752(a)(2):

On or about January 6, 2021, in the District of Columbia, Jared Samuel Kastner,
Luke Faulkner, and Kenneth Duncan Massie, did knowingly, and with intent to
impede and disrupt the orderly conduct of Government business and official
functions, engage in disorderly and disruptive conduct in and within such proximity
to a restricted building and grounds, that is, any posted, cordoned-off, and otherwise
restricted area within the United States Capitol and its grounds, where the Vice
President was temporarily visiting, when and so that such conduct did in fact
impede and disrupt the orderly conduct of Government business and official
functions."

ECF No. 24 at 1-2.

The elements of Count Two are:

1)      The defendant engaged in disorderly or disruptive conduct in, or in
        proximity to, any restricted building or grounds;

2)      The defendant did so knowingly, and with the intent to impede or disrupt
        the orderly conduct of Government business or official functions;

3)      The defendant's conduct occurred when, or so that, his conduct in fact
        impeded or disrupted the orderly conduct of Government business or
        official functions.

*See Rivera,* 607 F. Supp. 3d, at 8.

Count Three of the Superseding Information alleged that, in violation of 40 U.S.C.

§ 5104(e)(2)(D):

> On or about January 6, 2021, in the District of Columbia, Jared Samuel Kastner, Luke Faulkner, and Kenneth Duncan Massie, willfully and knowingly engaged in disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress.

ECF No. 24 at 2.

The elements of Count Three are:

1) The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2) The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress;

3) The defendant acted willfully and knowingly.

*See Rivera,* 607 F. Supp. 3d, at 10.

Count Four of the Superseding Information alleged that, in violation of 40 U.S.C.

§ 5104(e)(2)(G):

> On or about January 6, 2021, in the District of Columbia, Jared Samuel Kastner, Luke Faulkner, and Kenneth Duncan Massie, willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building.

ECF No. 24 at 2.

The elements of Count Four are:

1) The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2) Second, the defendant acted willfully and knowingly.

*See Rivera,* 607 F. Supp. 3d, at 10.

The Superseding Information therefore includes the elements of the offense for all four

offenses. The Counts of the Superseding Information "echo[ ] the operative statutory text while

also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130

(D.C. Cir. 2018). Counts One, Two, Three, and Four "fairly inform" Kastner of the charges against

which he must defend, and that it stems from his conduct on January 6, 2021, in the District of

Columbia. *Hamling*, 418 U.S., at 117. "No more is required." *United States v. Nassif*, 21-cr-0421-

JDB, --- F. Supp. 3d ---, 2022 U.S. Dist. LEXIS 164181, at *15 (D.D.C. 2022).

Criminal cases have no mechanism equivalent to the civil rule for summary judgment.

*United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are

creatures of civil, not criminal trials); *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir.

2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary

judgment in the civil context"); *United States v. Oseguera Gonzalez*, 20-cr-40-BAH, 2020 U.S.

Dist. LEXIS 201479, at *5 (D.D.C. 2020) (collecting cases explaining that there is no summary

judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency

of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the

government can prove. Instead, a criminal defendant may move for dismissal based on a defect in

the information or indictment, such as a failure to state an offense. *United States v. Knowles*, 197

F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an information fails to state an offense because an

essential element is absent calls for a legal determination. In Kastner's introduction and conclusion

of the motion to dismiss, he makes the bare assertion that the government has failed to state a

claim; however, the Defendant does not describe a legal standard, provide analysis, or present

arguments that any count in the Superseding Information omits a necessary element.[2]

---

[2] Kastner captioned the first heading of his argument section, "Nor does the indictment or Statement of Facts allege any conduct inconsistent with First Amendment-protected advocacy." ECF No. 114, at 3. Kastner provides no authority supporting his premise that any charging document must allege activity inconsistent with protected First Amendment activity.  The United States is aware of none.

As Judge Friedman determined that when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)). That approach is the correct one here. *See also United States v. McHugh*, 583 F. Supp. 3d 1 (D.D.C. 2022) (to resolve a motion to dismiss, the court addresses only the legal sufficiency of the indictment and does not review the sufficiency of the evidence against the defendant or craft jury instructions). Since each count charged in this case alleges the time and place of the offense and echoes the language of the relevant statute, the charges in the Superseding Information are sufficient, and the defendant's claims must fail.

