UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>JARED SAMUEL KASTNER,<br><br>    *Defendant*. | Criminal Action No. 21-725 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Defendant Jared Kastner appeals Magistrate Judge Upadhyaya's order denying his motion to lift the pretrial release condition prohibiting him from possessing a firearm. *See* Dkt. 97; Dkt. 100. The appeal presents the latest in a long string of attempts by Kastner to remove or circumvent that condition of his pretrial release. For the reasons explained below, Kastner's appeal is **DISMISSED** as untimely.

**I. BACKGROUND**

This is one of the many cases pending before the Court relating to the attack on the U.S. Capitol on January 6, 2021. Kastner is charged with four misdemeanor counts: (1) knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (3) disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Dkt. 24 (Superseding Information). The Court has previously detailed Kastner's alleged activities, *see, e.g.*, Dkt. 42,

but, for present purposes, the Court focuses on the history of his efforts to modify the condition of his pretrial release restricting his access to firearms.

On December 14, 2021, Kastner had his initial appearance before Magistrate Judge Zia Faruqui. Min. Entry (Dec. 14, 2021). At that hearing, Kastner requested a modification to the standard pretrial release condition restricting firearm possession on the ground that he volunteered as a security guard at his church. Judge Faruqui granted Kastner's request and modified the standard condition to permit him to possess a firearm "while on the premises of the Wilmington Baptist Church" but only if (1) the "firearm [wa]s to be stored and secured on the Church's premises;" (2) Kastner was "prohibited from taking the firearms off the Church's grounds;" and (3) Kastner was otherwise "prohibited from possessing firearms." Dkt. 11 at 3.

Kastner then twice moved this Court to lift the remaining firearm restrictions, first on January 21, 2022, and again on April 13, 2022. Dkt. 20; Dkt. 37. The Court denied both requests. Dkt. 35; Dkt. 42. In denying Kastner's first request, the Court noted the importance of protecting the safety of Pretrial Services officers who may need to visit Kastner on pretrial release without warning. Dkt. 35 at 2-3. As D.C. Pretrial Services represented to the Court, "permitting Defendant to keep firearms at his residence poses an unreasonable risk to the officers who may need to conduct a home visit." *Id.* The Court also focused on officer safety in denying Kastner's second request. Dkt. 42 at 9-10.

Neither of those decisions invoked a blanket ban on the possession of firearms by those charged with non-violent misdemeanors. Rather, as the Court explained in its first decision denying Kastner's motion to modify Judge Faruqui's order:

> To start, the Court notes that the Magistrate Judge struck a reasonable balance in this case. Defendant is not categorically barred from possessing firearms, and he may continue to serve on the security detail for his Church. It is exceedingly unlikely that Defendant's Pretrial Services officer will need

2

>to visit Defendant while he is at church, and thus, that exception makes sense. Moreover, although Defendant is charged with misdemeanors, he stands accused of being among the first people to breach the U.S. Capitol on January 6, 2021, allegedly entering the building within five minutes of the "initial breach" and reaching the Crypt, "where he was confronted by a line of law enforcement officers."  Dkt. 22 at 3.  And, although Defendant is not charged with committing a violent crime, he allegedly remained unlawfully in the Capitol building while rioters screamed and pushed against law enforcement.  *Id.*  The government further alleges that Defendant, during his trip to the Washington region in the days leading up to January 6, researched "Large Capacity Magazines in Virginia" and "concealed carry magazine limit [W]ashington DC," *id.* at 6, suggesting that he owns a weapon equipped with a large capacity magazine and that he brought the weapon with him to the Washington region (most likely, Maryland and Virginia) in the days leading up to the assault on the Capitol.  Even crediting Defendant's suggestion that his Internet searches merely show that he was trying to comply with the law, the evidence that he hoped, if lawful, to bring a weapon equipped with a large capacity magazine to the rally-turned-riot is concerning.  The Court accordingly concludes that, in this context, the temporary firearm restriction is . . . reasonably [necessary] to assure the safety of the Pretrial Services officers during Defendant's supervision.
>
>Second, the Court is unpersuaded that the firearm restriction represents a failure to treat Defendant "individually," as Defendant contends.  To the contrary, although the government asked the Magistrate Judge to impose an absolute restriction on Defendant's possession of firearms, the Magistrate Judge, upon learning that Defendant serves as a security officer at his Church, rejected that request and, instead, allowed Defendant to carry a gun three times weekly while serving in the security detail at his Church. Dkt. 22 at 8.  That exception to the restriction was granted in recognition of Defendant's unique circumstances and his desire to continue serving his Church.  Defendant's suggestion that the Court has held that a firearms restriction should be imposed in every case is also incorrect.  Rather, the Court merely concludes that, on the facts of this case, a partial restriction is appropriate and that the Magistrate Judge's decision was reasonably tailored to Defendant's circumstances.

