UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-CR-725 (MAU) |
| : | |
| JARED SAMUEL KASTNER, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION *IN LIMINE*
TO LIMIT UNNECESSARY DISCUSSION OF SECURITY-RELATED TOPICS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, respectfully submits this motion *in limine* to Limit Unnecessary Discussion of Security-Related Topics. The United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

Certain topics that could arise at trial—namely the exact locations of United States Capitol Police CCTV cameras and the protocols of the U.S. Secret Service (USSS)—have little to no probative value but would compromise significant security interests if needlessly disclosed to the public. The United States does not intend to elicit testimony on any of these topics (as further described infra) in its case-in-chief and, therefore, cross-examination on them would be beyond the scope of direct examination and impermissible. Fed. R. Evid. 611(b). To the extent Defendant seeks to argue that any of these topics are relevant and within the scope of the direct examination, the United States requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States*, 282

U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615–16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See, e.g., United States v. Balistreri*, 779 F.2d 1191, 1216–17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), overruled on other grounds, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663–64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense

in its case-in-chief). Preventing Defendant from exploring the topics above will not infringe on his Confrontation Clause rights because they are irrelevant to elements at issue, provide no basis for impeachment of a Secret Service witness, and do not implicate an affirmative defense.

**A. Exact Locations of USCP Cameras**

The United States seeks an order limiting the defense from probing, during cross-examination, the exact locations of U.S. Capitol Police surveillance cameras or from using maps, which show each camera's physical location, as an exhibit at trial. The United States produced such information to Defendant in discovery pursuant to the Highly Sensitive designation of the Protective Order, ECF 18. Defendant has been able to make use of such information to identify evidence and prepare for trial; however, none of the information will be relevant to any fact of consequence before the jury.

This lack of relevance must be balanced against the national security implications at stake here. The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress, and therefore, national security. Furthermore, the United States represents that the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the U.S. Capitol Police Board before they may be released.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded considering the ongoing security needs of Congress. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all U.S. Capitol

Police cameras would risk compromising these security concerns for no additional probative value since Defendant did not enter the U.S. Capitol building.

Here, the video footage itself reveals the general location and angle of the camera's positioning. Additional details as to the precise location of the cameras are not relevant to the jury's fact-finding mission. Even assuming the evidence that the United States seeks to exclude is marginally relevant, such relevance is substantially outweighed by the danger to national security. The Supreme Court has recognized that trial courts' balancing should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Accordingly, courts have properly balanced the sensitivity of national security-related information against the probative value of such information to the case, excluding the evidence where its relevance is slight. *See, e.g., United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act). If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the public and foreign adversaries. Immediately, anyone could learn about the U.S. Capitol Police's camera coverage as of January 6, 2021, and, importantly, could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

### B. United States Secret Service Protocols

Defendant is charged with violating 18 U.S.C. § 1752(a)(1) for entering and remaining in a restricted building or ground, and § 1752(a)(2) for engaging in disorderly and disruptive conduct

in a restricted building or grounds.[1]  To meet its burden of proof at trial, the United States will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol.  The witness will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.  The purpose of this testimony will be to explain, in part, the bases for enhanced security controls at the Capitol on January 6 as well as to establish an element of the offenses charged at Counts One and Two, namely, that the Capitol and its grounds were a "restricted area" as that term is used in 18 U.S.C. § 1752 on January 6, 2021.

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security.  Thus, the United States seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct examination, namely, protecting the Vice President and his family.  The United States further requests that such order preclude cross examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021. Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

---

[1] Kastner is also charged with violating 40 U.S.C. § 5104(a)(2)(D) for disorderly conduct in a United States Capitol building as well as with violating 40 U.S.C. § 5104(e)(2)(G) for parading, demonstrating, and picketing in a United States Capitol building. ECF 24.

These topics have no relevance to any contested issue, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the United States's legitimate interest in the safety of senior government officials.  *See* Fed. R. Evid. 403.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial.  Specifically, the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable.  *See* Fed. R. Evid. 401.  Similarly, evidence of the nature of Secret Service protective details is not relevant in this case.  The disorder on January 6 interfered with the Secret Service's duties to protectees in this case insofar as they were required to evade the mob.  The number or type of assigned agents on a protective detail is not relevant and could not alter the probability that there was interference with the Secret Service.  None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, undue delay, and waste of time.  Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.[2]

---

[2] If the defense believes that it is necessary to present evidence or cross-examine witnesses about the exact locations of USCP cameras or USSS procedures, the United States requests that the Court conduct a hearing in camera to resolve the issue.  Courts have found that in camera proceedings are appropriate in circumstances where security concerns like these are present.  *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979)("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977)(finding that in camera proceedings "serve to resolve, without disclosure, the conflict

### C. Law Enforcement Preparations

The United States anticipates calling witnesses at trial representing various law enforcement entities present at the United States Capitol on January 6, 2021, potentially including representatives from the United States Secret Service, the United States Capitol Police, and the Metropolitan Police Department. Law enforcement witnesses will testify to, inter alia, the events at the Capitol on January 6, 2021, and the effect those events had on law enforcement and the proceedings taking place within Congress that day. This testimony will be presented to show how government business and official functions were impeded and disrupted as charged in Count Two.

The United States does not anticipate asking these law enforcement witnesses on direct examination about their knowledge of or planning regarding the riot that would ultimately take place on January 6, 2021. Accordingly, the United States seeks an order limiting the cross-examination of law enforcement witnesses to preclude questions related to their knowledge of or preparations for the January 6, 2021 riot. These topics have no relevance to any contested issue, see Fed R. Evid. 401, and even if they did, any relevance would be substantially outweighed by the risk of confusing the issues. *See* Fed. R. Evid. 403.

---

between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security"); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976)(per curiam) ("This Circuit, too, has repeatedly approved the use of in camera examinations as the means for resolving the conflict between a defendant's need for evidence and the government's claim of privilege based on the needs of public security."). At any such hearing, the defendant should be required to make a specific proffer of some relevant purpose that is not substantially outweighed by the prejudice that disclosure would inflict on the United States' security interests. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (explaining that a "proffer of great specificity" was necessary to support admission of testimony that could have proper or improper purposes).

## CONCLUSION

WHEREFORE, for these reasons, the Government asks the Court to grant the Government's motion *in limine* to preclude unnecessary discussion of security topics, or, if the Court reserves ruling, to consider the above arguments when the relevant issues arise during trial.

Dated: July 5, 2023

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Cytheria D. Jernigan
CYTHERIA D. JERNIGAN
Assistant U.S. Attorney
D.C. Bar No. 494742

WILL N. WIDMAN
Trial Attorney
NC Bar No. 48158

Detailees
United States Attorney's Office
for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 353-8611
Will.Widman@usdoj.gov
Cytheria.Jernigan@usdoj.gov