UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-CR-725 (MAU) |
| : | |
| JARED SAMUEL KASTNER, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT
CERTAIN VIDEOS AND DIGITAL EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, respectfully moves this court *in limine* to admit certain videos and digital evidence. The United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

I.  **BACKGROUND**

On January 6, 2021, Congress assembled in a Joint Session at the United States Capitol to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots. The defendant was aware of this proceeding, and he wanted to stop it.

On January 4, 2021, he travelled from his home in Ohio in preparation to attend the protests in Washington, D.C. On the afternoon of January 6, the defendant went to the Capitol to participate in the riot and to attend the "Stop the Steal" rally. After the rally, Kastner walked to the Capitol building. Kastner and his associates, Luke Faulkner and Kenneth Massie, also walked to the Capitol, but the three men became separated from one another at some point. At approximately 2:00 p.m., rioters forced their way onto the restricted grounds of the U.S. Capitol. Rioters made their way up the west side of the Capitol grounds to the Senate Wing Door. There, rioters smashed

glass windows and kicked at the Senate Wing Door from the outside in an attempt to gain entry to the Capitol building. At approximately 2:13 p.m., the Capitol building was first breached by a rioter who jumped through a broken window adjacent to the Senate Wing Door. Less than one minute later, rioters who had entered through the broken windows kicked open the Senate Wing Door from the inside. Many rioters who had amassed outside the Senate Wing Door then entered the Capitol building.

Surveillance video, including the United States Capitol Police CCTV cameras, captured the defendant entering the U.S. Capitol building through the Senate Wing Door at 2:17 p.m. Surveillance footage showed Kastner as well as Luke Faulkner and Kenneth Massie as they moved through the Crypt of the U.S. Capitol. In the hallway leading to the Crypt, Kastner was reunited with Massie and Faulkner. Kastner greeted Massie with a hug. Kastner and his associates then traveled further into the Capitol building to the Crypt. At approximately 2:22 p.m., Kastner appears to have his hand on Massie's shoulder and Faulkner appears to have his hand on Kastner's shoulder, while the group moved through the Crypt. At approximately 2:25 p.m., a group of rioters in the Crypt pushed towards and through a line of police officers who were attempting to hold back the crowd.

After remaining in the Crypt for approximately ten minutes, the defendant, Faulkner, and Massie returned by the route that they had entered. At approximately 2:33 p.m., Kastner exited the Capitol building through a broken window adjacent to the Senate Wing Door.

On December 8, 2021, the FBI arrested the defendant at his home in Beavercreek, Ohio. The Defendant was interviewed by law enforcement following his arrest on December 8, 2021, and the interview was video-recorded. Kastner was charged along with co-defendant Luke Faulkner by information with four counts:

1) 18 U.S.C. § 1752(a)(1) – Entering and Remaining in Any Restricted Building or Grounds;
2) 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in Restricted Building or Grounds;
3) 40 U.S.C. § 5104(e)(2)(D) – Disorderly Conduct in a Capitol Building; and
4) 40 U.S.C. § 5104(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capitol Building.

ECF 7.

On February 9, 2022, the United States filed a superseding information charging the defendant with the same four counts but adding a second co-defendant, Kenneth Massie. ECF 24.

The case is currently scheduled for trial on August 8, 2023. The government anticipates introducing a number of video clips as evidence as well as documentary evidence. This motion relates to the authenticity, and admissibility, of video footage of some of the events that took place in and around the House and Senate Chambers on January 6, 2021.

On July 18, 2023, the United States will provide its trial exhibit list to the defendant and the Court consistent with the court's scheduling order. On this date, the United States will identify and provide copies of premarked exhibits. This will include videos, video clips, and/or photographs taken by third parties on January 6.

