UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Complainant | : | |
| | : | |
| v. | : | Case No. 21-CR-725 (RDM) |
| | : | |
| JARED SAMUEL KASTNER, | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

### DEFENDANT JARED KASTNER' OMNIBUS MOTION IN LIMINE
### AND INCLUDED MEMORANDUM OF LAW

Defendant JARED SAMUEL KASTNER ("Kastner"), through the undersigned counsel, John L. Pierce, Esq. presents this Motion and Memorandum of Law and hereby moves the Court to exclude from the proceedings at trial any testimony, derivative evidence, references to or argument upon the following matters.

Of course, most if not all of the Rules of Evidence can be waived if no one objects. Therefore, Defendant Kastner is careful to object, early, often, and clearly by objecting in advance. There should be no misunderstanding in the crush, rush, and busy-ness of trial that Defendant Kastner does not waive these rules of evidence or objections.

**I.   INTRODUCTION AND OVERVIEW**

In this Omnibus Motion, Kastner moves the Court to order each of the following separate orders in limine:

## II.  GOVERNING LAW

### A.  <u>Federal Rules of Evidence Rule 403:  Prejudicial or Confusing to Jury</u>

While the Federal Rules of Evidence are a seemingly self-contained set of rules, it is not often remarked that they exist of course within the context of the constitutional mandate to provide litigants and especially criminal Defendant with a fair trial consistent with constitutional due process.  Here, the risk of confusing and misleading by ambiguity or lack of clarity the jury could deny due process.  The constitutional due process right to a fair trial is also in the mix.

Federal Rules of Evidence, Rule 403, provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

> **NOTES OF ADVISORY COMMITTEE ON PROPOSED RULES** [1]
>
> The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance. These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12–15 (1956); Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319–321. The rules which follow in this Article are concrete applications evolved for particular situations. However, they reflect the policies underlying the present rule, which is designed as a guide for the handling of situations for which no specific rules have been formulated.
>
> Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.
>
> The rule does not enumerate surprise as a ground for exclusion, in this respect following Wigmore's view of the common law. 6 Wigmore §1849. Cf. McCormick §152, p. 320, n. 29, listing unfair surprise as a ground for exclusion but stating that it is usually "coupled with the danger of prejudice and

---

[1] Legal Information Institute, Cornell Law School, https://www.law.cornell.edu/rules/fre/rule_403

confusion of issues." While Uniform Rule 45 incorporates surprise as a ground and is followed in Kansas Code of Civil Procedure §60–445, surprise is not included in California Evidence Code §352 or New Jersey Rule 4, though both the latter otherwise substantially embody Uniform Rule 45. While it can scarcely be doubted that claims of unfair surprise may still be justified despite procedural requirements of notice and instrumentalities of discovery, the granting of a continuance is a more appropriate remedy than exclusion of the evidence. Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. VI. Extrinsic Policies Affecting Admissibility), Cal. Law Revision Comm'n, Rep., Rec. & Studies, 612 (1964). Moreover, the impact of a rule excluding evidence on the ground of surprise would be difficult to estimate.

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. See Rule 106 [now 105] and Advisory Committee's Note thereunder. The availability of other means of proof may also be an appropriate factor.

### B. **FRE Rule 106:  Doctrine of Completeness**

Rule 106. Remainder of or Related Writings or Recorded Statements, provides:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered ***at the same time.***

*(Emphasis added.)*  According to the Legal Information Institute of Cornell Law School's legal encyclopedia "WEX", [2]

> …. This additional evidence is called explanatory evidence, and its purpose is to qualify, explain or put in context the original piece of introduced evidence.

Note that it is inadequate for the rest of the written document, conversation, or video to be produced ***at some later time.***  The rest of the contents must be produced ***at the same time.***

Note that Rule 106 does not appear to call for discretion or decision by the trial judge.

Nor does the FRE relegate the complete document or video to the back of the bus, as a second

---

[2] https://www.law.cornell.edu/wex/doctrine_of_completeness#:~:text=Doctrine%20of%20Completeness.%20Under%20Rule%20106%20of%20the,with%20the%20writing%20or%20recorded%20statement%20originally%20introduced.

class matter raised only in the defense's case in defense after the jury has already prematurely made up its mind.

