UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case: 21-cr-725-1 (RDM) |
| | : |
| JARED SAMUEL KASTNER | : |
| | : |
| Defendant. | : |

### DEFENDANT KASTNER'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS

Defendant Kastner, by and through his attorney of record John M. Pierce, hereby replies to the government's response to Kastner's motion in limine regarding law enforcement.

United States' motion in limine seeks to preclude Kastner from "(1) arguing any entrapment by estoppel defense related to law enforcement; (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; and (3) arguing or presenting evidence of alleged inaction by law enforcement unless the defendants specifically observed or were otherwise aware of such conduct at the time he committed the offenses charged in the Information."

Once again, as in so many January 6 cases, the Justice Department is seeking to rig a trial and conceal from the jury all evidence of defendants' innocence.  The charging document in this case accuses Kastner of being in unauthorized, restricted areas.  Kastner has a right to show the jury the true setting and circumstances, which illustrate that areas visited by defendants on Jan. 6 were not staffed, posted, cordoned, barricaded or announced as restricted.  Moreover, officer acquiescence to protestor presence <u>is a valid defense</u>.

Specifically, the defendant has a right to introduce evidence and testimony, argue, and ask questions about:

1. All the facts and circumstances of the setting and situation(s) the defendants found themselves in, as well as assessments of the circumstances leading up to January 6.
2. Present sense impressions, exclamations, excited utterances, and emotions communicated to the defendants.
3. Signage, or lack of signage.
4. Flyers, posters, announcements and speeches, to the extent that such messaging impacted the events.
5. Defendants' knowledge and expectations regarding similar situations, prior protests, and prior demonstrations and marches, to the extent that this evidence informed the defendants on January 6.
6. Police presence, or lack of presence, and staffing levels generally.
7. Police communications, or lack of communications.
8. Police gestures, facial expressions and conduct throughout the period.
9. The basis for any restrictions, the process behind restrictions, and whether any restrictions were properly imposed.
10. Any barriers, or lack of barriers, and when such barriers were placed, moved or removed.
11. Who can impose restrictions, or lift restrictions, and who did so or didn't do so.

**The Constitutional Right to Present a Defense**

The Constitution guarantees a criminal defendant a meaningful opportunity to call witnesses in order to present a complete defense. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' ") (citation omitted); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). The right is grounded in the Sixth Amendment's Compulsory Process Clause and is a component of the due process of law required by the Fifth Amendment. *Heath v. United States*, 26 A.3d 266, 275 (D.C. Appeals 2011).

A defendant's Sixth Amendment right had been violated when a trial court refuses to let him cross-examine the witnesses who testified against him at his trial. *Brookhart v. Janis* 384 U.S. 1 (1966). In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Supreme Court held that in order to fulfill the procedural due process inherent in the Confrontation Clause, a criminal defendant must have the opportunity to cross-examine testimony that has been made against him. In an analogy the *Melendez-Diaz* Court made, "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

The question of law enforcement conduct and behavior on January 6 is a central issue in the case. It says a great deal about the prosecution that the government is seeking to conceal this material, relevant, admissible evidence.

In this case the defendant was in many ways typical of participants in January 6 demonstrations for fair elections. He arrived at the Capitol after many barriers and/or signs were removed, under circumstances where a reasonable person might assume there had been previous negotiations, stipulations, and/or agreements among stakeholders that protestors could legally enter the Capitol and/or grounds. The evidence of police acquiescence is entirely relevant and material to the defendants' defense. See *Richmond v. Embry*, 122 F.3d 866, 872 n. 5 (10th Cir.1997) ("[T]he Supreme Court has dictated a 'materiality,' or outcome-driven test," which focuses on whether admitting the evidence would have "create[d] reasonable doubt that did not exist without the evidence.") (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 868 (1982)). Taylor v. Illinois, 484 U.S. 400, 408 (1988). "In a close case, 'additional evidence of relatively minor importance might be sufficient to create a reasonable doubt' " and hence satisfy its test of materiality. *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir.2000) (citations omitted).

## USCP OFFICERS CAN AND DID AUTHORIZE ENTRY TO CAPITOL

On its face, 18 U.S.C. 1752 allows a police officer to authorize entry into a restricted building or grounds. The statute states in relevant part that:

> 18 U.S.C. § 1752(a)(1) *(emphases added)*.
>
> **(a)**Whoever—
> **(1)** <u>*knowingly*</u> enters or remains in any restricted building or grounds <u>**without lawful authority to do so;**</u>
>
>              * * *

[shall be punished]

* * *

It is clear error to assert that a law enforcement officer cannot [1] render lawful what would otherwise be lawful. Such an argument is untenable, when the face of the statute says otherwise. Clearly, any person may enter "a restricted building or grounds" if authorized to do so. That is the plain text of the statute, beyond dispute and unarguable.

For example, Luke Mogelson, Reporter for The New Yorker Magazine, spent considerable time inside the U.S. Capitol building, and reported his observations in widely publicized articles. See, e., g., **"A Reporter's Video from Inside the Capitol Siege,"** https://www.newyorker.com/video/watch/a-reporters-footage-from-inside-the-capitol-siege . Reporter Mogelson was not arrested for being in the U.S. Capitol, but his reporting was celebrated. He was allowed into the Capitol building.

The Government would invite us to envision that "lawful authority" to enter a restricted area under 18 U.S.C. 1752 requires some type of authority that not even the then-President of the United States could grant. Without "lawful authority" is not clarified. Any person responsible for supervising real estate has the power to invite or allow a person to enter that real estate.

