UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Complainant | : | |
| v. | : | Case No. 1:21-CR-725 (RDM) |
| JARED SAMUEL KASTNER, | : | |
| Defendant. | : | |

## DEFENDANT JARED SAMUEL KASTNER
## MOTION FOR DISCLOSURE OF WITNESS #REDGLASSESONRED

Defendant **JARED SAMUEL KASTNER** ("Kastner"), by undersigned counsel, hereby files this motion for disclosure of the identity of a potential witness in this case, known by the temporary identifier given to him by amateur internet researchers as #RedGlassesOnRed.

## I.  SIXTH AMENDMENT COMMANDS RIGHT TO "COMPULSORY PROCESS" FOR OBTAINING WITNESSES

The Sixth Amendment to the U.S. Constitution commands on this fundamental right that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; ***to have compulsory process for obtaining witnesses in his favor;*** and to have the assistance of counsel for his defence.

*Id. (emphasis added).*

Defendant's right is not merely to hope that he might identify and arrange the testimony of witnesses in his defense, but to a compulsory process to secure the attendance of witnesses in time to obtain a *subpoena ad testificandum* and to get it served on a witness.  The Sixth

Amendment specifically requires "compulsory process" not just a hope of calling witnesses.

This cannot be accomplished by Brady and Rule 16 disclosures made after a trial has already begun, nor even close to the start of a trial.  Furthermore, the last minute disclosures promote a chaotic approach to trials even as counsel is attempting to get ahead of timetables.

Closely associated with the federal rule are several U.S. Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses. *See, United States v. Dennis*, 384 U.S. 855 (1966); *United States v. Proctor & Gamble*, 356 U.S. 677 (1958).

> "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."

*Gregory v. United States* 369 F.2d 185, 188 (D.C. Cir. 1966). See also, Model Code Of Prof'l Responsibility Rule 3.8(d).

## II.     *BRADY V. MARYLAND* DISCLOSURE OF WITNESS KNOWN TO THE FEDERAL BUREAU OF INVESTIGATION

A man identified by amateur researchers as #RedGlassesOnRed[1] appears everywhere all around the U.S. Capitol on January 6, 2021.  The Government must know who he is.



---

[1]     https://seditionhunters.org/redonredglasses/



Because this man is seen often with face uncovered, the FBI has been able to run the image of his face against driver's license photographs and other records using facial recognition software. It is not possible that the FBI does not know his identity.



- #RedGlassesonRed is seen in one photograph having a celluar telephone, such that the FBI could identify who he is by telephone geolocation technology.

- He was the first to break through a window near the Senate Wing Door, breaking the right-hand pane with a 2 by 4 followed by his inspiration and encouragement by Dominic Pezzola shown hitting the left-hand pane of the window.  His face was uncovered at the time.  It is not credible that the FBI failed to identify him, though prosecuting Pezzola standing next to him.  The Government prosecuted Dominic Pezzola for breaking the left-pane of the same large window which #RedGlassesonRed broke the right pane immediately next to Pezzola.

    Because #RedGlassesonRed broke the first window in the Senate Wing Door area, which is destruction of federal property, he is not an innocent bystander as a witness.  The Government could have no valid reason to fail to investigate him and discover his identity and to indict him or charge him by information for at least that crime if not others.  Being guilty of at least some crimes, if not being one of the chief organizers of turning peaceful demonstrations by a few hundred out of an estimated 10,000 demonstrators means that there is no reason for the FBI to overlook him.

- #RedGlassesonRed is accused of assaulting a member of the media.

- #RedGlassesonRed is seen on video kicking a door near the Speaker's lobby.

- He is seen on video of "the crypt" [2] space below the Rotunda talking calmly with at least 25-30 U.S. Capitol Police officers.  He then leads the officers out of the crypt.  Shortly after, he leads a crowd of demonstrators from the area of the

---

[2] Not actually a burial place of course, but nicknamed for its appearance with many structural columns and dark lighting.

4

Senate Wing Door into the crypt area along with the USCP officers.

One of those demonstrators whom #RedGlassesonRed is seen on the Government's CCTV video into the crypt is the Defendant here in the case at bar, Jared Samuel Kastner. So he is a likely witness either in favor of Defendant's positions in defense and/or in cross-examining Government witnesses.

