## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Complainant** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-CR-725 (RDM)** |
| | : | |
| **JARED SAMUEL KASTNER,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| _____ | : | |

### DEFENDANT JARED SAMUEL KASTNER's REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE OF WITNESS #REDGLASSESONRED [*SIC*]

Defendant JARED SAMUEL KASTNER ("Kastner"), by and through undersigned counsel, hereby respectfully files this Reply in support of his Motion For Disclosure Of Witness #RedGlassesOnRed and respectfully demands disclosure of the identity of a potential witness in this case, known by the temporary identifier given to him by amateur internet researchers as #RedGlassesOnRed (or #RedonRedGlasses). In support of his motion, the Defendant submits the following Reply and included Memorandum of Law:

## I.    SUMMARY OF RELIEF REQUESTED

The Court is asked to issue an order to uphold *Brady v. Maryland*, 373 U.S. 83 (1963) that the Government writ large (where involved) turn over any such information or documents that may exist which would identify or lead to the identification of the potential witness.

If the Government's response is that (a) it _genuinely_ searched but (b) did not find anything, _then **that is the answer** to the Court's order_. It is no answer to offer excuses for not looking. If the Government truly does not know, then that is the answer called for, not "non-

denial denials" about why it doesn't have to tell us.  Of course, if it later turns out that the Government actually did know we are not foreclosed from serious further proceedings.

This is especially important because the Opposition raises concerns about all of the other *Brady* material that is probably not being turned over under similar excuses.  Defendant's counsel doubts that among mountains of irrelevant disclosures, the Government is handing over exculpatory information that is constitutionally required.

Because it strains credibility that the Government does not know the identity of #RedonRedGlasses Defendant asks for a certification from the Government that it actually performed an adequate search for the information, and did not brush its duty aside.

Video recordings posted by the Government itself show #RedonRedGlasses breaking the large window on the right-and pane near the Senate Wing Door, standing next to and aiding and abetting and inspiring Proud Boys member Dominic Pezzola to similarly break the same window on the left-hand pane.[1]  The Government prosecuted Pezzola on the left side of the window but not #RedonRedGlasses on the right side.  So he is not a mere innocent bystander.

Thus the FBI, U.S. Capitol Police, Metropolitan Police Department, and U.S. Department of Justice already have an independent affirmative duty to find #RedonRedGlasses because he committed a crime under 18 U.S.C. 1361 similar to why the Government prosecuted others.

The Government Opposition provides a disconcerting view of its obligations under *Brady*.  This leads to a conclusion that nothing in this case is being handled under the correct interpretation of *Brady* because the Government here and elsewhere adamantly insists upon erroneous understandings of *Brady*.  If the Government is following an incorrect interpretation, it is not actually delivering to Defendants many items mandated under *Brady*.   As made clear by the U.S. Supreme Court and Courts of Appeal, this case is subject to dismissal for violations of

---

[1]    This law firm here recites Pezzola's conviction, not stating any position or admission of counsel.

the Constitutional rights of this Defendant.

Here, the USAO in its Opposition offers a "non-denial denial" hinting that the Government writ large has not identified the witness #RedonRedGlasses, but doing so by arguing that the Government is not required to tell us if it has or has not.  The Opposition could plainly state "We are aware that we are obligated to provide this information under *Brady* but the FBI in the largest criminal investigation in U.S. history is unable to find out the name of this person."  But arguing that the Government has no such obligation leaves the door open to the possibility that the Government does not believe *Brady* extends to the identity of potential witnesses, even when specifically requested by the defense, and hasn't really looked.

The Opposition argues in detail that what would normally be sufficient grounds.  In any criminal or civil context --

(1) an inquiring party asks for what it needs or should receive,

(2) the responding party has an affirmative obligation (here on constitutional grounds) to conduct a search that is complete and thorough and performed in good faith, reasonably[2] calculated to actually find the information sought,

(3)  if the responding party cannot find the information sought, then it says so and responds – in plain terms – that we really did look but no such information or documents exist within our possession, custody, or control.

(4)  if it later turns out that the responding party misled us then the case is subject to dismissal, even on re-opening after conviction, and other very serious consequences.

There is absolutely nothing unique about this.  The Court should issue an order that the Government actually look for the information and follow the correct rule of *Brady*.

---

[2]     Reasonably has never meant "as little as I can get away with."  That would be unreasonable.

## II.    TERMINOLOGY CORRECTION

Defendant's Motion incorrectly referred to the code name given to the witness by on-line amateur, private, would-be sleuths as #RedGlassesonRed.  The Government Opposition was kind enough to point out that the man has been identified by this network of private internet sleuths. The Opposition then goes on to argue the motion under the correct terminology, #RedonRedGlasses, without being distracted by the Defendant's misnomer.

