UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-725-MAU** |
| **v.** | : | |
| | : | |
| **JARED SAMUEL KASTNER,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' *MOTION IN LIMINE* TO EXCLUDE TESTIMONY

The United States of America respectfully files this *motion in limine* for the Court to issue an order excluding certain defense witnesses from testifying at trial or, in the alternative, for the Court to order that the defendant provide a full factual proffer for each witness that the defense intends to call at trial.

Throughout the pendency of this matter, this Court has ordered the pretrial disclosure of witness lists, which it has the authority to do.  *See, e.g.*, Fed.R.Crim.P. 16(d)(1) (authorizing the Court to regulate discovery by denying, restricting or deferring discovery, or granting other appropriate relief).  The defense has repeatedly failed to timely respond to the Court's orders.

On April 3, 2024, the defense read the names of 15 potential defense witnesses to the jury venire at jury selection.  Seven of these witnesses were never previously identified in this case to the Court or to the government.  Many of these witnesses have potential 5th Amendment issues based on their conduct at the U.S. Capitol on January 6, 2021, which the government raised with the Court as quickly as possible, and the Court ordered defense counsel to consult with the Federal Public Defender for the District of Columbia to arrange for conflict counsel.  At this juncture, defense counsel has sought conflict counsel for one defense witness, James Cusick, a witness

1

whose relevance has been questioned by this Court.  It is unknown to the government whether any such consultations have occurred regarding any other witnesses.

The government anticipates that many of the named defense witnesses' would offer testimony that is irrelevant to the facts of the instant case, or unduly prejudicial, inflammatory, misleading and/or confusing to the jury, and otherwise cause unnecessary delay and/or waste time. The Court has put the parties on notice to comply with its orders.  Disclosing seven new witnesses at jury selection is tantamount to trial by ambush and fails to comply with this Court's orders. In this case, the failure to comply with the Court's orders, coupled with the witnesses' lack of relevance and the delay of trial their testimony will cause, warrants exclusion of the witnesses' testimony.  *See* Fed.R.Crim.P. 16(d)(2)(C) (authorizing exclusion of undisclosed evidence for failure to comply with a court order).

Certain witnesses who offer testimony that is seemingly without relevance merit particular scrutiny from this Court because of the increased likelihood that their testimony will unnecessarily prolong the trial, become inflammatory, or cause confusion.  These are witnesses whose bias with respect to the January 6, 2021 attack on the Capitol is so great that they have recently broadcast statements fairly perceived as implied threats against jurors who recently rendered guilty verdicts against a January 6th defendant.  Such statements are proper subjects of impeachment; witnesses who cannot respect the basic process of criminal trials are far less likely to offer truthful testimony themselves.  Given the apparent absence of relevant testimony from such witnesses, however, their testimony and any resulting impeachment during this trial is properly avoided, and the United States' objection to their testimony should be sustained.

**Procedural Background**

On October 21, 2022, Judge Randolph D. Moss set this case for a jury trial to begin on August 8, 2023.  Min. Order of Judge Moss (October 21, 2022).  Judge Moss further ordered: "The parties shall file a Joint Status Report by 10/28/2022 which shall include a proposed pretrial schedule for motions deadlines, *witness/exhibit list deadlines*, and proposed pretrial conference and motion hearing dates."  *Id.* (emphasis added).  Consistent with that order, the parties consulted and agreed regarding a proposed trial scheduling order and deadlines.  This schedule included a deadline for witness lists to be filed on or before July 28, 2023, as part of a Joint Pretrial Statement. On October 28, 2022, the government filed a joint status report that included the agreed upon deadline for witness lists.  ECF No. 68.  On October 31, 2022, Judge Moss issued an order accepting the parties' proposed deadlines, including: "…on or before July 28, 2023, counsel shall file a Joint Pretrial Statement that contains proposed voir dire questions, proposed jury instructions, *list of witnesses*, exhibit lists, stipulations, and a proposed verdict form…."  Min. Order of Judge Moss (October 31, 2022) (*emphasis added*).