Consistently with the requirement to limit review of a motion to dismiss to the language of the charging document, Kastner cannot seek dismissal based on facts outside of those alleged in the Superseding Information.  Nevertheless, he attempts to equate the statement of facts supporting the criminal complaint, ECF No. 1-1, as the measure against which the Superseding Information must be judged. That approach is incorrect. Unlike an information, a complaint is not the final charging document. After the filing of a complaint, the prosecution may continue to investigate and refine or alter its charging decisions. Thus, a complaint is not equivalent to a "full proffer" of the government's evidence. *See Yakou*, 428 F.3d at 246-47.[3] Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity

---

[3] "It is usually improper to force the Government to proffer its evidence pretrial so that the defense might test its sufficiency. That could, for instance, curtail the Government's ability to obtain additional evidence or locate new witnesses." *United States v. Hitelsberger*, 991 F. Supp. 2d 108, 125 (D.D.C. 2014) (cleaned up).

of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

Throughout his motion, Kastner raises numerous and disputed factual allegations—what he did, what his motives were, what the crowd concluded—attempting an apparent rebuttal of the statement of facts supporting the criminal complaint, ECF No. 1-1. Kastner repeatedly disputes the government's allegations that he engaged in certain conduct or harbored certain intent. For example:

- "Kastner contests each sentence of this description." ECF No. 114, at 2 (referring to description of the Capitol being restricted on January 6).

- "Kastner is seen looking at others around him who seem equally unprohibited from entering." *Id.*

- "[T]he subjective evidence that Kastner knew the area was restricted is sorely lacking. *Id.* at 7.

- "The presence of so many hundreds of others around Kastner who regarded the area as unrestricted also contributed to Kastner's innocent state of mind regarding the restrictedness or no restrictedness of the area." *Id.* at 9.

- "Kastner's assessment that hundreds of people around him who evidently believed they were rightfully in the area is a defense for Kastner." *Id.*

- "Here, the conduct of Kastner and those alongside him on Jan. 6 was plainly aimed at persuading policymakers—not merely attacking, killing, obstructing or harming them." *Id.* at 12.

Each of the examples above asserts disputed facts outside the allegations in the Superseding Information which are, at most, subject to determination through "*a trial on the merits*" of the

charges. Rule 12(b)(1) (emphasis added). In other words, these are factual disputes to be resolved at trial and they are inappropriate bases to seek dismissal of the Superseding Information. *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Ketanji Brown Jackson, J.) ("When testing the sufficiency of the charges in an indictment … the allegations therein must be accepted as true.") (cleaned up). The defense offers no legal support for the claim that a court may look to a complaint to assess the validity of an information, or for the proposition that any component of a criminal complaint equals a full proffer from the government. This Court should therefore reject the attempt to treat the complaint as a sufficient source of information for addressing the motion to dismiss under Rule 12.

Kastner's closest attempt to challenge the legal sufficiency of any count arises when he suggests, improbably and without support, that the Capitol was not a restricted area on January 6, 2021, contradicting the allegations in Counts One and Two. Once again, the motion offers no legal authority for this assertion, which is contrary to statute and which at least one other decision has rejected. Judge Friedman in *United States v. Baez,* --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 98766, at *4 (D.D.C. June 2, 2023), quite explicitly rejected the same argument, stating, "This is incorrect."

Section 1752(c)(1)(B) defines the term "restricted building or grounds" in Section 1752(a)(1) to mean "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). As Judge Friedman and many other judges of this court have concluded, the U.S. Capitol was clearly covered by the definition of "restricted buildings or grounds" on January 6, 2021. *See United States v. Puma*, 596 F. Supp. 3d, at 114; *United States v. Gossjankowski*, 21-cr-0123, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 4229, at *7 (D.D.C. Jan. 9,

2023); *see also, e.g., United States v. Griffin*, 549 F. Supp. 3d 49, 52-58 (D.D.C. 2021); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 15-28 (D.D.C. 2021); *United States v. Nordean*, 579 F. Supp. 3d 28, 41-61 (D.D.C. 2021). Kastner's challenge to the sufficiency of the Superseding Information fails in every respect.

### C.  Kastner's Prosecution Does Not Violate the First Amendment

In effect, although he fails to properly articulate his claim, Kastner argues that the statutes charged are overbroad because, according to him, they somehow seek to punish expression protected under the First Amendment. Indeed, the same motion Kastner has filed in this case has been filed in other January 6 cases where judges have treated the motion as one that makes a First Amendment overbreadth or vagueness challenge. *See, e.g., Baez,* (noting that the motion fails to articulate whether that defendant's First Amendment objection to Section 1752(a) was facial or as applied to her case); *Gray* (noting that the defendant's First Amendment challenge to Section 5104(e)(2)(D) appeared to argue that the statute was facially invalid and as applied to his conduct).  In each case, the motion Kastner has filed here has been denied.