Dkt. 35 at 3-4.

In denying Kastner's second motion for reconsideration, the Court reiterated that it "'has [not] held that a firearms restriction should be imposed in every case'" and that "[t]here may be context-dependent reasons for permitting defendants on pretrial release to possess firearms at home, such as a desire to protect children while parenting alone, combined with a

determination that home visits need not be required, as was the case in *United States v. Logsdon*, No. 22-cr-23 (D.D.C. 2022)." Dkt. 42 at 9 (quoting Dkt. 35 at 4; citing Dkt. 37 at 3-4). But, here, on the "'facts of *this* case,'" the Court reaffirmed that Kastner failed to show that there was good reason to modify the "'partial restriction'" that Judge Faruqui put in place. *Id*. (quoting Dkt. 35 at 4) (emphasis in original). In short, the Court remained persuaded that permitting Kastner to possess firearms in his home while on pretrial release would pose a risk to officer safety and that he lacked any compelling, countervailing need to possess a firearm (outside of his church) while on pretrial release. *Id.* at 9-10.

Despite this history, Kastner was undeterred. On August 22, 2022, Pretrial Services filed a report recommending that the Court remove Kastner from Pretrial Supervision pending trial and, instead, direct that he be detained. Dkt. 45 at 2. The Court will not recite the entire background here. The short of it is that on July 26, 2022, a Pretrial Services officer conducted a home visit at Kastner's new residence. Dkt. 47 at 6. The officer asked Kastner whether there were any firearms within the residence; Kastner responded that there were. *Id.* The officer discovered three firearms in the residence. *Id.* The Court held a hearing regarding this asserted violation on September 6, 2022, at which it heard testimony from Pretrial Services officers, Kastner, and Kastner's wife. Dkt. 57 at 7.

Based on the evidence presented, the Court found "by clear and convincing evidence that . . . Kastner was in knowing violation of his conditions of pretrial release." *Id.* at 9. The Court also found that Kastner was "evasive or less than forthright" during his testimony. *Id.* Notwithstanding these findings, the Court rejected the recommendation from Pretrial Services that Kastner be detained pending trial. *Id.* at 12. As the Court explained, "conditions short of incarceration offer[ed] a less restrictive means of reasonably assuring the safety of the

4

community, at least at this time." *Id.* at 10. The Court accordingly ordered that (1) Kastner not reside in any place where any firearm is present; (2) so long as she resides with Jared Kastner, his wife Kaitlyn Kastner not possess any firearms in their shared residence (Kaitlyn consented to that condition during the hearing, Rough Hearing Tr. at 322:3-25 (Sept. 6, 2022)); and (3) Kastner be committed to home detention for a period of thirty days. Dkt. 57 at 11-12. The Court also vacated the exception to the standard condition that had previously allowed Kastner to possess a firearm while at his church. *Id.* at 11.

A few months later, in December 2022, Kastner "waive[d his right to] a trial, judgment, and sentencing by a district court judge," and, instead, sought to proceed before a magistrate judge. Dkt. 71 at 1. Without objection from the government, *see* 18 U.S.C. § 3401(f), the Court granted that motion, Min. Order (Dec. 21, 2022), and the case was randomly reassigned to Magistrate Judge Moxila Upadhyaya "for all purposes," Min. Order (Dec. 21, 2022). Hoping to have a more receptive audience before the Magistrate Judge, Kastner promptly renewed his twice-denied motion for reconsideration and requested that Judge Upadhyaya lift the conditions of his pretrial release prohibiting him and his wife from possessing firearms, once again arguing that he "is a nonviolent defendant facing mere victimless *misdemeanor* charges" insufficient to trump their "rights to keep and bear arms under the Second Amendment." Dkt. 88 at 1 (emphasis in original). He argued that under the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the pretrial condition preventing Kastner from possessing firearms is unconstitutional on its face. Dkt. 88 at 7. The government opposed, arguing that Kastner failed to meet the standard for a motion to reconsider and that a temporary firearms restriction is "proper and justified." Dkt. 95 at 15.