The United States of America hereby moves this Court, *in limine*, for a ruling that certain videos and photographic evidence derived therefrom is properly authenticated under Federal Rules of Evidence 104, 901, and 902 and is admissible. The government anticipates introducing video footage of some of the Congressional Electoral College certification proceedings up to the point when the rioters breached the Capitol Building, and after the proceedings reconvened to finish the Electoral College certification hours later. The government also intends to introduce video footage of the rioters, including the Defendant, taken by third parties who were present outside and inside of the U.S. Capitol building on January 6, 2021. Lastly, the government may also introduce video

footage from body worn cameras of law enforcement as well as surveillance video from closed circuit television ("CCTV") cameras operated by the United States Capitol Police.

## II.  ARGUMENT

### A. Legal Framework

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982). To satisfy this requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) provides a non-exhaustive list of examples of methods for showing authenticity. Those include, as relevant here:

> (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
> . . . .
> (3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> . . . .
> (7) Evidence About Public Records. Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept.
> . . . .
> (9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b).

In making the showing necessary for admissibility, "the proponent's 'burden of proof'" is "slight," and the "ultimate resolution of the evidence's authenticity is reserved for the jury." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)); *United States v. Safavian*, 435 F. Supp. 2d 36, 38

(D.D.C. 2006). To make the requisite prima facie showing, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). Such evidence need not "rule out all possibilities inconsistent with authenticity, [nor] prove beyond any doubt that the evidence is what it purports to be." *Hassanshahi*, 195 F. Supp. 3d at 48 *(*quoting *United States v. Pluta,* 176 F.3d 43, 49 (2d Cir. 1999)). Rather, the party offering the evidence need only "demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)).

In a previous trial arising from the Capitol Riot, in which another defendant contested the authenticity of video evidence proffered by the United States, the Honorable Rudolph Contreras described the authenticity threshold for the fact-finder to consider the proffered evidence as follows:

> The question here is, therefore, whether the government's showing regarding the open-source videos could permit a reasonable fact-finder to find that they are, in fact, what the government claims.

*See* Ex. A, *United States v. Kyle Fitzsimons,* Trial Tr. 09/27/22 ("Fitzsimons Verdict"), at 4.

### B.   Overlapping Bases for Authentication of Visual and Digital Exhibits

As introduced herein, there are multiple, overlapping bases that the United States intends to use for the authentication of photographs and videos at trial. The United States offers this nonexclusive list of bases for authentication should the defendant object to the authenticity of the proposed multimedia exhibits.

#### 1. Authentication by a Witness with Knowledge

To begin, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or

video. *See* Fed. R. Evid. 901(b)(1). Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted. *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003). Any individual that observed the events depicted in the photograph or video can testify that the photograph or video appears to fairly and accurately show the events that took place. *See* FRE 901(b)(1); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event if they can (1) identify the location(s) depicted in the video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location. *See, e.g.*, *Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (alteration in original) (quoting *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.))); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."). On this authority, the United States could authenticate riot footage through, for example, the testimony of an experienced U.S. Capitol Police officer who is familiar with all areas of the Capitol and who knows that the events of January 6 are unique in modern history. *Cf. Safavian*, 435 F. Supp. 2d at 40–42 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141, 145–46 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions). Again,

this is a low bar that requires only a prima facie showing that the evidence is what the United States purports it to be—namely, photographs and videos of the Capitol siege in progress.

### 2. Authentication by Comparison

Similarly and alternatively, in instances where precision of time and place is relevant but cannot be established by a witness with knowledge or by the media's metadata, the United States will authenticate exhibits by reference to other, already-authenticated exhibits depicting the same time and place. This method of "[a]uthentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021); *see also United States v. Hoyt*, 946 F.2d 127, at *1 (D.C. Cir. 1991) (unpublished) (noting that Fed. R. Evid. 901(b)(3) permits authentication by comparison); *Stearns*, 550 F.2d at 1171 (finding that first picture "authenticates the other four pictures as to time"); *Safavian*, 435 F. Supp. 2d at 40 (allowing authentication of emails by means of comparison with other "e-mails that already have been independently authenticated"). Judge Contreras, in the *Fitzsimons* trial, held that the United States had adequately authenticated eight videos by showing that they were consistent with other videos, including body worn camera video and closed-circuit video, which had been introduced into evidence through other means. Fitzsimons Verdict at 5-6; *compare* Fitzsimons Verdict at 7 (excluding proffered public source video that lacked corroborating authenticated evidence and only briefly showed the defendant from the back).