On the other hand, Rule 106 does require the objecting defendant to point the Court and the prosecution in the direction of what else should be included.  The Rule does not leave the prosecution or the Court in the dark to guess about what might need to be included.  But once the Defendant has invoked Rule 106 and demanded that other parts of the document or video be also shown to the jury, there is no decision or discretion left.  It shall be done.  And it shall be done contemporaneously, not relegating the rest of the document or video to later in the trial.  No part of the document or video is admissible unless all of it that is necessary to show the true, entire, accurate picture is shown to the jury as well.

The explanatory writing does not have to be part of same writing or recording. Additionally, even otherwise inadmissible evidence, such as hearsay, can be admissible under this rule if it is necessary to correct any confusion or wrongful impression created by the admission of the original evidence.

### C. Federal Rules of Evidence Rule 602 – Personal Knowledge
### FRE Rule 602 requires that:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

### D. Guilt Must be Proven Beyond a Reasonable Doubt

The law presumes the defendant to be innocent of the crime. Thus the defendant, although accused, begins the trial with a "clean slate"----with no evidence against him/her.  An accused is for all purposes at all times presumed innocent until proven guilty beyond a reasonable doubt.

*See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978). The Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not be shifted to the defendant. See *id.;* see also *Patterson v. New York*, 432 U.S. 197, 215 (1977).

Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, *"some* evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) (emphasis added).

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969) or indulge in a lawless verdict. The prosecution must state all elements of the crime with specificity and then prove beyond a reasonable doubt each element of every crime charged.

"No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital." *United States v. Hess*, 124 U.S. 483, 486 (1888). (Emphasis added).

### E. **The U.S. Capitol and Capitol Grounds are Presumptively Open to the Public and Government Must Actually Prove that a Temporary Restriction has been Properly Declared, not Offer Speculation**

The Government must actually prove that Defendant *knowingly* entered a temporarily restricted area. As Federal courts in this District have reasoned in reaching legal conclusions:

> **The Capitol Grounds** (excluding such places as the Senate and House floors, committee rooms, etc.) **have traditionally been open to the public**; indeed, thousands of people visit them each year. Thus, we cannot agree with the Defendant that the Capitol Grounds have ever been characterized by the serenity and quiet of a hospital or library.

*Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) *(emphases added)*.

> The courts in this jurisdiction have long recognized that **"[t]he United States Capitol is a unique situs for demonstration activity"** and **"is a place traditionally open to the public and thousands visit each year to which access cannot be denied broadly or absolutely,** [a fact which must be weighed] against the government's interest in protecting against possible `damage to buildings and grounds, obstruction of passageways, and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F. Supp. 1282, 1289, 1290 (D.D.C.1983) (*quoting Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C.), *aff'd mem.,* 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)).

*Wheelock v. United States* 552 A.2d 503, 506 (D.C. 1988) *(emphases added)*.

Thus, the Government must not only provide notice of a temporary restriction but must provide such notice in a legally effective way. To prosecute anyone under 18 U.S.C. 1752(a), the Government must prove that the Defendant acted "knowingly."

Thus, where the U.S. Capitol Police Board attempted – but unfortunately fell short – to provide notice, the transformation of a place normally open to the public into a restricted grounds or building has failed to take place, legally.

The leadership at the U.S. Capitol Police Board decided to use only flimsy paper signs saying "AREA CLOSED by Order of U.S. Capitol Police Board," approximately 11 inches by

14 inches, laminated by a thin layer of plastic[3] zip-tied to movable bike racks that were knocked over, hiding the signs.  Even if it was the desire or plan to restrict a building or grounds, if the USCP Board failed to do so effectively, the area was never restricted.  The Government must prove that <u>at the time a particular Defendant approached the Capitol</u> there was adequate legal notice of a temporary restriction under 18 U.S.C. 1752(a).  Of course, the common meaning of "restricted" means "available with limitations."  It does not mean "prohibited."

Also, the USCP issued 6 permits for demonstrations to be held on the Capitol grounds that day.  Therefore, anyone wishing to attend one or more of the six (6) demonstrations that the USCP issued permits for, walking to or from or among the demonstrations was an invitee by authority of USCP and had official authorization from USCP to be on U.S. Capitol grounds.