Therefore, if a "sworn" (commissioned) U.S. Capitol Police officer confirms

---

[1] Defendants and counsel do not see the relevance of an estoppel argument arises from President Donald Trump's speech. First, Trump did not tell anyone to go the Capitol but remarked in effect "I know many of you are going to the Capitol" because rallies were announced in December 2020. Second, most people could not understand Trump's remarks at the Ellipse rally due to the blustering wind and malfunctioning public address speakers. See: Audio problems at: https://www.youtube.com/watch?v=MjBx58tQagU

to these Defendants that they may enter the building – whether others like that decision or not – then the Defendants entered the U.S. Capitol building with "**_lawful authority to do so._**"

Any person allowed into the U.S. Capitol building by a U.S. Capitol police officer has committed no crime.

## 18 U.S.C. 1752 IS NOT A GENERIC TRESPASSING STATUTE

Under 18 U.S.C. 1752, the exact same conduct prohibited on a Tuesday may be completely permitted on a Wednesday – in the same location.  This is not a law against trespassing.  It is a law vaguely related to a Secret Service protectee.  The same location that may involve a protectee on a Tuesday may be unrestricted the following day on a Wednesday.

Defendants are charged with **_knowingly_** entering a grounds or building restricted **_within the limited meaning_** of 18 U.S.C. 1752.[2]  The statute does not restrict presence near a crowd engaging in disorder nor require a person to depart an area where there is some chaos or misbehavior.  It does not prohibit citizens from seeing police officers or hearing alarms.  This is not an "If you see police, you must run away" statute.

For example, it is often claimed that the U.S. Capitol had been closed due to COVID.  But 18 U.S.C. 1752 does not apply to a building closed due to COVID.

---

[2]  Commonly referred to as a "restricted area" though the statute refers to buildings or "grounds."  In the absence of definition that could mean anything from the 161,000 acres of Fort Bragg to a townhouse backyard.   The fact that the statute refers to undefined "grounds" is the source of many difficulties.  For example, if the entire District of Columbia were empty the Secret Service's job would be easier.   The centrality of cross-examining any (potential) Secret Service witness on the size and scope of a validly restricted area is a necessary topic.

If the central Virginia earthquake of 2011 that damaged the spires of the National Cathedral had required the closure of the U.S. Capitol building, entering would not be a violation of 18 U.S.C. 1752.  There might be some other law that restricts entry into a building closed due to structural damage or uncertainty.  But 18 U.S.C. 1752 would not be the right statute.

In making this mistake, the Government argues in its Opposition:

> As they approached the Capitol building, the defendants walked by unmistakable signs that they were not allowed to be within that restricted area, including, but not limited to, officers carrying shields and batons and at least one officer deploying a "flashbang" device.

Setting aside ambiguity of the word "signs," the Government Opposition suggests that if a person sees officers carrying shields or batons this is the same as a legally-effective declaration of a restricted building or grounds under 18 U.S.C. 1752.  It is not.

The Government Opposition suggests that if a person sees an officer using a flashbang this is the same as a legally-effective declaration of a restricted building or grounds under 18 U.S.C. 1752.  It is not.  Witnessing the use of a flashbang is not a violation of 18 U.S.C. 1752.

Moreover, this would not identify the ***boundaries*** of a restricted area.  Unless a person knows where the boundary line is, and knows that on one side of the line they are permitted but on the other side of the line they are forbidden, no restricted area can exist.

## THEREFORE, U.S. CAPITOL POLICE INVITED DEFENDANTS

Indeed, the U.S. Capitol Police issued six (6) different permits for demonstrations to be held on the U.S. Capitol Grounds on the afternoon of January 6, 2021, simultaneous with the meeting of the Joint Session of Congress. See permits issued by Scott Grossi of the U.S. Capitol Police, hyperlinked from each item on the list below.

[Brian Lewis Demo Pemit](#)

[Jesus Lives Demo Permit](#)

[One Nation Under God Permit](#)

[Rock Ministries Demo Permit](#)

[Virginia Freedom Keepers Demo Permit](#)

[Women For a Great America Demo Permit](#)

Thus, not only were there no notices to legally effect a restriction, but the U.S. Capitol Police affirmatively ***invited*** demonstrators onto the U.S. Capitol Grounds to attend any or all of six (6) different demonstrations.

Conjecture, speculation, and guilt by association are always improper because they violate the requirement that Defendants are presumed innocent until proven guilty beyond a reasonable doubt. Inadequacies in charging documents are not relevant to that discussion in this context.

Here the very evidence that the government seeks to preclude constitutes the evidence that will likely establish a reasonable doubt regarding defendants' guilt. Defendants entered the Capitol Grounds and/or the Capitol under circumstances

where—to say the least—the legality of doing so would have been an open question for any reasonable person. Thus, "(1) arguing any entrapment by estoppel defense related to law enforcement; (2) offering evidence or argument concerning any claim that by allegedly failing to act, law enforcement made the defendants' entry into the United States Capitol building or grounds or their conduct therein lawful; or (3) arguing or presenting evidence of alleged inaction by law enforcement unless the defendants specifically observed or were otherwise aware of such conduct at the time he committed the offenses charged in the Information" must be allowed.

## CONCLUSION

For these reasons, the Court should DENY the government's motion in limine.

Date: July 10, 2023

Respectfully Submitted,
 /s/ John M. Pierce
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172

Woodland Hills, CA 91367
Tel: (213) 400-0725
Email:jpierce@johnpiercelaw.com
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that, on July 10, 2023, this motion was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

*/s/ John M. Pierce*

John M. Pierce