#RedGlassesonRed led Defendant Kastner from the Senate Wing Door to the crypt along with USCP officers at the same time, walking backwards and waving them all forward into the crypt.

His casual and friendly – and lengthy – conversation with USCP officers shows that the officers were allowing him and other demonstrators into the building. The officers were an informal circle, not in a line or cordon. The sequence of events on the Government's CCTV video recording suggests that #RedGlassesOnRed was negotiating with the officers and then he went and told the demonstrators that they would be allowed to proceed into the tourist areas like the crypt if they remained peaceful (which they did, as shown on the video).

Therefore, the Defendant Kastner knew that he had official authorization as declared by the USCP officers with their message relayed to Kastner by #RedGlassesonRed.

The speculation that officers were outnumbered is clearly belied by the Capitol security video from the crypt. The crowd of USCP officers #RedGlassesonRed was chatting amiably the officers. Then when demonstrators start to filter in to the crypt on the urging of #RedGlassesonRed they are roughly the same number as the first group of demonstrators arriving. They were not

5

motivated by being outnumbered.

- #RedGlassesonRed is seen on videos standing next to Ashli Babbitt when she was shot.  Video shows him walking back and forth the long hallway like a man on a mission moments before.  He then returns from his errands and stands next to where Ashli Babbitt uses her clearly-empty hands to pull herself up into an open window frame.  Then while everyone else looks at Babbit astonished as she falls, #RedGlassesonRed ignores her and looks away down the hallway as if he expected the shooting.

    In other words, it is not possible that the FBI did not investigate to identify this man.  His face was uncovered in those scenes and clearly recognizable.

    Why Ashli Babbitt matters is that the Government surely would have checked to see who #RedGlassesonRed is.  The man standing next to a fatal shooting would be too important to the investigation of a police-involved shooting and death to be so thoroughly ignored as to remain unidentified.  The Government knows the identity of #RedGlassesonRed.

- Counsel for Defendant Kastner is familiar with the formulaic, predictable, routine presentation that the prosecutors present in these January 6 cases.  The evidence is mostly irrelevant to the individual guilt of particular Defendants and relies on trying to substitute the "context" of what other, unrelated people did for any evidence of any guilt by the particular Defendant.  Therefore, we can predict what cross-examination of Government witnesses will be required.

- As a result, #RedGlassesonRed having talked extensively to a group of 25-30 USCP officers, would be an important witness for impeaching the expected

testimony by Government witnesses, as well as in favor of the Defendant.

### III. US CAPITOL POLICE HAVE STATUTORY AUTHORITY TO INVITE PEOPLE INTO THE U.S. CAPITOL

Inexplicably, the plainly-false suggestion has entered into the January 6 cases that neither the USCP noreven the President of the United States[3] can make what is unlawful lawful. This is plain error. 18 U.S.C. § 1752 – which defines a restricted area as strictly limited to the presence of a Secret Service protectee (not a building closed for any other reason) prohibits:

18 U.S.C. § 1752(a)(1) *(emphases added)*.

> (a)Whoever—
> (1) **_knowingly_** enters or remains in any restricted building or grounds **_without lawful authority to do so_**;
>
> * * *
>
> [shall be punished]

*(Emphases added.)*

When the issue is entry onto real estate, permission makes such entry lawful. An invitee is not analyzed the same. The subjective understanding of an alleged trespasser is different from the objective facts. The Government will have to explain why the statute is conditional upon "**_without lawful authority to do so_**" if in the Government's view there is no one in the universe with the power to grant such "lawful authority." The statute clearly spells out that people are allowed to enter a restricted building or grounds if allowed to do so. One cannot merely disregard the plain text of the statute. If USCP officers allow people to enter the Capitol, then there is no violation of 18 U.S.C. § 1752. Perhaps the USCP officer should not have done so.

---

[3] This topic has frequently arisen by the USAO filing a Motion in Limine against "Entrapment by Estoppel" – which no one is raising. This puts things in the wrong framework.

But as to the entrant, their entry is not contrary to the statute. If the Captain of a nuclear-armed naval submarine allowed someone to come on board for a tour, the Captain might face discipline. The invitee would not.