Nevertheless, the Defendant provided numerous photographs and descriptions sufficient to precisely define the likely witness.  An allegedly private network of internet investigators has posted details at:  https://jan6attack.com/individuals/redonredglasses/ .

The witness is standing next to Ashli Babbitt during a police-involved shooting in which a civilian demonstrator died from the service weapon of a U.S. Capitol Police officer.



#RedonRedGlasses – the witness at issue – is seen here covering his ears with his hands, his left hand wearing a black glove, right below Ashli Babbit still climbing upward into the window frame of the decorative wall to the Speaker's Lobby.  #RedonRedGlasses is standing so close to Ashli Babbitt that he could have easily been struck by the bullet from the service weapon of Lieutenant Michael Byrd aiming at Ashli Babbit. No investigation could be remotely legitimate or adequate without interviewing the man standing right next to the deceased civilian

within the aiming zone or cone of the officer's bullet.





Adding to the specificity, the Defendant's Motion further identifies the man as having a brand-new Trump or MAGA red hat such that the plastic hook from a store is still visible.









## III.   DEFENDANT IS ENTITLED TO SEEK WITNESSES IN HIS FAVOR, KNOWN TO THE GOVERNMENT

The constitutional requirements of *Brady v. Maryland* extend to the identification of potential witnesses.  One might suppose that this depends more on a particular request by Defendant's counsel than other kinds of information, but it is still required.

Even a fact witness that something *did not happen* could be "exculpatory:"

> The failure of a witness to see or hear a particular event may have weight as to the non-occurrence of the event. 4 Jones on Evidence § 986. However, the burden is upon the party who asserts the negative evidence to prove that the witness was in a position to have observed the questioned event had it occurred as alleged. 1 Jones on Evidence § 208.

*United States v. Eisenberg*, 469 F.2d 156 (8th Cir. 1972)

Anything that, if omitted, may hinder the Defendant's preparation for or presentation of his defense case is subject to *Brady* disclosure.

> [U]nder the *Strickland* formulation the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have

> occurred in light of the totality of the circumstances and with an
> awareness of the difficulty of reconstructing in a post-trial proceeding
> the course that the defense and the trial would have taken had the
> defense not been misled by the prosecutor's incomplete response.

*United States v. Bagley*, 473 U.S. 667, 684, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985)

Closely associated with the federal rule are several U.S. Supreme Court decisions which

hold that a defendant has a right to the testimony of witnesses. *See, United States v. Dennis*, 384

U.S. 855 (1966); *United States v. Proctor & Gamble*, 356 U.S. 677 (1958).

> "Witnesses, particularly eye witnesses, to a crime are the
> property of neither the prosecution nor the defense. Both
> sides have an equal right, and should have an equal
> opportunity, to interview them."

*Gregory v. United States* 369 F.2d 185, 188 (D.C. Cir. 1966). See also, Model Code Of Prof'l
Responsibility Rule 3.8(d).

The D.C. Circuit decided in *U.S. v. Johnson*, 953 F.2d 688 (D.C. Cir. 1992)

> "The district judge found that because appellant was
> acquainted with the potential witness and was aware that
> he was present at her arrest, appellant had as much
> access to the potential witness as did the prosecution."

*Johnson* is marked as not selected for publication, but cites a D.C. Circuit rule that it may

be cited as persuasive or for the general disposition when relevant.  Here, although the

expansive, sweeping language of precedents and even the Department of Justice's own guidance

make it clear, few precedents explicitly discuss the fact that the identity of even *potential*

witnesses are subject to the constitutional force of *Brady* disclosures.

In *Johnson*, the District Court and Court of Appeals decided that the Defendant there

already knew the identity of the potential witness, but would not have considered the issue if

there were no obligation for the Government to disclose potential witnesses when asked.

Courts in in this jurisdiction disfavor narrow readings by prosecutors as to their

obligations under *Brady*.  *United States v. Saffarinia*, 424 F.Supp.3d 46, 57 (D.D.C.), *supported*

*by United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988).

> Justice MARSHALL, with whom Justice BRENNAN joins, dissenting.
>
> When the Government withholds from a defendant evidence that might impeach the prosecution's only witnesses, that failure to disclose cannot be deemed harmless error. Because that is precisely the nature of the undisclosed evidence in this case, I would affirm the judgment of the Court of Appeals and would not remand for further proceedings.