On December 19, 2022, the Defendant made a motion for a trial by magistrate judge pursuant to 18 U.S.C. § 3401 (ECF No. 69), which the government did not oppose (ECF No. 73). Judge Moss granted the motion and ordered, "this case . . . [be] referred to a Magistrate Judge, to be assigned at random by the Clerk's Office, for all purposes," including but not limited to a misdemeanor trial.  Min. Order of Judge Moss (December 21, 2022).  On December 22, 2022, the case was randomly reassigned to this Court.

Following a status conference on January 25, 2023, the Court issued an order maintaining a trial date of August 8, 2023, as previously set by Judge Moss.  Min. Order (January 25, 2023). The Court then issued a new pretrial scheduling order and imposed deadlines, including:

3

"…on or before July 28, 2023, counsel shall file a Joint Pretrial Statement that contains proposed voir dire questions, proposed jury instructions, and a proposed verdict form, as well as *a list of witnesses*, exhibit lists, and stipulations."  Min. Order (January 26, 2023) (*emphasis added*).  This Court's deadline for witness lists had not changed from the trial scheduling order previously agreed upon by the parties and imposed by Judge Moss.

On June 26, 2023, the Court issued a revised pretrial scheduling order and imposed new deadlines, including: "On or before July 18, 2023, the Parties shall file a Joint Pretrial Statement that contains proposed voir dire questions, proposed jury instructions, and a proposed verdict form, as well as *a list of witnesses*, exhibit lists, and stipulations."  Min. Order (June 26, 2023) (emphasis added).  In the course of pretrial litigation, the defendant made motions for an enlargement of time with respect to other matters but never about the defense witness list.

On July 18, 2023, the date on which the Joint Pretrial Statement was due, the defendant provided the government with a list of the following defense witnesses: David Kastner, James Rankin, William Murdock, Andrew Tunney, Nicholas Thompson, and Graham Green. On that same date, the government filed a Partial Joint Pretrial Statement, which included these six witnesses in an attachment entitled, "Defendant Jared Kastner Witness List."  ECF No. 143-4. With the possible exception of Graham Green, the government anticipated each of the other witnesses would be character witnesses for the defendant.

On July 21, 2023, the Court conducted a pretrial motions hearing.  In addition to the Court hearing argument and ruling on pretrial motions, the Court discussed the parties' Partial Joint Pretrial Statement, ECF No. 143, including where the parties agreed and disagreed with regards to voir dire questions, jury instructions, the verdict form, and exhibit lists.  At no point before or

during the pretrial motions hearing did the defendant seek to revise or update his defense witness list that had been filed in the docket per the Court's order.

On August 4, 2023, the Court conducted a status hearing, wherein trial was continued until September 14, 2023.  At no point before or during the status conference did the defendant seek to update the Court with new information about the defendant's witness list.

On September 11, 2023, the Court through staff requested the parties provide courtesy copies of trial materials, including witness lists, in advance of what was thought to be the final pretrial hearing on September 12, 2023.  The defense provided the Court with a document entitled, "Defendant Jared Kastner Witness List," which included the following individuals as potential defense witnesses: David Kastner, James Rankin, William Murdock, Andrew Tunney, Nicholas Thompson, Graham Green, David Sumrall, and Emily Lambert.  This witness list provided by the defendant was never filed in the docket, nor was any explanation ever given by the defendant as to two new witnesses: Mr. Sumrall and Ms. Lambert.   At the conclusion of the pretrial conference on September 12, 2023, the Court granted the defendant's motion to continue, and the trial date was reset to April 8, 2024.  At no point in the six months that followed did the defendant seek to revise or file an updated witness list in the docket.