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id.* By contrast, a nonpublic forum is "a space that is not by

14

tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the U.S. Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); see also *United States v. Munchel*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 67141, at *20 (D.D.C. 2023); *Nassif*, --- F. Sup. 3d ---, 2022 U.S. Dist. LEXIS 164181, at *4; *United States v. Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *43-44 (D.D.C. 2023); *United States v. Gray,* --- F. Supp. 3d --, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (D.D.C. 2023).[4]

Kastner advances the blanket assertion that any violation of 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) charged in the Superseding Information constitutes an impermissible restriction on speech in a public place. ECF No. 114, at 10. Kastner cites caselaw but does little to frame the legal issue or advance his claims thereupon. He does not identify whether the challenge is facial or as applied. He does not make a claim as to whether the statute as written is content based or content neutral. He does not identify whether the U.S. Capitol is a public forum, a designated/limited public forum, or a nonpublic forum. He does not ask this Court to apply either strict scrutiny or the reasonableness standard. Kastner simply asserts that his conduct "on Jan. 6 was plainly aimed at persuading policymakers—not merely attacking, killing, obstructing or harming them," as though he and others were merely exercising

---

[4] Even if this Court were to engage in a fact dependent First Amendment analysis of Kastner's conduct on January 6, the statutes under which Kastner is charged are constitutional, as further detailed below.

"the right of free speech and the right to petition the government for the redress of grievances...." ECF No. 114 at 4, 12. No precedent supports this broad claim.

In effect, although he fails to properly articulate his claim, Kastner appears to object that the statutes charged are overbroad because, according to him, they somehow seek to punish expression protected under the First Amendment. Indeed, the same motion Kastner has filed in this case has been filed in other January 6 cases where courts have treated the motion as one that makes a challenge based on the alleged overbreadth of the charges. In each case, the motion Kastner has filed here has been denied. *See Gray*, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27; *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-26. Other courts in this district have also rejected overbreadth challenges to the offenses alleged in the Superseding Indictment, *see Rhine*, 2023 U.S. Dist. LEXIS 12308, at *29-49 (D.D.C. January 2023), and to a different statute with a broader prohibition on "any act to obstruct, impede or interfere" with law enforcement in the performance of official duties. 18 U.S.C. § 231(a)(3); *see, e.g., McHugh*, 583 F. Supp. 3d at 28-29; *Nordean*, 579 F. Supp. 3d, at 58.

Kastner does not characterize what, if any role, he played on January 6, but one can infer from his arguments that he contends that he was a "demonstrator[]" or a "protestor[]," and that he believes his prosecution "conflicts with settled First Amendment law." ECF No. 114, at 13. If the Court were to even reach that question, his claim fails.

### i. Kastner's Offense Conduct Did Not Involve Constitutionally Protected Expression

Kastner's alleged offense conduct is not protected by the First Amendment.

Two charges carry specific-intent elements. Under 18 U.S.C. § 1752(a)(2), the government must show that Kastner acted "with intent to impede or disrupt the orderly conduct of Government

business or official functions." Similarly, under 40 U.S.C. § 5104(e)(2)(D), the government must show that Kastner acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." As Judge Kelly has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties … is simply not protected by the First Amendment." *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22 (denying motion to dismiss and upholding 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) under facial First Amendment challenges); *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (denying motion to dismiss and holding Section 5104(e)(2)(G) is not unconstitutionally overbroad); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment  challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive") (cleaned up); *Gregory v. City of Chicago*, 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.")

With respect to 18 U.S.C. § 1752(a)(1), Judge Cooper concluded in *Caputo* that the act of entering White House property might carry an expressive component. *See* 201 F. Supp. 3d at 71. So too here, Kastner's act of unlawfully entering the Capitol's restricted area could be

"communicative in nature." *Id.* But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, 605 F. Supp. 3d 111, 130-131(D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis).

Kastner's more targeted attack on 40 U.S.C. § 5104(e)(2)(G), which prohibits knowing and willful demonstrating, parading, and picketing in a Capitol building, also fails. More than 20 years ago, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). Kastner offers no compelling reason to deviate from that sensible conclusion. A First Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then turns to the forum analysis described above. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

As described above, Kastner's claim founders at the first step because he fails to establish beyond cursory arguments that his case involves speech or conduct protected by the First Amendment. On the one hand, to the extent Kastner seeks to argue that Section 5104(e)(2)(G) contravenes the First Amendment, he must do after trial. *See United States v. Kokinda*, 497 U.S.