Magistrate Judge Upadhyaya denied Kastner's motion. *See* Dkt. 97. She first construed Kastner's motion "as yet another motion to reconsider" and explained that Kastner was therefore required to show either an intervening change in controlling law, new evidence, or a need to correct clear error or prevent manifest injustice. *Id.* at 3-4 (citing *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)). She then found that "Kastner present[ed] no new evidence or a change in factual circumstances to warrant reconsideration of the Court's previous decisions setting conditions of release." *Id.* at 4. Although Kastner relied on the Supreme Court's decision in *Bruen* and the Western District of Texas's decision in *United States v. Quiroz*, No. 22-CR-00104, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022), Judge Upadhyaya noted that *Bruen* did not "address the constitutionality of restricting a person's right to possess a firearm after being charged with a federal crime as a condition of pretrial release" and did not "disturb[] the Bail Reform Act, which expressly authorizes a court in certain circumstances to, among other things, restrict a defendant's possession of a firearm." *Id.* at 5 (citing 18 U.S.C. § 3142(c)(B)(viii)). And as to *Quiroz*, she held that the out-of-circuit district court case is both non-binding and, in any event, inapt. *Id.* at 6. The Court also notes that Kastner seeks to possess a firearm *in his home* and that the relevant Second Amendment jurisprudence, accordingly, dates back to 2008, when the Supreme Court decided *Heller v. District of Columbia*, 554 U.S. 570 (2008).) Finally, Judge Upadhyaya pointed to "the extensive record, including the two written District Court opinions on Kastner's motions to modify this condition," which demonstrate "specific reasons warranting the restriction, not least of which is the fact that Kastner was found to have been in violation of the very condition he seeks to remove." *Id.* at 7. She therefore denied Kastner's motion. *Id.*

Judge Upadhyaya filed her Order on March 16, 2023. *See* Dkt. 97. Seventeen days later, on April 2, 2023, Kastner appealed that Order to this Court pursuant to 28 U.S.C. § 636(b)(1)(A). *See* Dkt. 100 at 1. In that two-page filing, Kastner again cited *Bruen* and *Quiroz* for the proposition that "a fundamental change in the law" supports his request. *Id.* at 2. On April 3, the Court ordered the government to respond to the appeal and ordered both parties to address the appealability of Magistrate Judge Upadhyaya's Order by April 10. *See* Min. Orders (Apr. 3, 2023). The government timely responded, arguing that (1) the Court should deny Kastner's appeal for failure to timely file; and (2) if the Court reaches the merits, it should reject the appeal on the ground that Kastner has, yet again, failed to meet the standard for reconsideration. *See* Dkt. 101.

On April 10, 2023, Kastner moved for enlargement of time to submit his response to this Court's order. *See* Dkt. 102. In particular, Kastner requested a seven-day extension of time "due to multiple staff members [at his lawyer's firm] being affected by the flu or COVID-19" and because "a virus was found in the firm's servers which led to multiple computers losing valuable information and dying in the same week." *Id.* at 1. Later that same day, however, Kastner filed his response to the Court's order. *See* Dkt. 103. The Court accordingly denied Kastner's motion for enlargement of time to respond to the Court's order as moot. *See* Min. Order (Apr. 11, 2023).

Then, on April 12, 2023, the Court ordered Kastner to respond to the government's filing, including the government's contentions that Kastner's appeal was untimely and that the Magistrate Judge's Order, in any event, should be affirmed on the merits. Min. Order (Apr. 12, 2023). In response, Kastner pressed several arguments, including that (1) there is good cause for his failure to file his appeal in a timely manner; (2) he is seeking to vindicate both his Second

7

Amendment rights as well as his wife's (despite the fact that she consented to the condition at the hearing before this Court); (3) he is advocating for an extension or overturning of existing precedent; (4) his argument was triggered by new precedents; (5) he is relying on those new cases, which include *Bruen* and *Quiroz*; (6) he was compliant with directions from the Capitol Police on January 6; and (7) he is not required to provide a reason for needing a firearm. *See* Dkt. 106.