### 3. Authentication Based on a Process or System that Produces an Accurate Result

Certain multimedia, such as security cameras (CCTV) operated by the U.S. Capitol Police (USCP) and body-worn cameras (BWC) worn by officers of the Metropolitan Police Department (MPD) can be authenticated by "describing a process or system and showing that it produces an accurate result," Fed. R. Evid 901(b)(9). *See United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir.

1993) ("Tapes may be authenticated by testimony describing the process or system that created the tape."); *United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (unpublished) (finding "sufficient evidence of authentication" of a prison's closed circuit video where "a Government witness explained the manner in which the prison's closed circuit video system operates, the means by which he obtained the video, and that he downloaded it onto the DVD that was played for the jury.").

The Government will pursue stipulations with defense counsel related to the authenticity of USCP CCTV and MPD BWC. These stipulations have been entered into frequently in the dozens of trials arising from the Capitol Riot. If necessary, however, USCP and MPD witnesses are available to testify to the reliability of the systems employed by USCP and MPD, respectively, to create and maintain these videos.

### 4. Authentication Based on Status as an "Official Publication"

Certain evidence in this case, such as video taken by the Senate Recording Studio, is also "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902.[1] This is so because it qualifies as an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). Official materials published on government websites fall into this category and are self-authenticating under Rule 902. *See Williams v. Long*, 585 F. Supp. 2d 679, 685–90 (D. Md. 2008); *cf. MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503–04 (S.D.N.Y. 2017) (Congressional transcripts); *Singletary v. Howard Univ.*, No. 1:17-cv-01198,

---

[1] Further underscoring the multiple paths to authentication, the Senate Recording Studio footage may also be authenticated through any of the mechanisms outlined in this motion, including Fed. R. Evid. 901(b)(1), (3), (4), (9).

2018 WL 4623569, at *4 n.1 (D.D.C., Sept. 26, 2018) (government-issued guidebook), *rev'd on other grounds*, 939 F.3d 287.[2]

The United States Senate uses the Senate Recording Studio to contemporaneously record Senate proceedings and distribute those recordings to the public. *See* https://www.senate.gov/–floor/, last accessed Dec. 15, 2022 (publicly available archived recordings of Senate Recording Studio). The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021, up to the point when the rioters breached the building and forced the proceedings into recess. *See id.*, January 6, 2021. Subsequently, the Senate Recording Studio recorded the Electoral College Certification proceedings after the rioters were cleared from the Capitol Building and the session resumed. *Id.* During the interim, the Senate Recording Studio captured footage of rioters who were present on the Senate floor during the recess.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the requested relief or, if the Court reserves ruling, to consider the above arguments when the relevant issues arise during trial.

Date: July 5, 2023

                                            Respectfully submitted,

                                            MATTHEW M. GRAVES
                                            United States Attorney
                                            D.C. Bar No. 481052

By:       */s/ Cytheria D. Jernigan*
              CYTHERIA D. JERNIGAN
              Assistant U.S. Attorney
              D.C. Bar No. 494742

---

[2] Similar to other videos, these exhibits can also be authenticated by any person with direct knowledge of the scene depicted or with sufficient circumstantial knowledge, *see* Fed. R. Evid. 901(b)(1), or through metadata or comparison, *see* Fed. R. Evid. 901(b)(4).

WILL N. WIDMAN
Trial Attorney
NC Bar No. 48158

Detailees
United States Attorney's Office
for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 353-8611
Will.Widman@usdoj.gov
Cytheria.Jernigan@usdoj.gov