Similarly, the Government claims that the Capitol had been closed due to the COVID epidemic.  However, that would not qualify as a violation of 18 U.S.C. 1752, which is limited to a restriction because of the presence of a Secret Service protectee.

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the D.C. Circuit Court examined an indictment that alleged that the Defendant had

> "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform Defendant of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable Defendant to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the Defendant which constituted the crowding obstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw.

---

[3] At least one photo shows such a sign on a bike rack ripped in two.  Another shows another sign, equally flimsy, folded in two.  These signs also were nearly identical to demonstrators "Stop the Steal" signs and therefore entirely ineffective.

As stated by the Hunter Court:

> [i]t is elementary that an information or indictment must set out the *facts* constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the *exact* crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added) (internal quotation marks and citation omitted).*

The *Hunter* Court also observed that the Defendant in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law." *Id.* at 410.

### III.  MOTIONS IN LIMINE

#### A.  MOTION TO EXCLUDE HEARSAY "CASE AGENT" TESTIMONY

In every trial relating to January 6 so far, the prosecution has relied very heavily on the testimony of "case agents" from the FBI, which are becoming well-defined as a lead FBI agent who has no first-hand knowledge of anything but merely reads the case file into the record before the jury.  Rule 602 requires personal knowledge.  The "case agents" typically have none.  Not only does their testimony violate Rule 602 but as expected the "case agents" frequently explain on cross-examination that they don't know anything about what the Defendants' counsel want to cross-examine them about.  Thus, the use of "case agents" prevents cross-examination in violation of the Sixth Amendment right to confront one's accusers.

### B. TESTIMONY OF WITNESSES LACKING PERSONAL KNOWLEDGE

As noted, Federal Rules of Evidence Rule 602 requires that:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

The Government in January 6 related trials so far has substantially relied upon witnesses testifying to matters about which the witness has no personal knowledge.

This leads to (1) imprecise and vague testimony, (2) testimony that may confuse or mislead the jury, (3) testimony that my feed into the preconceived notions and assumptions of the jury, and (4) depriving the Defendant of the right to effectively cross-examine the witness' testimony.  This in fact violates the Defendant's right under the Sixth Amendment to confront his accusers, because a witness without personal knowledge is not the real complaining party.

### C. MOTION TO EXCLUDE FRAGMENTS OF INCOMPLETE CONVERSATIONS

Under the "Doctrine of Completeness," the Court must order that the prosecution may not introduce testimony about, refer to, or argue from incomplete fragments of conservations, recordings, or documents taken out of context.  That is, the prosecution must produce the entire conversation or document or refrain from referring to a portion of it.

The Government has persistently shown juries in cases relating to events of January 6, 2021, video fragments and conversation fragments that give an impression drastically at odds with what is shown by the same video(s) of the same events and scenes when viewed as a whole.

Similarly, conversations are being altered by taking only portions of a conversation without the opportunity to see the entire flow of the conversation. Are the speakers joking (even if the jokes seem dark, unfunny, and in poor taste to others)?

Human beings use language in the real world in complex and highly nuanced ways.[4] People say A to say not A, for example "Oh, sure, I conquered China" to mock the absurdity of the idea. People may say "I conquered France" meaning a whirl-wind vacation.[5] People use words and phrases in figurative or metaphorical ways more often than in literally true ways. For example, news of a comet swinging near the Earth could prompt the reply "Well, we're all going to die now, I'm going to go off my diet." By no means does that mean that anyone is actually going to die because a comet passes within 4 million miles of the Earth. It's sarcasm.

Nor is such manner of speech a reliable indicator of the speaker's state of mind. People speak in hyperbole and embellishment, often aimed at irony or humor.[6] A person may say "If I don't get some coffee soon, I'm going to shoot someone.[7] <u>A human must hear the entire exchange from the beginning to parse and comprehend the meaning.</u>

If we hear a mother yell "I'm going to kill that boy!" we know she is *not* going to kill anyone. Yet prosecutors here would claim that the mother was planning to kill her son.