### IV. GOVERNING LAW: *BRADY* and Other Obligations

Defendant is entitled to the documents and the evidence, to the extent potentially or here likely to be exculpatory information as required by *Brady v. Maryland, 373 U.S. 83 (1963)* ; *See also, USA v Theodore F. Stevens*, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emmett Sullivan, (Docket No. 257, December 22, 2008); *United States v. Sitzmann*, 74 F.Supp.3d 128, 133 (D.D.C. 2014)

"[S]uppression by the prosecution of evidence favorable to a Defendant upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Sitzmann*, 74 F.Supp.3d at 134 (*quoting Brady v. Maryland,* 373 U.S. 83, 87 (1963)).

Under *Brady*, evidence may still be material and favorable despite being inadmissible, provided it could lead to admissible evidence. *Saffarinia*, 424 F.Supp.3d at 91.

Rule 16 of the Federal Rules of Criminal Procedure requires that:

> Rule 16. Discovery and Inspection
>
> \* \* \*
>
> (d) Regulating Discovery. (1) Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal. (2) Failure to Comply. If a party fails to comply with this rule, the court may: (A) order that party to

> permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.

Local Rule 5.1 "DISCLOSURE OF INFORMATION" prescribes that:

> (a) Unless the parties otherwise agree and where not prohibited by law, the government shall disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" under Brady v. Maryland, 373 U.S. 83, 87 (1963), and that is known to the government. This requirement applies regardless of whether the information would itself constitute admissible evidence. The information, furthermore, shall be produced in a reasonably usable form unless that is impracticable; in such a circumstance, it shall be made available to the defense for inspection and copying. Beginning at the defendant's arraignment and continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case. (b) The information to be disclosed under (a) includes, but is not limited to: (1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged; (2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty; (3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged; (4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and 132 (5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness. (c) As impeachment information described in (b)(5) and witness-credibility information described in (b)(4) are dependent on which witnesses the government intends to call at trial, this rule does not require the government to disclose such information before a trial date is set. (d) In the event the government believes that a disclosure under this rule would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of the requirements of this rule, which may include in camera review and/or withholding or subjecting to a protective order all or part of the information. (e) For purposes of this rule, the government includes

federal, state, and local law enforcement officers and other government officials who have participated in the investigation and prosecution of the offense(s) with which the defendant is charged. The government has an obligation to seek from these sources all information subject to disclosure under this Rule. (f) The Court may set specific timelines for disclosure of any information encompassed by this rule. (g) If the government fails to comply with this rule, the Court, in addition to ordering production of the information, may: (1) specify the terms and conditions of such production; (2) grant a continuance; (3) impose evidentiary sanctions; or (4) enter any other order that is just under the circumstances.

## V. ALL GOVERNMENT OFFICES, AGENCIES, OFFICERS, AND PERSONNEL MUST BE INCLUDED FOR CANDIDATE DISCLOSURES

Binding precedent clarifies that parts of the government with no relevance to the case at hand are not within the scope. Yet any part of government that was involved in the underlying events or participated in the investigation of them or which the agency or the prosecutor has reason to suspect might have relevant information is subject to the obligation for disclosure.

Here the U.S. Congress and its statutory police force the USCP claim to be victims of the crimes charges relating to January 6, 2021. In their posture as victims as well as the primary (first, if smaller than the FBI) investigative agency, all documents and information known to the USCP and FBI are subject to disclosure regardless of whether in the prosecutor's hands.

1. Was the recording in the possession of the government?[4]

> The government acknowledges that its disclosure obligation extends beyond statements held in the prosecutor's office to statements in the possession of its investigative agencies. As with the due process claim, however, the government asserts that the Department of Corrections is not an investigative agency for this purpose.
>
> "[T]he duty of disclosure affects not only the prosecutor, **but `the government as a whole, including its investigative agencies,'** because the Jencks Act refers to evidence gathered by `the government,' and not simply that held by the prosecution." *Wilson v. United States*, 568 A.2d 817, 820 (D.C.1990) (quoting *United States v. Bryant*, 142 U.S.App.

---

[4] Clearly referring to all levels of government.

10

D.C. 132, 140, 439 F.2d 642, 650 (1971) ("Bryant I"), on remand, 331 F.Supp. 927, aff'd, 145 U.S.App. D.C. 259, 448 F.2d 1182 (1971) ("Bryant II")).