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985)

> We find the *Strickland* formulation of the *Agurs* test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Bagley*, 473 U.S. at 682.

> Justice WHITE, joined by THE CHIEF JUSTICE and Justice REHNQUIST, being of the view that there is no reason to elaborate on the relevance of the specificity of the defense's request for disclosure, either generally or with respect to this case, concluded that ***reversal was mandated simply because the Court of Appeals failed to apply the "reasonable probability" standard of materiality*** to the nondisclosed evidence in question. P. 685.

*Bagley*, 473 U.S. at 669 (syllabus summary) *(emphasis added)*.

## IV.   THE OPPOSITION MISSES THAT THE ISSUE IS A POTENTIAL WITNESS, WHICH IS RELEVANT

Much of the Opposition ignores that the Defendant's is requesting the identity of #RedonRedGlasses, ___as a witness to be called in Kastner's defense.___  The Government asserts that he would not have exculpatory testimony.  Unless the FBI interviewed him, how would they know that?  Again, the man spends considerable time chatting amiably on building security video with 20-30 USCP officers in the Crypt (under the Rotunda), then leads those officers down

a hallway toward the Senate Wing Door, and returns with a crowd of demonstrators with the USCP officers ***which includes the Defendant Jared Kastner*** in the crowd that #RedonRedGlasses is leading back into the Crypt.  (He acts chummy with police when no demonstrators are watching but then puts on a show of a tough guy around demonstrators.)

The Government speculates that #RedonRedGlasses might turn out to be a dead end as a witness.  But that is for the Defendant and his counsel to decide. It is not for the prosecution to invite itself to look over Defendant's counsel's shoulder and make decisions for the Defendant.

Determining usefulness can only be made by an advocate for the defense. *Dennis v. United States,* 384 U.S. 384 U.S. 855, at 875, 16 L. Ed. 2d 973, 86 S. Ct. 1840 (1966). The trial judge's function is limited to determining if a case for production has been successful and supervising the process. *Id.*

Once a witness is identified, Defendant's counsel may seek to interview him or seek other information that may illuminate the witness' value at trial.  The Government's speculation about whether this witness' testimony would help the Defendant is substantially premature.

The recorded video demonstrates that #RedonRedGlasses was in fact a direct witness, in a position to have observed the questioned event, and a participant in, USCP officers giving demonstrators the impression that they were allowed to enter the U.S. Capitol at least as far as the Crypt accessible from the Senate Wing Door entrance. [3]

There are times when witnesses are called for neutral or non-obvious reasons.  The local meteorologist might protest that she did not see the car accident yet she could testify that the

---

[3]     The man is a probative witness.  If one manifests permission to an invitee it matters not whether they intended to or were wrong to do so.  If the lawyers here invited themselves into the Judge's private office, that would be some species of trespass.  But if the Judge asked all counsel to join him in chambers to talk, there would be no wrong after being invited.  Yes, what is otherwise unlawful can in fact be transformed into lawful conduct by the behavior of one with authority over real estate.  If a police officer manifests by gestures, actions, or words as viewed by an objective, reasonable person that one may enter the museum though it already closed, the standard is from the accused trespasser's perspective.  The behavior of the officers is entirely relevant.

weather was snowing heavily at the time of the accident. The local car dealership – whose service manager was on vacation in another state on the day of the accident – might nonetheless testify that the car manufacturer had recalled the brakes for the driver's car as unreliable. A witness who was nowhere near the car accident might have admissible, hard evidence that an opposing witness disclaimed his story as untrue. Defense counsel might be the only one who sees the whole picture of how a witness' testimony will fit into the overall mosaic at trial.

In that respect, short witnesses can be as important as lengthy ones. The Defendant has a right even to witnesses whose testimony is brief but who fill important gaps in the defense case.

## V.   IT IS DEFENDANT'S RIGHT TO ASK FOR WITNESSES

Under *Brady*, it is relevant that the Defendant explicitly asked for specific information, not passively hoping that the prosecution will notice and think to disclose it:

> "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made...." [14]

*United States v. Agurs*, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> "The heart of the holding in *Brady* is the prosecution's suppression of evidence, ***in the face of a defense production request***, where the evidence is favorable to the Defendant and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.  * * *"

*Moore v. Illinois,* 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) *(emphasis added).*

When the Defendant requests <u>*Brady*</u> materials

> "The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."