On March 5, 2024, roughly one month prior to the beginning of trial, the Court held a status conference to discuss the viability of the then April 8, 2024 trial date.[1]  Min. Orders (February 29, 2024 and March 5, 2024).  The Court asked the parties about their current estimates for witnesses and length of trial.  The government estimated that it would call seven witnesses over the course

---

[1] On March 5, 2024, prior to the status conference, Mr. Roots entered his notice of appearance for the defendant.  Mr. Roots had previously not appeared as an attorney in this matter, though he was permitted to sit at counsel table in a paralegal capacity at the pretrial motions hearing on July 21, 2023.

of three days, which was consistent with prior estimates made to the Court.  The defendant likewise estimated that their case would take the same amount of time—three days—which was longer than prior estimates.  Mr. Pierce also recounted, in his experience, other January 6th trials had typically lasted for five days total, which was consistent with prior estimates.  Based on information that trial could last longer than originally forecasted, the Court rescheduled trial to begin one week earlier on April 2, 2024.  Min. Order (March 7, 2024).

At the status conference on March 5, what had been thus far disclosed to the Court by the defendant—on the docket or otherwise—was that the defendant could be calling as many as nine witnesses:  David Kastner, James Rankin, William Murdock, Andrew Tunney, Nicholas Thompson, Graham Green, David Sumrall, Emily Lambert, and the defendant.  At no point during the status conference—which had the primary purpose of projecting the number of witnesses the parties expected to call and to determine the length of trial—did the defense raise the possibility of calling any additional witnesses.  At no point after this status conference or in the weeks that followed did the defendant file a revised or updated witness list.

On April 3, 2024, during jury selection, the parties read the names of potential witnesses to the jury venire.  The government read the names of 11 witnesses, all of whom were previously filed on the docket and/or noticed to the Court and the defendant.  *See* ECF No. 143-4.  Included in this recitation were seven witnesses whom the government anticipated calling at trial.

According to the government's notes from jury selection, the defendant went on to name 15 possible defense witnesses to the jury venire: Casey Cusick, James Cusick, Graham Green, John Guandolo, Tarik Johnson, David Kastner, Jared Kastner, Emily Lambert, Suzzanne Monk, James Rankin, David Sumrall, Tommy Tatum, Nicholas Thompson, Nicholas Tomasula, and Andrew Tunney.  Prior to that moment, the Court and the government had not been given notice

of seven of those 15 witnesses: Casey Cusick, James Cusick, John Guandolo, Tarik Johnson, Suzzanne Monk, Tommy Tatum, and Nicholas Tomasula.   One witness, William Murdock, who was previously listed as a defense witness was not named to the jury venire (though the defendant himself reminded defense counsel of that witness when the Court inquired about additional witnesses).  *Compare* ECF No. 143-4.  After jury selection on April 3, and again on April 4 after the first day of trial, the government requested an updated witness list from the defense that includes all potential witnesses whose names were read to the jury venire.  As of this filing, no response at all, nor any such list has been provided to the government by the defense.  The government has attempted to confer with defense counsel about its additional witnesses but has not received a response.

On April 8, 2024, the Court readdressed the subject of defense witnesses with the parties in open court.  Defense counsel stated that the following witnesses may be called for the defendant: James Cusick, John Guandolo, David Kastner, Jared Kastner, Emily Lambert, Suzzanne Monk, James Rankin, Nicholas Thompson, Andrew Tunney, and William Murdock.[2]

## **Argument**

### I.   **The Court Should Exclude Testimony from Defense Witnesses James Cusick, John Guandolo, Emily Lambert, Suzzanne Monk, David Sumrall, and Thomas Tatum.**

Several of the above-listed defense witnesses have made threatening statements about judges, juries, prosecutors, members of law enforcement, and elected officials.  For example, on April 4, 2024, after a jury returned a guilty verdict in *U.S. v. Rebecca Lavrenz*, 23-cr-066-ZMF—

---

[2] Based on representations by defense counsel on April 8, 2024, the government does not anticipate the following defense witnesses will be called to testify: Casey Cusick, Graham Green, Tarik Johnson, and Nicholas Tomasula. The government reserves the right to object, however, should the defendant change his position and seek to call the any of the above witnesses in his case-in-chief.

a trial in which Sumrall and Guandolo were allowed to testify—Sumrall used his public platform to announce: [3]



Sumrall continued: [4]

---

[3] Sumrall, https://twitter.com/HelpStopHate/status/1776018361098407947 (reposted by Tatum).
[4] Sumrall, https://twitter.com/HelpStopHate/status/1776027521705812027.