720, 724-25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As Kasnter does here, they advanced a First Amendment claim, namely, that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim *after trial* in which the presentation of evidence established precisely the defendants' conduct, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724-25. Because, by contrast, Kastner's First Amendment challenge is premature, this Court should "go no further." *Cornelius*, 473 U.S. at 797.

Even if the Court were to consider facts outside of the Superseding Information, which the Court should not, Kastner is wrong in his assertion that he should have unfettered access to the U.S. Capitol. The defendant emphasizes the public nature of the Capitol as justification for his participation in the riot on January 6, 2021. ECF No. 114 at 4. In doing so, Kastner appears to rely heavily not on binding caselaw but on facts outside the Superseding Information concerning the architecture of the Capitol building. *Id.* Kastner insists that there is a distinction between being closed and being "secured," comparing the building to the Smithsonian Institution, which Kastner claims is similarly secured "24 hours a day, 7 days a week." *Id.* at 5. This of course ignores the fact that the Smithsonian Museums and Zoo are only open during business hours and indeed both "closed" as well as "secured" after hours, much like the Capitol was on January 6, 2021.[5]

In any event, Kastner's apparent First Amendment claim—that the Capitol building should be considered a public forum—lacks merit. Kastner cites no precedent in which a building comparable in form or function to the U.S. Capitol has been found to be a public forum. As discussed above, a nonpublic forum is one to which the government does not "grant general

---

[5] https://www.si.edu/museums

access." *Id*. at 803. Kastner's characterization of his unfettered right to enter the Capitol building does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56. Moreover, the Court in *Bynam* court explicitly concluded that 40 U.S.C. § 5104(e)(2)(G), is viewpoint neutral and a reasonable regulation of a nonpublic forum (i.e., the Capitol). Congress, in 40 U.S.C. § 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. At least two other courts in this district have concurred with the court's analysis in Bynum. *See United States v. Nassif*, 21-CR-421 (JDB), ECF No. 42, at 3-11 (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). First, 18 U.S.C. § 1752(a) prohibits certain conduct inside a restricted area—restricted given the presence of a United States Secret Service protectee—without lawful authority. For reasons like those discussed above and in *Bynum*, the government is within its rights to maintain restricted areas as nonpublic fora. Moreover, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.

Kastner's citation to *Adderley v. Florida*, 385 U.S. 39 (1966), is inapposite. In *Adderley*, the Supreme Court did remark that protesting at a state capitol is different in character from protesting at a jail because "[t]raditionally, state capitol grounds are open to the public." *Id.* at 41. The context in which the Court made this observation, though, is of great import. In asserting that "traditionally capitols grounds are open to the public," the Court was extrapolating upon its

decision in *Edwards v. South Carolina*, 372 U.S. 229 (1963). In that case, the Court struck down a statute that was "so broad and all-embracing as to jeopardize speech, press, assembly, and petition[.]" *Adderley*, 385 U.S. at 42 (*citing Edwards*, 372 U.S. at 237). It was this same doctrine of overbreadth, the *Adderley* Court noted, that rendered Louisiana's breach-of-the-peace statute unconstitutional. *Id.* (*citing Cox v. Louisiana*, 379 U.S. 536, 551-552 (1965)). The Court's statement about capitols being traditional public fora was not, as the Defendant asserts, a holding that any regulation that limits First Amendment activities on any capitol ground ever is unconstitutional. It was, instead, a truism that supported the holding from *Edwards* that a statute or regulation that was so overbroad and all-embracing such that it prohibited, in effect, any First Amendment activity on capitol grounds at any time is unconstitutional. *Adderley*, 385 U.S. at 42.

Because the charged conduct here does not implicate protected First Amendment expression, Kastner's challenge fails at the outset.

### ii. In the Alternative, Kastner's Prosecution Under the Charged Statutes Comports With the First Amendment.

Even assuming *arguendo* that some aspect of Kastner's conduct constitutes expressive First Amendment activity, the government's decision to prosecute him under the charged statutes passes muster under *O'Brien*. *See, e.g., Johnson*, 491 U.S., at 403 (1989), *citing O'Brien*, 391 U.S., at 377 (1968).

First, the four violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. Kastner does not (and cannot) contest the government's right to prohibit trespassing, disorderly conduct, or physical obstructions on its property.