In sum, this is the sixth time that one of three judicial officers in this courthouse has been asked to address Kastner's pretrial release condition restricting his ability to possess a firearm while on pretrial release.

## II. ANALYSIS

In opposing Kastner's appeal, the government argues both that the appeal is untimely and that it fails on the merits. Dkt. 101. Although the Court's prior decisions on this issue are consistent with the government's position on the merits, the Court need reach only the first issue: Kastner's appeal of the Magistrate Judge's Order is untimely.

### A.

Kastner has elected to be tried by a magistrate judge pursuant to 18 U.S.C. § 3401(a), which provides that, "[w]hen specially designated to exercise such jurisdiction by the district court or courts he serves, any United States magistrate judge shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district." Federal Rule of Criminal Procedure 58(a)(1) "appl[ies] in petty offense and other misdemeanor cases and on appeal to a district judge in a case tried by a magistrate." Local Criminal Rule 58, moreover, confirms that "[a] magistrate judge may conduct trials (with or without a jury), accept pleas, impose sentence, and otherwise exercise jurisdiction in cases of

8

misdemeanor offenses in accordance with 18 U.S.C. § 3401 and Rule 58, Federal Rules of Criminal Procedure."

When a defendant elects to proceed before a magistrate, he has the right to appeal certain orders to the district court. Rule 58(g)(2)(A) governs "[i]nterlocutory [a]ppeal[s]" from a magistrate judge to a district judge. Under that provision, "[e]ither party may appeal an order of a magistrate judge to a district judge within 14 days of its entry if a district judge's order could similarly be appealed." To initiate such an appeal, the appealing party "must file a notice with the clerk specifying the order being appealed and must serve a copy on the adverse party." Fed. R. Crim. P. 58(g)(2)(A). Local Criminal Rule 58(e) confirms that an "[a]ppeal from a magistrate judge's order or judgment under this Rule is governed by Federal Rule of Criminal Procedure 58(g)."

Here, all agree that Kastner did not appeal of Magistrate Judge Upadhyaya's Order within fourteen days and that, unless the Court retroactively extends his time appeal, the appeal is untimely. Federal Rule of Criminal Procedure 45(1) sets forth the rules for computing time:

When the period is stated in days or a longer unit of time:

> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Magistrate Judge Upadhyaya issued her order denying Kastner's motion for reconsideration on March 16, 2023. *See* Dkt. 97. Kastner's appeal was thus due fourteen days later, on Thursday, March 30, 2023, but he did not file his appeal until Sunday, April 2, 2023—three days late. *See* Dkt. 100. Kastner's appeal is therefore untimely.

9

II.

Kastner does not dispute that his appeal is untimely (although he miscalculates the deadline as Friday, March 31, 2023, *see* Dkt. 106 at 2). Instead, he makes two arguments, neither of which is availing. He first argues that he filed a motion for an extension of time; second, he argues that, in any event, he is now entitled to retroactive extension of time to file due to "excusable neglect and/or good cause." *Id.* at 2-3.

Kastner's first argument misstates the record. He claims that "Defendant by counsel filed a motion for an extension of time on April 3, 2023, asking for an extension of 7 days which would make the new deadline April 10, 2023." *Id.* at 2. As the docket reflects, Kastner's counsel, in fact, did not file a motion for extension of time to appeal on April 3. The only docket entries on that day reflect three minutes orders by the Court; none of those entries—or any other entry on the docket—shows that Kastner sought an extension of time to appeal. To be sure, on April 10, Kastner filed a motion for enlargement of time (dated April 9, 2023), requesting a seven-day extension "for the deadline to submit filings addressing whether Magistrate Judge Upadhyaya's Order, Dkt. [97], is appealable to this Court under 28 U.S.C. § 636 or any other authority." Dkt. 102 at 1. But that request sought additional time to respond to this Court's order directing the parties to address whether the appeal was proper; it did not seek an extension of time to file the appeal itself.

Kastner next argues that "there is good cause for the untimely appeal." Dkt. 106 at 2. Under Federal Rule of Criminal Procedure 45(b)(1):

> When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
>
>> (A) before the originally prescribed or previously extended time expires; or

>   (B) after the time expires if the party failed to act because of excusable neglect.

Because Kastner requested an extension of time after the deadline to file his appeal expired, he must show both good cause and excusable neglect. *Id.* He has failed to carry that burden.