---

[4] Antonio Reyes, Paolo Rosso, Davide Buscalde, "**From humor recognition to irony detection: The figurative language of social media**," Data & Knowledge Engineering, Volume 74, April 2012, Pages 1-12, accessible at: https://www.sciencedirect.com/science/article/pii/S0169023X12000237?via%3Dihub

[5] "Literary Techniques: Irony," Matrix Blog**:** <u>English 11-12, accessible at:</u> https://www.matrix.edu.au/literary-techniques-irony/

[6] Asst. Prof. Dr. Qassim Abbas Dhayef Al- Tufaili and Fatima Rehman Mkheef Al- Jobori, M.A. Student, Department of English, College of Education for Human Sciences, University of Babylon (Abstract), "**A Pragmatic Study of Exaggeration in British and American Novels**," <u>Journal of Education and Practice</u>, Vol.7, No.33, 2016, accessible at: https://files.eric.ed.gov/fulltext/EJ1122644.pdf

[7] Tuhin Chakrabarty, Arkady Saakyan, Debanjan Ghosh, Smaranda Muresan, "**FLUTE: Figurative Language Understanding through Textual Explanations**," Department of Computer Science, Columbia University, Educational Testing Service, <u>Proceedings of the 2022 Conference on Empirical Methods in Natural Language Processing</u>, pages 7139 - 7159 December 7-11, 2022 https://aclanthology.org/2022.emnlp-main.481.pdf

If a friend cries out to a friend who forgot to bring the keg of beer to a Superbowl party: *"You're killing me!"* [8] we know that nobody is being killed, even if the party organizer was frustrated by the forgetful helper.

To present only fragments of a conversation is to essentially fabricate false evidence that is not real.

### D.  OBSERVATIONAL STATEMENTS MADE BY DEFENDANT MADE IN THE PASSIVE VOICE

Similarly, statements phrased in the passive voice may be so ambiguous as to lack all probative value and be prejudicial and confusing to the jury.[9] These are most notably statements that January 6 Defendant expect violence to be committed *against them* (the Defendants) by ANTIFA or by the Biden Administration as the government, the very same Government now in court prosecuting them.  Statements that demonstrators be prepared for violence fails to identify by *whom* violence is feared.

To be precise, where a statement is in the passive voice on the very point on which it is offered as evidence, it becomes offering only an ambiguity in place of probative evidence.

### E.  EXCLUDE SPECULATION OR CONJECTURE

It should be basic and well known that speculation, conjecture, imagination, what ifs, and maybes do not establish a criminal case beyond a reasonable doubt.  For example, did demonstrators who entered the U.S. Capitol and wandered around taking selfies and admiring the

---

[8] *See, as to figures of speech,* Abbey L. Ventrone, Using Figurative Language in American English: Challenges and Successes of Adult English Learners, Masters Theses Graduate Research and Creative Practice, Grand Valley State University, August 9, 2017, accessible at: https://scholarworks.gvsu.edu/cgi/viewcontent.cgi?article=1851&context=theses

[9] Graduate Writing Center**, "Why Passive Voice Is a Problem,"** Naval Postgraduate School,, 1 University Circle, Monterey, CA 9394, (This is an official U.S. Navy Website), accessible at:  **https://nps.edu/web/gwc/revising-passive-voice-into-active-voice**

art, staying within the velvet ropes, cause the obstruction of an official proceeding under 18 U.S.C. 1512(c)(2)?  That is speculation.

Did Kastner being alive on January 6, 2021, cause a delay in the resumption of the Joint Session of Congress at 8:09 PM?  The Government offers nothing but conjecture.

### F.  AIDING AND ABETTING UNKNOWN PERSONS IN UNKNOWN WAYS

The Court should not permit the Government to refer to a vague approach to aiding and abetting.  The Government has demonstrated throughout many January 6 cases so far its attempt to say as little as possible but merely to induce the reader or the jury to imagine as with an ink-blot test what has not been proven or stated.

Until the Government identifies whom it claims any Defendant aided and abetted or in what way a Defendant aided and abetted them, it should not confuse the jury or prejudice the Defendant with vagueness and ambiguity.