In *Wilson* we applied *Brady* and *Jencks* requirements to the Washington Metropolitan Area Transit Authority (WMATA), where WMATA police were involved in the investigation and the case arose out of an attempt to enforce WMATA regulations[5]. 568 A.2d at 819-21; see also *Morris v. Washington Metro. Area Transit Auth.*, 251 U.S.App. D.C. 42, 44, 781 F.2d 218, 220(1986) (when the Metro Transit Police are involved, WMATA is considered a governmental entity); *Bryant I*, 142 U.S.App. D.C. at 140, 439 F.2d at 650 (tape recordings in the possession of the Bureau of Narcotics and Dangerous Drugs are in the possession of the government). Appellant urges that the Corrections Department should similarly be considered part of the government for disclosure purposes.

The case before us does not require that we go that far. **This case presents a narrower issue: whether the government has a duty to preserve evidence obviously material which, as the trial court found, the police knew or should have known about, and could have obtained if requested promptly from another government agency.** In *Brooks*, the Court of Appeals explained **courts' willingness to insist on an affirmative duty of inquiry on the part of the prosecutor, because an "inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure."** See *Brooks*, 296 U.S.App. D.C. at 222, 966 F.2d at 1503 (citing as an example *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir.1975) (*en banc*) (reflecting concern for "inherent fairness")). *Brooks* dealt with information that was already in the hands of the police department, albeit in a different unit than the one that investigated the case, and the law is clear that information in the hands of the police department is considered to be held by the "government" for *Brady* purposes. See *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555 (holding prosecutor's Brady obligation to disclose exculpatory evidence to defense applies to facts known to anyone acting on the government's behalf, including the police).

*  *  *

**Even when the prosecutor does not know about certain evidence, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."** *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555.

---

[5] This doesn't fully explain that the prosecution arose out of "WMATA regulations" concerning a threatening showdown on a bus against a bus driver. WMATA security responded to the threatening situation but then turned the investigation over to the D.C. MPD.

11

> \* \* \*
> **The government does not contend otherwise. Under these circumstances, we agree with the trial court that the police, as an integral part of the prosecution team, had an obligation to secure the tape recording. Thus, the tape recording was in the government's "possession" for both Jencks and Rule 16 purposes.**

*Robinson v. United States*, 825 A.2d 318 326-329, (D.C. 2003) *(paragraph break added for emphasis and bold emphases added).*

> \* \* \* When WMATA is seeking to enforce its regulations or to protect its employees and involves its police force, however, the tort immunity analysis is irrelevant in defining the obligation of the government to disclose evidence. Rather than look to the immunity analysis developed for different purposes, our focus in addressing the Jencks issue must be on the nature of the proceeding and the purpose of the Jencks Act.
>
> **When the statement being sought by the defense as** *Jencks* **material is so closely intertwined with a prosecution arising out of an attempt to enforce WMATA regulations and protect a WMATA employee,** *cf. United States v. Agurs*, **427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), we conclude that production, upon request, is required.** See *United States v. Deutsch*, supra, 475 F.2d at 57. The prosecution arose as a result of Brady's efforts to assure that bus passengers paid their bus fares. He stopped the bus because some of the passengers were out of control, endangering further operation of the bus. The record suggests that calling his supervisor was the means by which he sought supervisory as well as police assistance.

*Wilson v. United States*, 568 A.2d 817 (D.C. 1990) (paragraph break added for emphasis and bold emphases added).

## VI.   TIMING OF DISCLOSURE MUST BE ADEQUATE TO PREPARE FOR TRIAL AND OBTAIN WITNESSES

The USAO also purports to object that if disclosure is required, that it might not be required yet.  That is not a valid objection.  The Government could have responded to the effect that "Disclosure will be made at the time required," rather than purporting to oppose the Defendant's motion entirely.  A belief that there is a later time at which the disclosure must be made is not a reason now for the Government to oppose the motion.

However, in fact, there is no blanket rule that disclosure in the middle of trial is adequate.

It depends.  The purposes of disclosure include:

- Discovering witnesses that the Defendant might choose to call in his or her defense.

- Locating witnesses that the Defendant's legal strategy would have called.