*Saffarinia*, 424 F.Supp.3d at 85.  Evidence may be material and favorable despite being

11

inadmissible, **provided it could lead to admissible evidence**. *Saffarinia*, 424 F.Supp.3d at 91

# VI.   DEPARTMENT OF JUSTICE'S PRACTICE OF LAST-MINUTE DISCLOSURES IS IMPROPER

Prosecutors are required to produce disclosures early enough to allow Defendant's

counsel to make effective use of the information and for the Defendant not to be prejudiced by

the late disclosure.  On occasion, appellate courts have allowed disclosure just before or during

trial *because under those circumstances defense counsel could make use of a prior inconsistent*

*statement of a witness or other information about a witness in impeachment.*  However, there is

no rule nor any appellate endorsement of an automatic rule that disclosure is ***always*** timely just

before or during trial.  It depends.  On the contrary, prosecutors are admonished by precedent to

make disclosure in sufficient time to allow defense counsel to make effective use of the

information.  On a case by case basis, this will require disclosure long before trial.

> **D.   Timing of disclosure.** Due process requires that disclosure of
> exculpatory and impeachment evidence material to guilt or innocence be
> made *in sufficient time to permit the defendant to make effective use of*
> *that information at trial.* See, e.g. *Weatherford v. Bursey*, 429 U.S. 545,
> 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In
> most cases, the disclosures required by the Constitution and this policy
> will be made in advance of trial.
>
> > **1.   Exculpatory information.** Exculpatory information
> > must be disclosed reasonably promptly after it is
> > discovered.

*See* United States Justice Manual (USJMM) § 9-5.001, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.002.  *(Emphases added.)*

The DoJ has transformed appellate generosity that *sometimes* disclosure can be timely

just before trial or during trial before a witness testifies into an unwarranted rigid rule that

disclosure is *always* timely if just before a witness testifies.

That is not the law.  Prejudice to the Defendant is the governing rule.

Where, as here, learning the identity of a potential witness would then require counsel to

reach out to the witness, attempt to interview the witness, issue a subpoena, have the subpoena

served, and subpoena the witness long enough ahead of trial to not be subject to being quashed

for being untimely will _always_ require disclosure long before trial commences.  A Defendant

will _always_ be prejudiced by learning of a witness after the trial has already started or just before.

Moreover, disclosure of the identity of potential witnesses during the trial would make

the trial judge's task of planning out witnesses for the smooth running of the trial very difficult.

## VII.   "EXCULPATORY" INFORMATION IS EXCEEDINGLY BROAD UNDER *BRADY V. MARYLAND.*

The Government engages in speculation and imagination about how the witness might

not be exculpatory, yet ignores the role of #RedonRedGlasses ___as a witness___.  The Government's

analysis is about everything other than what the Defendant's motion asks.

The mistake that *Brady* only applies to direct evidence of innocence is beyond reasonable

contemplation.  "[S]uppression by the prosecution of evidence favorable to an accused _upon_

_request_ violates due process where the evidence is material to either guilt ___or punishment___,

irrespective of the good faith or bad faith of the prosecution." *United States V. Sitzmann*, 74

F.Supp.3d 128, 133-134 (D.D.C. 2014). (*quoting Brady v. Maryland,* 373 U.S. 83, 87 (1963)

*(emphases added).*

> "***Impeachment evidence,*** however, as well as exculpatory evidence, ***falls within the Brady rule.*** See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). ***Such evidence is "evidence favorable to an accused,"*** *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, ***it may make the difference between conviction and acquittal***. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985) *(emphases added).*

A successful *Brady* claim to over-turn a conviction after trial requires that favorable evidence to the accused for exculpatory ***or impeachment purposes*** was suppressed by the government which prejudiced the accused. *Id.*  Favorability to the accused requires exculpatory or impeachment value. *Id. (emphasis added).*  Suppression by the government can be an intentional or inadvertent failure to disclose the evidence. *Id.* at 137.

The scope of the requirements of *Brady v. Maryland* is very broad.   For instance,

> As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

(USJMM) § 9-5.001, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.002.

> **1.  Materiality and Admissibility.** Exculpatory and impeachment evidence is material to a finding of guilt—and thus the Constitution requires disclosure—when there is a reasonable probability that effective use of the evidence will result in an acquittal. *United States v. Bagley*, 475 U.S. 667, 676 (1985). Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles*, 514 U.S. at 439. While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question.
>
> **2.  The prosecution team**. It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.  *Kyles*, 514 U.S. at 437.

*Id.* A "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to

14

> witness testimony—the prosecutor intends to rely on to prove an
> element of any crime charged, or might have a significant bearing on
> the admissibility of the evidence.  This information must be disclosed
> regardless of whether it is likely to make the difference between
> convictions and acquittal of the defendant for a charged crime."