Sumrall continued:[5]



---

Two of Sumrall's above posts were reposted by Tatum within hours, adopting Sumrall's statements as his own:





Similarly, Monk has also previously reposted Sumrall's threatening statements about jurors in this district, adopting his statements as her own:[6]



For context, many of the above-named defense witnesses know one another and are part of an activist movement to influence, delay, and/or end the prosecutions of rioters who attacked the U.S. Capitol on January 6th.  Individuals like Guandolo, Sumrall, Monk, and Tatum have social media accounts on X (formerly known as Twitter),[7] podcasts, YouTube or Rumble channels,[8] or other various websites,[9] which they used to discuss their grievances against judges, juries, prosecutors, and law enforcement involved in January 6th cases.  Sumrall, Monk, and Tatum have published interviews with one another,[10] other January 6th defendants,[11] and even defense counsel

---

[6] Sumrall, https://twitter.com/HelpStopHate/status/1773717797081596281 (reposted by Monk).

[7] *See, e.g.,* https://twitter.com/JGuandolo54271 (Guandolo), https://twitter.com/HelpStopHate (Sumrall), https://twitter.com/Trumpertarian (Monk), https://twitter.com/JackSmart007 (Tatum).

[8] *See, e.g.,* https://rumble.com/c/PatriotActionHour (Monk), https://rumble.com/user/StopHate (Sumrall).

[9] *See, e.g.,* https://stophate.com/ (Sumrall).

[10] *See, e.g.,* https://podcasters.spotify.com/pod/show/casey756/episodes/Interview-w-David-Sumrall-e2gfr8v (Casey Cusick interview with Sumrall, March 4, 2024), https://rumble.com/vkg3vh-discussion-island-episode-12-thomas-tatum-07242021.html (Sumrall interview with Tatum, July 24, 2021).

[11] *See, e.g.,* https://rumble.com/v4mcq50-discussion-island-episode-97-westburys-03292024.html (Sumrall interview with Bob, Issac, and Rosemary Westbury, who are defendants in *United States v. Westbury, et al*, 21-cr-605-RC, represented by Mr. Pierce).

in this matter.[12]  Many of these defense witnesses repost and engage with each other on social media on a daily, if not hourly, basis.  In addition to activism, the government has reason to believe many of these witnesses' involvement in January 6th cases is motived by profit, whether through advertising revenue from streaming platforms, selling merchandise,[13] or fundraising through websites like GiveSendGo.com.[14]  The impeachment evidence available for the government to confront witnesses Guandolo, Monk, Sumrall, and Tatum is voluminous, and their testimony would certainly cause unnecessary delay and waste time, as a result of testimony having no relevance to this defendant.  These are not witnesses who occupied the same locations at the Capitol as Kastner on January 6th.  Moreover, these ostensible witnesses have undertaken their own amateur investigations of the events of January 6, 2021, and their testimony, if not scrupulously monitored for a proper foundation, risks inclusion of inadmissible hearsay or other alleged information that the witnesses never perceived for themselves.

### a.  The Court Has the Obligation to Exclude Irrelevant Testimony.

"Irrelevant evidence is not admissible."  F.R.E. 402. *United States v. Oseguera Gonzalez*, 507 F.Supp. 3d 137, 146 (D.D.C. 2020); *United States v. Baez*, No. 21-cr-507 (PLF), ---F. Supp. 3d ---, 2023 WL 6364648 at *2 (D.D.C. Sept. 29, 2023).  Under Federal Rule of Evidence 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  The proponent of the evidence in question bears the burden of establishing its relevance.  *Dowling v.*

---

[12] *See, e.g.,* https://rumble.com/v14etcp-rockthered-5622-5722.html (StopHate.com interview with Mr. Pierce, May 2022), https://podcasters.spotify.com/pod/show/casey756/episodes/Interview-w-John-Pierce-NCLU-e2b2fpr (Casey Cusick interview with Mr. Pierce, October 25, 2023).
[13] *See, e.g.*, https://stophate.mygear.biz/ (Sumrall).
[14] *See, e.g.,* https://donorbox.org/help-stop-hate (Sumrall), "Cashapp $tommytatumnews Venmo @Tommy-Tatum-1 PayPal @tommytatum1" (Tatum).