Second, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned

up). As Judge Kelly has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021); *see also Caputo*, 201 F. Supp. 3d, at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021).

Third, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S., at 377. None of four crimes that Kastner is charged with turn on the content of his potentially expressive actions. Rather, the charged statutes ensure the protection and normal functioning of the Congress. *See Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *18-50 (D.D.C. January 2023); *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22, *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27.

Fourth, applying the charged statutes to Kastner's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S., at 376. As explained above, the statutes charged in the Superseding Indictment predominately (if not exclusively) regulate unprotected activities. And the statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Quite obviously, there were many avenues for [Kastner] to express [his] opinions about the 2020 presidential election, or [his] views about how Congress should perform its constitutional duties on January 6." *Nordean*, 579 F. Supp. 3d, at 43 (D.D.C. 2021).

### D.  Kastner's Motion to Dismiss is Untimely Under Rule 12

On October 28, the parties filed a Joint Status Report outlining a proposed pretrial schedule, wherein the parties agreed:

> The parties shall file any motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)–(D) on or before May 19, 2023; oppositions shall be filed on or before June 2, 2023; and replies shall be filed on or before June 9, 2023.

ECF. No. 68.

On October 31, 2022, Judge Moss issued a pretrial scheduling order containing deadlines agreed upon by the parties that provided:

> the parties shall file any motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)-(D) on or before May 19, 2023; oppositions shall be filed on or before June 2, 2023; and replies shall be filed on or before June 9, 2023….

*Id.*

This case was subsequently reassigned to this Court for trial (Docket Entry, December 22, 2022). With the agreement of the parties, this Court adopted the schedule that Judge Moss had ordered. Minute Order, January 26, 2023. This Court's order included the same deadline for dispositive pretrial motions pursuant to Rule 12:

> Upon consideration of the Parties' representations made on the record at the status hearing on January 25, 2023, the Parties' Joint Status Report [Dkt.] 68, and Defendant's Notice and Request for Trial by Jury [Dkt.] 89, it is hereby ORDERED that… the Parties shall file any motion pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A)-(D) on or before May 19, 2023; oppositions shall be filed on or before June 2, 2023; and replies shall be filed on or before June 9, 2023….

*Id.*

Kastner filed the instant Motion to Dismiss on First Amendment Grounds, and For Failure to State a Claim on June 6, 2023. This dispositive pretrial motion for "failure to state an offense" under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) was filed 18 days after the pretrial scheduling order's May 19th deadline.

Rule 12 of the Federal Rules of Criminal Procedure provides that certain defenses, objections, and requests, including motions for dismissal, "must be raised by pretrial motion if the basis for the motion is then reasonably available." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Rule 12

also permits the Court to set a deadline for the parties to make pretrial motions. *See* Fed. R. Crim. P. 12(c)(1). If a party does not meet the Court's deadline for making a pretrial motion, the motion is to be treated as untimely. *See* Fed. R. Crim. P. 12(c)(3), *see also United States v. Gerace*, 19-cr-0277, 2022 U.S. Dist. LEXIS 237678 (W.D.N.Y. December 19, 2022) (discussing untimely Rule 12 motions under pretrial scheduling orders). However, "a court may consider the [untimely motion] if the party shows good cause" for the late filing. *Id.* Generally, a party can demonstrate "good cause" only if they can show some reason why they could not have challenged the defect in the time required by Rule 12. *United States v. Griffith*, 21-cr-244-CKK, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 79302 (D.D.C. May 5, 2023) (denying Rule 12 motion challenging a defect in the indictment as untimely), *citing United States v. Doost*, 3 F.4th 432, 437 (D.C. Cir. 2021).

Kastner had ample notice of the Rule 12 pretrial dispositive motions deadline. Kastner did not request an extension of time to file the motion to dismiss, nor has he provided the Court with "good cause" under Federal Rule of Criminal Procedure 12(c)(3) that would justify why the alleged defect in the Superseding Information for failure to state a claim could not have been raised on or before the deadline. Based on the above, the Court should deny the motion as untimely.

## IV.    Conclusion

For these reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:          *s/ Will N. Widman*
                WILL N. WIDMAN
                CYTHERIA JERNIGAN
                ASSISTANT U.S. ATTORNEYS
                NC Bar No. 48158
                DC Bar No. 474942
                United States Attorney's Office
                Capitol Siege Section
                601 D Street NW
                Washington, D.C. 20530
                Phone: 202-353-8611
                Will.Widman@usdoj.gov
                Cytheria.Jernigan@usdoj.gov