Kastner argues that "there is good cause for the untimely appeal based on a trojan virus and malware which was sent to Defendant's counsel during discovery which disabled staff member's laptops and resulted in significant delays to file the appeal." Dkt. 106 at 2. In his motion for extension of time regarding the April 10 deadline to respond to the Court's order, Kastner similarly claimed that "a virus was found in the firm's servers which led to multiple computers losing valuable information and dying in the same week." Dkt. 102 at 1.

Defense counsel offers no details regarding how, if at all, the presence of the computer virus prevented him from filing his appeal in a timely manner—or at least seeking an extension of time before the deadline passed. He does not indicate, for example, when the virus was discovered, whether the firm had access to uncompromised computers during the relevant time, or when the problem was resolved. It appears, moreover, that Kastner's counsel filed documents in other cases in the days immediately before and after the appeal deadline in this case, which suggests that, at minimum, counsel had access to a working computer. *See, e.g.*, Defendant Kenneth Joseph Owen Thomas's Red-Lined Proposed Jury Instructions, *United States v. Thomas*, No. 21-cr-552 (D.D.C. Mar. 31, 2023), ECF No. 84; Declaration of Roger I. Roots, *United States v. Alberts*, No. 21-cr-26 (D.D.C. Mar. 29, 2023), ECF No. 114; Motion for Bill of Particulars, *United States v. Westbury*, No. 21-cr-605 (D.D.C. Mar. 29, 2023), ECF No. 83.

In the absence of any detail regarding the computer difficulty Kastner's counsel invokes, the Court can only assume that it is the same difficulty that Kastner's counsel reported in *United States v. Slaughter*, No. 22-cr-354, Dkt. 39 (Notice that the United States Has Attempted to Plant

11

Trojan Malware on Defense Computers to Gain Remote Access) (Mar. 28, 2023). If that assumption is correct, then—according to Kastner's own law firm—the problem was first discovered on March 20, 2023, ten days before the appeal deadline in this case, when the firm's "Client Advocate" opened an email, "[i]mmediately" after which her "computer froze." No. 22-cr-354, Dkt. 43-2 at 1 (Lambert Decl. ¶ 6). Even more to the point, the law firm represented to the Court that on March 28—two days before the time to appeal elapsed in this case—the computer virus was removed from the Client Advocate's computer, and she "regained full use of [her] laptop shortly thereafter." *Id.* at 3 (Lambert Decl. ¶¶ 11-14). It is, of course, possible that the problem continued—although the law firm made no mention of any such problem in its May 2, 2023 filing in the *Slaughter* case—and it is also possible that the firm was very unlucky, and it was hit by two viruses at the same time. But it is the movant's burden to establish excusable neglect, *see* Fed. R. Crim. P. 45(b)(1), and Kastner's sparse filing fails to meet that demanding burden. Tellingly, Kastner's counsel does not even assert that *his* own computer (or the computer of *any* lawyer in the firm) was affected; he merely says that a "staff member's laptops"—presumably the Client Advocate's computers—were infected with a virus. Dkt. 106 at 3. More is needed to justify a failure to file a timely appeal.

Finally, Kastner asks for greater lenience than in a typical case because he is seeking to vindicate a constitutional right. *See* Dkt. 100. But that argument rings hollow here, where this opinion marks the sixth time that a judicial officer has addressed his pretrial release firearms condition; where he has knowingly violated the Court's orders relating to that restriction (leaving the Court skeptical that Kastner will abide by the terms of a narrowed firearms restriction, such as one allowing his wife to keep firearms in the house under lock and key); where the Court has repeatedly found that good reasons exist to impose the restriction on the specific facts of this

case; and where, in any event, Kastner's trial date is just several weeks away.  The Court notes, moreover, that most conditions on pretrial release restrict the defendant's liberty in some respect and therefore implicate constitutional rights.  But that fact alone does not relieve counsel of the obligation to comply with the Federal Rules of Criminal Procedure.  The Court is therefore unmoved by any argument that counsel's failure timely to file should be excused because of the magnitude of the right at issue.

### III.  CONCLUSION

For the reasons explained above, Defendant's "Appeal of his Second Amendment Restrictions," Dkt. 100, is hereby **DISMISSED** as untimely.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 28, 2023