### G.  EXCLUDE CROWD GUILT – NO "GUILTY CROWDS"

The prosecution may not try to prove that someone in a crowd of 10,000 people did something, so therefore  Jared Kastner is guilty of it.

The Government cannot convict Kastner as being among a "guilty crowd." Crowds are not guilty.  Individuals might be.  An individual cannot be guilty because guilt is "in the air" somehow.  Guilt is not contagious or spread through the air.  The actions or statements of a crowd cannot be used to substitute for a complete lack of evidence against an individual Defendant.  The Government must prove the individual guilt of an individual, particular Defendant.   The Court should exclude by limine any argument or evidence of the guilt of others, the collective guilt of a crowd, or a cloud of guilt as a mist hanging over the area.

### H.  CRIMINALIZATION OF FREE SPEECH

The criminal prosecutions related to events culminating on January 6, 2021, lie on a fault-line between the Constitution and the criminal law.  On one side of the fault line is a strong yearning by some to prosecute demonstrators and a few rioters, which is important but not constitutionally-mandated.  On the other side of the fault line are constitutional mandates of the highest order which represent the foundation of our Republic with regard to due process, the right to confront accusers in a criminal trial, to a fair trial, etc.

The Court should order that the Government shall not present anyone's political beliefs as being *per se* a crime, including whether someone believes or believed or advocated for doubts about the 2020 presidential election.

One should be very careful in categorizing in broad brush strokes categories of speech that are protected under the First Amendment and those which are inherently a part of a crime.  It would be far better and more cautious **_to argue the crime and not the speech_**.

The risk of Constitutional violations is very great and imminent.  The First Amendment to the U.S. Constitution guarantees the right of any citizen or resident to express their political beliefs, to believe whatever they believe, to believe minority viewpoints, to believe unpopular opinions, and to believe what some may view as having been factually disproven.  Kastner must be convicted, if at all, only on his actions, not his political leanings.

### I.  EXCLUDE INFLAMING AND INCITING THE JURY

In every case tried so far, the Government shows videos _in which the Defendant at the bar does not appear_ masquerading as "context" and presents testimony of events in which the Defendant did not participate or where the Defendant was not present.  The Government

knowingly, intentionally, and willfully inflames and incites to passion the jury despite the videos having no probative value whatsoever to the Defendant there at bar.

The Government should be ordered not to introduce any video recordings that do not show the Defendant or show the location of a witness to establish the witness' capacity to know what he or she is testifying to. The fact that other people unrelated and unconnected to the Defendant broke a law or behaved badly is irrelevant and prejudicial.

### J.  CORPUS DELECITI:  UNCORROBORATED STATEMENTS

*Corpus Delecti* under Federal criminal law requires that a prosecution cannot rely only on a statement or a confession without more to obtain a conviction. The *corpus delicti* – the actual facts constituting the offense – must be corroborated by evidence beyond merely the defendant's (alleged) confession alone.  Specifically, evidence must be proven sufficient to establish beyond a reasonable doubt that the crime actually occurred and the Defendant is culpable, not merely that a person has made a comment by itself.

> … we feel bound upon a subject touching so materially liberty, and in many cases life itself, and especially in the criminal law where justice requires equality of treatment in respect of trial procedure and proof, to give weight to the findings of the National Commission, and to follow in adopting a rule for this jurisdiction the rule of the great majority of the courts in the United States *that there can be no conviction of an accused in a criminal case upon an uncorroborated confession*, and the further rule, represented by what we think is the weight of authority and the better view in the Federal courts, that *such corroboration is not sufficient if it tends merely to support the confession*, without also embracing substantial evidence of the corpus delicti and the whole thereof. . . .

*Forte v. United States*, 94 F.2d 236, 240, 127 A.L.R. 1120 (D.C. Cir. 1937) *(emphases added)*.

### K.  GOVERNMENT'S ASSERTED SECRET MEANING OF TERMS WITHOUT FOUNDATION OR GOVERNMENT's INTERPRETATIONS

Much of the claimed evidence in January 6 trials so far has consisted of the Government trying to redefine or define from ambiguity what the Government wants to believe certain terms used by Defendants mean.  The Government's interpretation is not evidence and in fact, in reality, in most cases establishes reasonable doubt irrefutably.  The Government ignores its burden to prove its case beyond a reasonable doubt, not show the mere possibility that a Defendant committed each element of a crime.  The prosecution cannot merely guess that a phrase means what the prosecution wants it to mean.