- Understanding and analysis of the events that happened to help counsel prepare a defense for a Defendant.

- Preparing for effective cross-examination of the prosecution's witnesses.

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an Defendant," Brady, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an Defendant," *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

Determining usefulness can only be made by an advocate for the defense. *Id.* at 875. The trial judge's function is limited to determining if a case for production has been successful and

supervising the process. *Id.*

asks the Court to leap to conclusions about what we have not yet seen.

## VII. LACK OF DISCLOSURE CAN REQUIRE REVERSAL

If an appeal court determines the suppressed evidence is material, that there is a reasonable likelihood the evidence could have impacted the jury's judgment, then a new trial is required. *United States v. Sitzmann*, 74 F.Supp.3d 128, 133-134 (D.D.C. 2014).

A Defendant must raise at least a colorable claim that the material contains evidence "favorable to him and material to his claim of innocence." <u>*Id.*</u>

"[S]uppression by the prosecution of evidence favorable to a Defendant upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Sitzmann*, 74 F.Supp.3d at 134 (*quoting Brady v. Maryland,* 373 U.S. 83, 87 (1963)).

With *Brady*, constructive knowledge matters. In *Youngblood v. West Virginia*, 547 U.S. 867 (2006) the Supreme Court made it clear that "a Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the Brady duty to disclose extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is *'known only to police investigator and not to the prosecutor.'* 'Such evidence is material if "there is a reasonable possibility that had the evidence been disclosed to the defense, the result of the proceeding would have been different",' although a 'showing of materiality does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.' The reversal of a conviction is required upon a 'showing that the favorable evidence could reasonably be taken to put the whole case in such a different

14

light as to undermine confidence in the verdict.'"

The requirements of *Brady are* very broad. For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence. This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime."

United States Justice Manual USJMM) § 9-5.001.

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." *Id.* The Defendant is entitled to documents and evidence, to the extent potentially exculpatory*; See also, USA v Theodore F. Stevens*, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emmett Sullivan, (Docket No. 257, December 22, 2008); *United States v. Sitzmann*, 74 F.Supp.3d 128, 133 (D.D.C. 2014)

An actual conviction can be overturned on appeal for violation of *Brady* if evidence favorable to the accused for exculpatory or impeachment purposes was suppressed by the government which prejudiced the accused. *Id*. Favorability to the accused means exculpatory or impeachment value. *Id.* Suppression by the government can be an intentional or inadvertent failure to disclose the evidence. *Id*. at 137. [6]

Courts in in this jurisdiction disfavor narrow readings by prosecutors as to their obligations under *Brady*. *United States v. Saffarinia*, 424 F.Supp.3d 46, 57 (D.D.C.), *supported by United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988).

---

[6] If the USAO withholds information that is later uncovered by Congress, whistleblowers, the media, FOIA, or other cases, any conviction in this case is vulnerable to being vacated.

When the Defendant requests <u>Brady</u> materials

> **"The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."**

*Saffarinia*, 424 F.Supp.3d at 85.

Under *Brady*, it is relevant that the Defendant explicitly asked for specific information, not passively hoping that the prosecution will notice and think to disclose it:

> "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made...." [14]

*United States v. Agurs*, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the Defendant and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. * * *"

*Moore v. Illinois,* 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)

> "If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made."

*United States v. Agurs*, 427 U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976).

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.[20] Such a finding is

16

permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."

*Agurs* at 112.

July 17, 2023                     **RESPECTFULLY SUBMITTED,**
                                  John M. Pierce, Esq.
                                  *Counsel for Defendant*

                                  _____*/s/ John Pierce*_____

                                  JOHN PIERCE LAW
                                  21550 Oxnard Street 3rd Floor, PMB #172
                                  Woodland Hills, CA 91367
                                  jpierce@johnpiercelaw.com
                                  (213) 279-7846

## CERTIFICATE OF SERVICE

I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

   MATTHEW M. GRAVES
   UNITED STATES ATTORNEY

   By and through:
   **Mr. Will Widman, Esq.**
   DOJ-CRM
   1301 New York Avenue NW
   Washington, DC 20530
   (202) 353-8611
   Email: will.widman@usdoj.gov


                                  _____*/s/ John Pierce*_____
                                         John M. Pierce