*Id.*

The disclosure requirement, "applies to information regardless of whether the

information subject to disclosure would itself constitute admissible evidence."  *Id.*

The Defendant is entitled to the documents and the evidence, to the extent potentially or

here likely to be exculpatory information as required by *Brady v. Maryland, 373 U.S. 83 (1963) ;*

*See also, USA v Theodore F. Stevens*, No. 1:08-CR-00231-EGS, U.S. District Court for the

District of Columbia, Memorandum and Opinion by Judge Emmett Sullivan,  (Docket No. 257,

December 22, 2008); *United States v. Sitzmann*, 74 F.Supp.3d 128, 133 (D.D.C. 2014)

## VIII.  HOW COULD THE GOVERNMENT NOT KNOW THE WITNESS' IDENTITY?

A.  Either the U.S. Capitol Police, an arm of the U.S. Congress and a complaining

witness in the case, the FBI, the DoJ, etc., completely failed to conduct any kind of

remotely serious investigation of the police-involved shooting by Lt. Michael Byrd of

unarmed civilian Ashli Babbitt or the Government determined the identity of the man

standing next to Babbitt when she was shot.[4]  If the Government does not know the

identity of #RedonRedGlasses then the investigation of Ashli Babbitt's shooting is

now publicly conceded to have been inadequate.

B.  Or #RedonRedGlasses has never had a driver's license.  The FBI has been public and

open about its ability to compare a photograph (better yet several photographs) to

---

[4]      Ashli Babbitt reached up and grabbed both sides of the window frame in the decorative wall between the staircase and the Speaker's Lobby (which is more of a meeting space set up like a library or cafeteria than a traditional office).  With the window knocked out of the space by others, Babbitt grabbed one side with her left hand and the other side with her right hand.  Therefore, it was unmistakable that she was unarmed.  She had nothing in her hands but was unmistakably using her empty hands to grasp each side of the window frame.

databases and conduct facial recognition by computerized matches.  Indeed, private services will provide facial recognition processing.

C.  In this case, the FBI activated Multi-Lateral Assistance Treaties with other countries to share information.  If any country had a photograph the FBI would have a match.

D.  If not a U.S. citizen, he would have a record with immigration authorities.  Even if he entered the U.S. illegally but applied for asylum, his photograph would be on file.

E.  Unlike grainy, night-time video of person who placed pipe bombs near Capitol Hill, photographs of #RedonRedGlasses show him well-lit in the sunshine or well-lit rooms, often with his face uncovered, in close-up, high-quality views.

F.  #RedonRedGlasses would have to have no passport, which includes a photograph.

G.  #RedonRedGlasses must have no college ID card or trade license application including a photograph or the FBI would have found the match.

H.  The FBI's ability to use cell phone geolocation data from what appears to be a flip-phone seen in #RedonRedGlasses front jeans pocket is exaggerated, not founded.

I.  Or #RedonRedGlasses is a Confidential Human Source or government asset of any number of Federal agencies, possibly not the FBI, and the Government is trying to hide this fact.

Again, #RedonRedGlasses is not some random bystander.  Video recordings show that he was the first person to break a window into the U.S. Capitol, allegedly inspiring and aiding and abetting Dominic Pezzola to do so right after.  The fact that Pezzola has been prosecuted for this makes it impossible for the Government to deny that it should similarly prosecute #RedonRedGlasses.  At the least, the FBI has a duty to identify him.

August 5, 2023                                    **RESPECTFULLY SUBMITED,**

John M. Pierce, Esq.
*Counsel for Defendant*

<u>/s/ John Pierce</u>
JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 400-0725

## CERTIFICATE OF SERVICE

I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

MATTHEW M. GRAVES
United States Attorney

Cytheria Jernigan
U.S. Attorney's Office
300 Fannin Street Suite 3201
Shreveport, LA 71101
318-676-3611
318-676-3663 (fax)
cytheria.jernigan@usdoj.gov

Will Widman
DOJ-CRM
1301 New York Avenue NW
Washington, DC 20530
(202) 353-8611
will.widman@usdoj.gov

Stephen F. Brennwald
BRENNWALD & ROBERTSON, LLP
922 Pennsylvania Avenue, SE
Washington, DC 20003
(301) 928-7727
(202) 544-7626 (fax)
sfbrennwald@cs.com
Attorney for Kenneth Duncan Massie

Kira Anne West
LAW OFFICE OF KIRA WEST
712 H St, NE
Unit 509

Washington, DC 20002
(202) 236-2042
kiraannewest@gmail.com
Attorney for Luke Faulkner

_____/s/_____
John M. Pierce