*United States*, 493 U.S. 342, 351 n.3 (1990).  Information available to the United States, including testimony these witnesses provided in previous trials, indicates that most, if not all, of these witnesses were not able to observe the defendant or conditions he encountered on January 6th. Below is a cursory summary of what the government knows about where these witnesses were located on January 6th and whether they encountered the defendant at the U.S. Capitol.

James Cusick (Cusick) was tried, convicted, and sentenced for his crimes arising from the assault on the U.S. Capitol.  *United States v. Lesperance, et al,* 21-cr-597-JDB.  He and his son, Casey, have since entered notices of appeal and are represented by Mr. Pierce.  *Id.* (ECF Nos. 148 and 149).  While Cusick took a similar path as the defendant did from the West Front to the Upper West Terrace, through the Senate Wing Door, and through the Crypt, they entered the Capitol building approximately one hour after the defendant.  By the time Cusick entered the Senate Wing Door, the defendant had already left the building, the Senate Wing Door had been resecured by police officers only to have rioters breach it on a second occasion prior to Cusick's unlawful entry. In contrast, the defendant entered the Senate Wing Door within the first five minutes of its first breach, which was, in fact, the first breach of the U.S. Capitol building on January 6th. The evidence will show the defendant was no longer even within the restricted area when Cusick entered the Capitol building.  The government does not have any information, from the defendant in reciprocal discovery or otherwise, that Cusick ever encountered the defendant at the U.S. Capitol on January 6th or was even located near him.

John Guandolo was called by the same attorneys representing the defendant in this case during the recent trial in *United States v. Lavrenz*, 23-cr-66 (ZMF); thus, he is not a recently discovered witnesses who was unknown before jury selection in the instant case.  His testimony in *Lavrenz* concerned events on the Capitol's East Front, a location that is not relevant to the

defendant's conduct or mental state.  At this point, the defense has not maintained that Guandolo entered the restricted area, much less that he was ever located on the NW Lawn, the NW staircase, the Senate Wing Door, or the Crypt.  Further, the government does not have any information, from the defendant in reciprocal discovery or otherwise, that Guandolo ever encountered the defendant at the U.S. Capitol on January 6th or was even located near him.

The government does not have information that Emily Lambert, who is the paralegal for Kastner's defense counsel, was even located in Washington, D.C., on January 6th, much less whether she encountered the defendant at the U.S. Capitol.  In at least one prior case, *Alberts,* the defense withdrew Ms. Lambert as a witness when the government objected to her testimony. Ms. Lambert could not give relevant testimony in this case either.

The government has information that Suzzanne Monk, David Sumrall, and Thomas Tatum never went inside the Capitol building, or saw the breached Senate Wing Doors or the Crypt. Monk was previously precluded from testifying in *U.S. v. Alberts,* 21-cr-026-CRC, and *United States v. Lavrenz*, 23-cr-66-ZMF because the proffered reasons for her testimony were irrelevant to each case. *See, e.g., Alberts*, Trial Tr. 701:23-702:23.  The government does not have any information, from the defendant in reciprocal discovery or otherwise, that Monk, Sumrall, or Tatum ever encountered the defendant at the U.S. Capitol on January 6th or were even located near him.

Previously, in *Lavrenz* and *Gunby*, defense counsel offered Sumrall as a "wise man" of all things January 6th to testify in a "summary fashion."  The government has information that Sumrall was present at the U.S. Capitol on January 6th near Peace Circle, and he entered the restricted area on the West Front.  While his experience on that day may bear some marginal relevance to this

case, in both *Lavrenz* and *Gunby*, Sumrall was cautioned by Judge Faruqui and Judge Bates for seeking to testify to matters beyond his own personal observations.