### L.  RESTRICTED AREA ON CAPITOL GROUNDS

Kastner asks the Court to order by limine that the prosecution may not present evidence or testimony, argue, or make claims about a restricted area near or around the U.S. Capitol without first laying a foundation by solid evidence as to what signs, postings, or other notice was provided as to the boundaries of such restricted area ***at the point in time*** when the Defendant is alleged to have entered.

The Government has the burden of proof beyond a reasonable doubt and the burden or production as to exactly where a line between restricted and unrestricted was visible to the Defendant at the Capitol at the time in question.  The Government must actually prove that an individual Defendant knew about a temporary restriction of some unrevealed, unidentified portions of the U.S. Capitol Grounds.  The Government wishes to – but cannot – erase "knowingly" from 18 U.S.C. 1752(a).  No area of the U.S. Capitol grounds can be restricted if the public does not know where the dividing line is.  How can one knowingly enter a restricted area if they do not know if on this side of a line their presence is lawful but on that side of the line their presence is restricted.  18 U.S.C. 1752 requires a clearly identifiable line.

In the famous but much-misrepresented case of *United States v. Bursey*, 416 F.3d 301, (4th Cir., Appeal No. 04-4832, Opinion, July 25, 2005), the Appellant / accused-Defendant below argued that he could not be convicted of 18 U.S.C. 1752(a)(1) which is charged here against Defendant Kastner, and the prosecution argued that the statute did not require a demarcation lines of the restricted area.  Brett Bursey was repeatedly told, directly, verbally that the area was restricted and he had to leave, or risk arrest, Bursey – a veteran of free speech protests – sought to test the limits of 18 U.S.C. 1752(a)(1) based on clear notice of the area restricted.

On the contrary, the U.S. Court of Appeals for the Fourth Circuit, **_rejected both positions_**, and pointed out that in fact the trial court had found as a fact (which had to be accepted as part of the prevailing verdict) that Brett Bursey was in fact placed on notice of the demarcation line of the restricted area:  *(Emphases added.)*

> We need not determine whether, as Bursey contends, the Statute requires a physical demarcation of a restricted area. This is because, contrary to Bursey's assertions of fact, the boundaries of this restricted area **_were visibly marked_**. Indeed, the Magistrate Judge specifically found that the "law enforcement agents **_were stationed at the perimeters of the area_**." Verdict at 7. Stationing agents along an area's perimeter squarely falls within the plain meaning of the term "cordoned off," that is, "a line or series of troops or of military posts placed at intervals and enclosing an area to prevent passage" or "a barrier of any kind operating to close off, restrict, or control access." Webster's Third New International Dictionary 506 (1976). Pursuant thereto, the officers at the perimeters of the area were sufficient to make it a "cordoned off" and otherwise restricted area.

### M. EXCLUDE ALTERED PHOTOGRAPH

The Government has systematically attempted to rely on the following altered photograph to make it appear that the USCP defined a "restricted area."   However, this is a bird's eye photograph of the U.S. Capitol from above, to which a red line has been digitally (by computer) added artificially.   There is no actual photograph of a red line painted on the ground.  No red line was ever painted on the ground as the photograph purports to depict.

Such photograph was never posted on the U.S. Capitol Grounds or at entrances to the Grounds or around the Capitol building. Its history appears to be created purely for the purposes of litigation or prosecution.

Because it is an altered photograph, that does not represent the real-world view of the Capitol, the photograph and any similar photographs should be excluded from evidence at trial. It would be unduly prejudicial and would confuse the jury. It also cannot be authenticated.



## IV. CONCLUSION

The Court should enter the requested orders in limine.

Dated: July 5, 2023　　　　　　　　　　　RESPECTFULLY SUBMITTED,

*/s/ John M. Pierce*
John M. Pierce
JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846
Counsel for the Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that this document is being filed on this July 5, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants. From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

                                              */s/ John M. Pierce*
                                              John M. Pierce