"The Constitution guarantees criminal defendants a meaningful 'opportunity to present a complete defense.'" *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); <u>see</u> *Washington v. Texas*, 388 U.S. 14, 19 (1967); *United States v. Stewart*, 104 F.3d 1377, 1384 (D.C. Cir. 1997). Although criminal defendants have a right to present a defense, courts are not required to permit defendants to present to the jury evidence that is not admissible because it is not relevant or probative of a fact of consequence. *See United States v. Yousef*, 327 F.3d 56, 128 (2d Cir. 2003); *United States v. Libby*, 467 F. Supp. 2d 20, 27 (D.D.C. 2006).

Exclusion of the six witnesses detailed above, four of which were untimely disclosed, would not prevent Kastner from presenting a defense. His pre-April 3, 2024 witness list included witnesses who could testify regarding his character, such as David Kastner, or provide a firsthand account of the events of January 6th. As further detailed below, the defendant did not provide an expert notice in connection with any of the three versions of his witness list. Consequently, the above witnesses' potential testimony is even more likely to be cumulative in nature if not wholly irrelevant given what is known about them. *See United States v. Bifield*, 702 F.2d 342, 350 (2d Cir. 1983) ("A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible.")

### b. The Court Has Discretion to Exclude Expert Testimony.

Sumrall and others like him, including Ms. Lambert, Monk, and Tatum, are potentially being offered by the defense as self-styled January 6th experts. Sumrall describes himself as a

"J6 witness" and "SME [subject matter expert]/investigator" in his X handle description.[15] Ms. Lambert describes herself as an "Armchair Detective."[16]   Monk has dubbed herself a "#ConspiracyExpert."[17]   This Court should not allow dubious "expert" testimony from any of these witnesses, including opinions or testimony that goes beyond personal observations at the U.S. Capitol on January 6th.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.   The rule provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if four conditions are met: First, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."   Second, "the testimony is based on sufficient facts or data."   Third, "the testimony is the product of reliable principles and methods."   And fourth, "the expert has reliably applied the principles and methods to the facts of the case."   Fed. R. Evid. 702.

If the defense seeks to elicit evidence from Ms. Lambert, Monk, Sumrall, and/or Tatum to rebut or contradict the expected testimony from the case agent or other law enforcement witnesses, it would be improper and another example of a discovery violation.   Requiring a proffer would best position the Court to give a limiting instruction to the witness before he or she takes the stand and runs the high risk that the defense will introduce prejudicial and otherwise inadmissible testimony.   *See United States v. Bostick*, 791 F.3d 127, 150-51 (D.C. Cir. 2015) (affirming court's exclusion of defendant's proffered testimony from a former FBI special agent to rebut testimony of another FBI agent regarding FBI procedures for cooperating witnesses where the defense proffer

---

[15] *See infra* at n. 7.
[16] *See* https://twitter.com/EmtheFishLady (Emily Lambert).
[17] *See* https://twitter.com/Trumpertarian/status/1772747489432539220 (Monk).

failed to clarify the basis for and reliability of the expert's testimony of perceived errors in the government's investigation in which the witness took no part).

### c. The Court Has Discretion to Exclude Relevant Testimony Under FRE 403.

Even if the Court were to find that one or several of the above witnesses did have some marginal relevance, under Federal Rule of Evidence 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This Court retains and should exercise its broad discretion to control witness examination and "prevent questioning that does not meet 'the basic requirement of relevancy, as well as other factors affecting admissibility.'" *United States v. Sutton*, 2024 WL 278070, *11 (D.D.C. Jan. 2024) (quoting *United States v. Hemphill*, 514 F.3d 1350, 1360 (D.C. Cir. 2008)).

The government anticipates at least six of the witnesses noticed by the defendant during jury selection would provide testimony that would be unduly prejudicial, inflammatory, misleading and/or confusing to the jury, or otherwise cause unnecessary delay and/or waste time: Cusick, Guandolo, Ms. Lambert, Monk, Sumrall, and Tatum. A thorough inquiry of defense counsel by the Court would be warranted to accurately weigh the probative value of each defense witness' testimony. But even based on a cursory, open-source search of the above witnesses, all have publicly expressed bias in favor of January 6th defendants, and their testimony would mislead and confuse the jury, and otherwise result in delay and/or waste time.

Some of the above-named witnesses have testified in prior January 6th trials, including Cusick (at his own trial: *Lesperance, et al*), Guandolo (*Lavrenz*), Ms. Lambert (*United States v. Gunby*, 21-cr-626-PLF), Sumrall (*U.S. v. Alberts*, 21-cr-026-CRC, *United States v. Thomas*, 21-

cr-552-DLF, *Lesperance, Gunby, Lavrenz*), and Tatum (*U.S. v. Brian Christohper Mock*, 21-cr-444-JEB, bench trial).  However, as noted above, at least two judges of this Court have excluded testimony from Monk, in *Alberts* and *Lavrenz* because the proffered reasons for her testimony were irrelevant.  Similarly, the defense withdrew Ms. Lambert as a witness in *Alberts* when her proposed testimony was opposed by the government.  The government has reason to believe that the unfair prejudice, confusing and misleading testimony, and delay resulting from these witnesses appearing before juries is an intentional, tactical choice by defense counsel: these are witnesses previously known to the defense, yet they were not timely disclosed.

As discussed, Cusick is a January 6th defendant, who sat in this Court, was tried, convicted, and sentenced for his crimes at the U.S. Capitol.  *See Lesperance, et al,* 21-cr-597-JDB.  Cusick is also a pastor.  In *Lesperance*, as well as in *Lavrenz*, the defense sought to characterize January 6th rioters as persons engaged in protected First Amendment activities, such as quiet prayer.  The Court has already ruled on this issue pretrial, but the government is reasonably concerned as to whether the defense will abide the Court's order.  *See* Minute Order (July 21, 2023) (granting in part ECF 122) (precluding defendant from arguing his conduct was protected by the First Amendment, allowing defendant to testify whether his purpose at the U.S. Capitol on January 6th was to have his voice heard).  If Cusick's personal experience on January 6th was not enough for his testimony to be excluded based on relevance, the Court should weigh whether his testimony would lead to improper defense arguments already precluded by the Court.

Based on his prior experience as a law enforcement officer, the government expects Guandolo would seek to undermine the testimony of other law enforcement witnesses.  Again, this testimony could veer into improper Rule 702 territory, as discussed above.  As a prophylactic measure against such improper testimony, Judge Faruqui did not allow Guandolo to testify in

*Lavrenz* that he was a former FBI agent.  This Court should decline to allow his irrelevant testimony altogether.

Finally, for the reasons stated above, anticipated testimony from Ms. Lambert, Monk, Sumrall, and Tatum would result in unfair prejudice, confusion, mislead the jury, result in undue delay, and/or waste time.

## II. The Court Has Discretion to Exclude Testimony from Witnesses Who Were Not Previously Disclosed Per the Court's Prior Orders.

"Rules that provide for pretrial discovery of an opponent's [including the defense's] witness list serve the high purpose of ensuring that judgments are not founded on a partial or speculative presentation of the facts." *Taylor v. Illinois*, 484 U.S. 400, 411 (1988) (affirming district court's ruling excluding defense witness which was untimely disclosed); *United States v. Johnson*, 970 F.2d 907, 911 (D.C. Cir. 1992) (declining to require bad faith or analysis of least restrictive alternative to support exclusion of evidence for failing to comply with disclosure requirement).  "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Id*. at 410; *see also United States v. Day*, 524 F.3d 1361, 1371-72 (D.C. Cir. 2008) (holding it was not an abuse of discretion to exclude expert witness testimony as appropriate sanction for discovery violation). "Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The State's interest in protecting itself against an eleventh-hour defense is merely one component of the broader public interest in a full and truthful disclosure of critical facts." *Id.* at 411-12 (internal quotations removed).  "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Williams v. Florida*, 399 U.S. 78, 82 (1970).

It is common for judges in this district to order pretrial disclosure of the names of defense witnesses and/or a defense exhibit list, in conjunction with a similar disclosure from the prosecution.  *See*, *e.g.*, *United States v. Rhodes*, *et. al.*, 22-cr-15 (APM), Doc. 64, ¶¶ 8.c, 8.d; *United States v. Riley*, 21-cr-628 (ABJ), Doc. 33 at 3 (Joint Pretrial Statement, subparagraph (i)); *United States v. Sutton*, *et. al.*, 21-cr-598 (PLF), Doc. 179 at 4 (directing parties to exchange witness and exhibit lists); *United States v. Vance*, 19-cr-251 (RDM), Min. Order (October 4, 2021); *United States v. Fitzsimons*, 21-cr-158 (RC), Doc. 55 at 2 (Joint Pretrial Statement, ¶ 8).  In this case, there have been multiple court orders requiring the disclosure of the defendant's witness list undoubtedly intended and designed to promote judicial economy and serve the interests of justice in a just verdict.

Defense should be held to the Court's orders.  *Taylor v. Illinois*, 484 U.S. at 415 (noting that a trial judge can require an explanation for a party's failure to comply with a request to identify his witnesses in advance of trial).  In addition to the prejudice to the government, permitting such a cavalier and heretofore unjustified disregard for the Court's orders could, if left unaddressed, unduly prolong trial in this matter and undermine the authority of this Court.  *Id*. at 416 ("We are also concerned with the impact of this kind of conduct on the integrity of the judicial process itself.").

### III. Conflict Counsel Must Be Appointed for Witnesses with Fifth Amendment Issues

In the event the Court were to allow testimony by certain defense witnesses, at least four of the witnesses noticed by the defense to the jury venire have potential 5th Amendment issues based on their unlawful conduct at the U.S. Capitol on January 6, 2021: Cusick, Monk, Sumrall, and Tatum.  Defense counsel informed the Court on April 8, 2024, that arrangements to appoint conflict counsel for Cusick had begun.  As of the filing of this motion, it is unknown to the

government what, if any, steps have been taken to ensure consultation between the Federal Public Defender's Office and other witnesses besides Cusick, which was ordered by the Court.

### IV. There is Precedent for Non-Compliance with Court Orders by Defense Counsel

The government is aware of at least two prior occasions when defense counsel sought to call witnesses who were late-noticed by the defense.  In *United States v. Nancy Barron*, sought to call an individual named Robert ("Bobby") Powell.  Powell's name was read to the jury venire at jury selection but was never previously included in a witness list, as ordered by Judge Faruqui. Powell was allowed to testify over the government's objection.

In *United State v. Thomas*, 21-cr-552-DLF, at trial, the defense filed proffers explaining the proposed testimony of witnesses Treniss Evans (a January 6th defendant), Ms. Lambert, Robert Mosley (an individual formerly associated with Mr. Pierce's law firm), and Sumrall.  Additionally, the defense late-filed expert notice for witnesses Steven Hill and Norbert Michel.  Ultimately, the defense abandoned efforts to call Evans, Ms. Lambert, Mosley, and Michel when opposed by the government. Judge Friedrich allowed Hill to testify as a non-expert and Sumrall as a fact witness. Notably, in *Thomas*, Judge Friedrich issued a show cause order requiring defense counsel to explain the "repeated failure to comply with the Court's orders," that counsel's filing "did not reflect a good faith effort to comply with the Court's orders," and that representations regarding a deadline were "implausible."  *Id.*, Min. Order of Judge Friedrich (May 11, 2023).

### Conclusion

For the foregoing reasons, the United States respectfully requests that the Court order (1) the exclusion of all testimony from witnesses named after the September 12, 2023 pretrial conference, and (2) a full factual proffer by the defendant regarding the testimony of witnesses

who were previously disclosed that defense expects to testify or will not commit to removing from their witness list.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Will N. Widman*
WILL N. WIDMAN
NC Bar No. 48158
Trial Attorney, Detailee
U.S. Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, D.C.  20001
(202) 353-8611
Will.Widman@usdoj.gov

*/s/ Cytheria D. Jernigan*
CYTHERIA D. JERNIGAN
Assistant U.S. Attorney
DC Bar No. 494742
U.S. Attorney's Office WDLA
Detailed to the U.S. Attorney's Office
For the District of Columbia
601 D. Street, NW
Washington, D.C.  20001
(318) 676-3611
Cytheria.Jernigan@usdoj.gov